Steven T. Lovett, OSB No. 910701
steve.lovett@stoel.com
Nathan C. Brunette, OSB No. 090913
nathan.brunette@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

Marc S. Cooperman (*Pro Hac Vice*)
mcooperman@bannerwitcoff.com
J. Pieter van Es (*Pro Hac Vice*)
pvanes@bannerwitcoff.com
Audra C. Eidem Heinze (*Pro Hac Vice*)
aheinze@bannerwitcoff.com
Brian Apel (*Pro Hac Vice*)
bapel@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: 312.463.5000
Facsimile: 312.463.5001

Attorneys for Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>        v.<br><br>GREENBRIER LEASING COMPANY, LLC, and GREENBRIER-CONCARRIL LLC,<br><br>    Defendants and Counterclaim Plaintiffs, | Case No. 3:20-cv-01275-YY<br><br>DEFENDANTS GREENBRIER LEASING COMPANY, LLC'S AND GREENBRIER-CONCARRIL LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND DECLARATORY JUDGMENT COUNTERCLAIMS FOR PATENT NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY TO FIRST AMENDED COMPLAINT<br><br>(CONFIDENTIAL – IN ACCORDANCE WITH THE PROTECTIVE ORDER, THIS |

SHALL BE TREATED AS CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 2(B) OF THE STIPULATED PROTECTIVE ORDER)

DEMAND FOR JURY TRIAL

Defendants Greenbrier Leasing Company, LLC ("Greenbrier Leasing") and Greenbrier-Concarril LLC ("Greenbrier-Concarril") (collectively, "Greenbrier Entities") submit this Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint for Patent Infringement ("Complaint") filed by Plaintiff National Steel Car Limited ("NSC"). (ECF No. 125.) Greenbrier Entities, by and through their attorneys, state as follows:

## NATURE OF THE ACTION

1.      Greenbrier Entities admit the Complaint purports to bring a civil action under the laws of the United States, 35 U.S.C. § 1, *et seq.*, for patent infringement. Greenbrier Entities admit NSC purports to seek damages and injunctive relief under 35 U.S.C. §§ 281, 283–85. Greenbrier Entities deny NSC states a valid claim and deny NSC is entitled to any of the relief sought. Greenbrier Entities deny the remaining allegations of paragraph 1.

## THE PARTIES

2.      On information and belief, Greenbrier Entities admit NSC is a corporation organized and existing under the laws of Canada, having its principal place of business at 600 Kenilworth Avenue North, Hamilton, Ontario, Canada L8N 3J4. Greenbrier Entities deny the remaining allegations of paragraph 2.

3.      Greenbrier Entities admit Greenbrier Leasing is a corporation organized and existing under the laws of the State of Oregon, having its headquarters and principal place of

business at One Centerpointe Drive, Suite 200, Lake Oswego, Oregon 97035, which is in the District of Oregon.  Greenbrier Entities deny the remaining allegations of paragraph 3.

4.      Greenbrier Entities admit Greenbrier-Concarril is a corporation organized and existing under the laws of the State of Delaware, having its headquarters and principal place of business at One Centerpointe Drive, Suite 200, Lake Oswego, Oregon 97035, which is in the District of Oregon.  Greenbrier Entities deny the remaining allegations of paragraph 4.

## JURISDICTION AND VENUE

5.      Greenbrier Entities admit the U.S. District Court for the District of Oregon has subject matter jurisdiction over disputes arising under the patent laws of the United States, but denies NSC states a valid claim.

6.       Greenbrier Entities admit the U.S. District Court for the District of Oregon has personal jurisdiction over Greenbrier Leasing for NSC's claims of alleged patent infringement, but deny NSC states a valid claim.  Greenbrier Entities deny the remaining allegations of paragraph 6.

7.      Greenbrier Entities admit the U.S. District Court for the District of Oregon has personal jurisdiction over Greenbrier-Concarril for NSC's claims of alleged patent infringement, but deny NSC states a valid claim.  Greenbrier Entities deny the remaining allegations of paragraph 7.

8.      Greenbrier Entities admit venue is proper in the U.S. District Court for the District of Oregon for NSC's claims of alleged patent infringement, but deny NSC states a valid claim.  Greenbrier Entities deny the remaining allegations of paragraph 8.

## THE PATENTS-IN-SUIT

9.      Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 9, and, therefore, deny the allegations.

10.      Greenbrier Entities admit the face of each of U.S. Patent Nos. 7,434,519, and

7,878,125 shows each was assigned to NSC.  Greenbrier Entities deny the remaining allegations of paragraph 10.

11.    Greenbrier Entities admit the face of U.S. Patent No. 7,434,519 ("the '519 patent") shows the U.S. Patent and Trademark Office issued it on October 14, 2008, and that it is titled "RAIL ROAD FREIGHT CAR."  Greenbrier Entities admit Exhibit A to the Complaint purports to be a copy of the '519 patent.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 11, and, therefore, deny the allegations.

12.    Greenbrier Entities admit the face of U.S. Patent No. 7,878,125 ("the ''125 patent") shows the U.S. Patent and Trademark Office issued it on February 1, 2011, and that it is titled "RAILROAD FREIGHT CAR."  Greenbrier Entities admit Exhibit B to the Complaint purports to be a copy of the '125 patent.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 12, and, therefore, deny the allegations.

13.    Greenbrier Entities admit NSC has asserted that it manufactures and sells gondola railcars that allegedly embody one or more asserted claims of the '519 patent and the '125 patent.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 13, and, therefore, deny the allegations.

14.    Greenbrier Entities admit a gondola railcar is a type of railcar that may be used to haul various types of lading.  Greenbrier Entities admit the '519 patent and the '125 patent state: "gondola cars have tended to have two relatively deep side beams" and that the "side beams may often be the dominant vertical load bearing members."  '519 patent at 1:12–19.  Greenbrier Entities further admit the '519 patent and the '125 patent state: the "side beams themselves have tended to

ANSWER, AFFIRMATIVE DEFENSES, AND DECLARATORY JUDGMENT
         COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

be deep beams having a top chord, a side sill, and a vertical web extending between the top chord and side sill." '519 patent at 1:20–22. Greenbrier Entities further admit the '519 patent and the '125 patent state: "In as much as bottom chords and side sills may tend to be quite heavy, a very substantial reduction in the size and weight of a side sill, or the substantially total elimination of a side sill may therefore hold out the prospect of a significant reduction in weight." '519 patent at 1:65–2:2. Greenbrier Entities further admit the '519 patent and the '125 patent state: "the side beams, the floor, and the end walls of the body of a gondola car define an open topped container, or receptacle, into which lading may be placed." '519 patent at 1:14–16. Greenbrier Entities deny the remaining allegations of paragraph 14.

15.     Greenbrier Entities admit the '519 patent and the '125 patent are part of a family of patents. Greenbrier Entities deny the remaining allegations of paragraph 15.

## ALLEGED PATENT INFRINGEMENT

16.     Greenbrier Entities admit Greenbrier Leasing has offered for sale and/or leased in the United States railroad gondola cars designated as the 6400 cubic foot waste gondola cars ("the Accused 6400 Cars") and the 7100 cubic foot woodchip gondola cars ("the Accused 7100 Cars"), including cars bearing AAR reporting marks CDEX 19005 and CDEX 19432. Greenbrier Entities deny the remaining allegations of paragraph 16.

17.     Greenbrier Entities admit railcars with AAR reporting marks CDEX 19005 and CDEX 19432 cars are among the railcars designated as the Accused 6400 Cars. Greenbrier Entities admit NSC has also accused the Accused 7100 Cars of infringement. Greenbrier Entities admit Greenbrier Leasing has offered for sale and/or leased in the United States Accused 6400 Cars and Accused 7100 Cars. Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 17, and, therefore, deny the allegations.

18.    Greenbrier Entities deny the allegations of paragraph 18.

19.    Greenbrier Entities admit Greenbrier-Concarril has sold and/or imported into the United States railroad gondola cars designated as the Accused 6400 Cars and the Accused 7100 Cars, including cars bearing AAR reporting marks CDEX 19005 and CDEX 19432.  Greenbrier Entities deny the remaining allegations of paragraph 19.

20.    Greenbrier Entities admit railcars with AAR reporting marks CDEX 19005 and CDEX 19432 cars are among the railcars designated as the Accused 6400 Cars.  Greenbrier Entities admit NSC has also accused the Accused 7100 Cars of infringement.  Greenbrier Entities admit Greenbrier-Concarril has sold and/or imported into the United States Accused 6400 Cars and Accused 7100 Cars.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 20, and, therefore, deny the allegations.

21.    Greenbrier Entities deny the allegations of paragraph 21.

22.    Greenbrier Entities admit they had actual knowledge of the '519 patent and the '125 patent in or around December 2019 when NSC filed this action.  Greenbrier Entities admit that certain individuals employed by Greenbrier-affiliated companies became aware of the existence of the patent numbers for the '519 patent and the '125 patent in or around October 2018.  Greenbrier Entities deny the remaining allegations of paragraph 22.

## COUNT I
### (Infringement of U.S. Patent No. 7,434,519)

23.    Greenbrier Entities incorporate by reference their responses to the allegations in paragraphs 1 through 22, as if fully set forth herein.

24.    Greenbrier Entities admit Exhibit C to the First Amended Complaint purports to be a claim chart that purports to show how NSC contends the railcar with AAR reporting mark CDEX

19432 allegedly infringes claims 1–4, 8, 9, 11–16, 18, 19, and 22–25 of the '519 patent.  Greenbrier Entities deny the remaining allegations of paragraph 24.

25.     Greenbrier Entities deny the allegations of paragraph 25.

26.     Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 26, and, therefore, deny the allegations.

27.     Greenbrier Entities deny they had actual notice of the '519 patent since at least late 2014.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 27, and, therefore, deny the allegations.

28.     Greenbrier Entities deny the allegations of paragraph 28.

29.     Greenbrier Entities deny the allegations of paragraph 29.

30.     Greenbrier Entities deny the allegations of paragraph 30.

**COUNT II**
**(Infringement of U.S. Patent No. 7,878,125)**

31.     Greenbrier Entities incorporate by reference their responses to the allegations in paragraphs 1 through 22, as if fully set forth herein.

32.     Greenbrier Entities admit Exhibit D to the First Amended Complaint purports to be a claim chart that purports to show how NSC contends the railcar with AAR reporting mark CDEX 19432 allegedly infringes claims 1, 11, 15, 16, 18, and 19 of the '125 Patent.  Greenbrier Entities deny the remaining allegations of paragraph 32.

33.     Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth or falsity of the allegations of paragraph 33, and, therefore, deny the allegations.

34.     Greenbrier Entities deny the allegations of paragraph 34.

35.     Greenbrier Entities deny they had actual notice of the '125 Patent since at least late 2011.  Greenbrier Entities lack knowledge or information sufficient to form a belief about the truth

or falsity of the remaining allegations of paragraph 35, and, therefore, deny the allegations.

36.    Greenbrier Entities deny the allegations of paragraph 36.

37.    Greenbrier Entities deny the allegations of paragraph 37.

38.    Greenbrier Entities deny the allegations of paragraph 38.

## PRAYER FOR RELIEF

Greenbrier Entities deny NSC is entitled to any of the relief sought in NSC's prayer for relief.

## DEMAND FOR JURY TRIAL

Greenbrier Entities demand a jury trial on any and all issues appropriately triable before a jury.

## AFFIRMATIVE DEFENSES

Greenbrier Entities states their Affirmative Defenses as follows:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

NSC fails to state a claim against Greenbrier Entities at least because Greenbrier Entities do not make, use, sell, offer to sell, or import into the United States, and have not at any time made, used, sold, offered to sell, or imported into the United States, any cars that infringe any claim of the '519 patent and the '125 patent.  Greenbrier Entities also have not actively induced any other party to make, use, sell, offer for sale, or import into the United States any of cars that infringe any claim of the '519 patent and the '125 patent.

### SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement)

Greenbrier Entities do not infringe and have not infringed, either directly or indirectly, any claim of the '519 patent or of the '125 patent asserted by NSC in this action.

/ /

### THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

Any claim of the '519 patent or of the '125 patent alleged or contended by NSC to be infringed is invalid for failure to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to Sections 102, 103, and 112.

### FOURTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel/Disclaimer)

NSC's infringement claims are barred, in whole or in part, as a result of prosecution history estoppel, prosecution disclaimer, and/or due to statements or amendments made during prosecution of, or during any other proceedings in the U.S. Patent and Trademark Office or in court concerning, the '519 patent, the '125 patent, or a related patent.

### FIFTH AFFIRMATIVE DEFENSE
### (Limitation on Damages and Costs)

On information and belief, NSC's claims for damages are barred, in whole or in part, by 35 U.S.C. §§ 286, 287, and/or 288. Greenbrier Entities have not engaged in any conduct that would entitle NSC to a finding that this is an exceptional case, or to an award of enhanced damages, costs, attorney fees, or expenses. To the extent any claim of the '519 patent or the '125 patent is invalid, NSC is barred from recovering costs by 35 U.S.C. § 288. To the extent NSC is entitled to any damages, which it is not, those damages are limited by 35 U.S.C. §§ 286 and 287.

### SIXTH AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

NSC cannot satisfy the requirements applicable to its request for injunctive or equitable relief because, among other things, it has an adequate remedy at law for any alleged infringement of the '519 patent or the '125 patent.

/ /

/ /

## SEVENTH AFFIRMATIVE DEFENSE
### (Reverse Doctrine of Equivalents)

NSC's infringement claims are barred by the reverse doctrine of equivalents because the accused railcars are so far changed in principle from any patent claim scope alleged by NSC. For example, the indirect mating of the side wall web and the floor on the Accused 6400 Cars and Accused 7100 Cars is so far changed from the "direct" mating principle set forth in the '519 patent and the '125 patent that the accused railcars perform in a substantially different way than the patents contemplate.

## EIGHTH AFFIRMATIVE DEFENSE
### (Unenforceability)

The '519 patent and the '125 patent are unenforceable and void because one or more individuals associated with the prosecution of the application that issued as the '519 patent violated their duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("PTO") by intentionally and deceptively failing to disclose material information to the PTO during prosecution. Greenbrier Entities specifically incorporate by reference paragraphs 20–37 and 55–66 of their Counterclaims.

## COUNTERCLAIMS

### PARTIES

1.      Greenbrier Leasing is an Oregon corporation with its principal place of business at One Centerpointe Drive, Suite 200, Lake Oswego, Oregon 97035.

2.      Greenbrier-Concarril is a Delaware corporation with its principal place of business at One Centerpointe Drive, Suite 200, Lake Oswego, Oregon 97035.

3.      On information and belief, NSC is a Canadian corporation with its principal place of business at 600 Kenilworth Avenue North, Hamilton, Ontario, Canada L8N 3J4.

**JURISDICTION AND VENUE**

4.      Greenbrier Entities' counterclaims arise under the Declaratory Judgements Act, 28 U.S.C. §§ 2201 and 2201, Rule 57, Fed. R. Civ. P., and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*

5.      Subject matter jurisdiction exists under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6.      By its Complaint and First Amended Complaint, NSC has charged Greenbrier Entities with infringement of the '519 patent and the '125 patent, and, thus, has submitted to the jurisdiction of this Court and venue in this judicial district.

7.      As a result of NSC's allegations, a justiciable controversy has arisen between NSC and Greenbrier Entities.

**FACTUAL BACKGROUND: CARS ACCUSED BY NSC IN THE PRESENT ACTION DO NOT INFRINGE ANY ASSERTED CLAIM OF THE ASSERTED PATENTS**

8.      NSC's First Amended Complaint accuses "6400 cubic foot and 7100 cubic foot gondola cars, including gondola cars stenciled with AAR reporting marks CDEX 19005 and CDEX 19432" of infringing the '519 patent and the '125 patent.

9.      NSC served Preliminary Infringement Contentions on March 19, 2020, that also accused cars that it identified as the "Lane Forest Cars," "Unknown Gondola Customer cars," and the "7100 Woodchip gondola cars" of allegedly infringing the '519 patent and the '125 patent.

10.      NSC's Preliminary Infringement Contentions state that NSC "understands" that the Lane Forest Cars, Unknown Gondola Customer cars, and the 7100 Woodchip cars are "the same or substantially the same in relevant part as the CDEX Series cars." NSC's Preliminary Infringement Contentions assert claims 1–4, 8, 9, 11–16, 18, 19, and 22–25 of the '519 patent

and claims 1, 11, 15, 16, 18, and 19 of the '125 patent.

11.    Greenbrier Entities do not infringe any claim of the '519 patent and the '125 patent asserted by NSC.

12.    Among other reasons why Greenbrier Entities do not infringe, claims in the '519 patent include the limitation "said at least one floor panel and said lower margin of said shear web member being directly mated together" or "said at least one floor panel and said shear web member being directly mated together."  None of the cars that NSC accuses of infringement in this action satisfy these limitations.

13.    Among other reasons why Greenbrier Entities do not infringe, claims in the '125 patent include the limitation "said web of said first side beam is welded directly to said deck", "said web of said first side wall is welded directly to said deck", or "said second side wall web being directly connected to said deck".  None of the cars that NSC accuses of infringement in this action satisfy these limitations.

## FACTUAL BACKGROUND: PRIOR ART DISCLOSES THE ASSERTED CLAIM LIMITATIONS

14.    The prior art discloses each and every limitation of the claims of the '519 patent and the '125 patent asserted by NSC.

15.    The Greenbrier Companies, Inc. ("GCI") served Preliminary Invalidity Contentions on NSC on June 1, 2020.[1]  These Preliminary Invalidity Contentions establish why each and every limitation of the claims of the '519 patent and the '125 patent asserted by NSC is invalid.  An excerpt of GCI's Preliminary Invalidity Contentions, including invalidity charts for two of the numerous prior art references to each asserted patent, is attached as Exhibit 1 (with

---

[1] GCI was the originally named defendant in this action. By joint stipulation, the Greenbrier Entities were substituted for GCI. (ECF No. 117.)

information designated confidential redacted).

16.    Among the numerous prior art references that GCI identified to NSC in its

Preliminary Invalidity Contentions, the Brandenburg V-Bottom gondola car was known or used

by others in the United States, in public use in the United States, and/or on sale in the United

States at least as early as February 2001 ("Brandenburg V-Bottom").  A photograph of the

Brandenburg V-Bottom gondola car is shown below in Figure 1.

**Figure 1:  Photograph of Brandenburg V-Bottom Gondola Car**



17.    The Brandenburg V-Bottom gondola was not before the Patent Office examiner

during prosecution of the applications that issued as the '519 patent and the '125 patent.

18.    The Brandenburg V-Bottom gondola car discloses or renders obvious each and

every limitation of the asserted claims of the '519 patent and the '125 patent.  *See, e.g.*, Exhibit 1

at 15–18, 24–41, 103–171.

19.    On information and belief, NSC was aware of the Brandenburg V-Bottom

gondola car prior to filing this lawsuit.

### FACTUAL BACKGROUND: UNDISCLOSED PRIOR ART RENDERS THE '519 PATENT AND THE '125 PATENT UNENFORCEABLE

**A.    NSC's and the Named Inventors' Knowledge of Material Prior Art Railcars**

20.    On information and belief, in or around June 2005—before the filing of the

applications that issued as the '519 patent and the '125 patent—an NSC employee who is also one of the named inventors on the '519 patent and the '125 patent, James W. Forbes, took part in a trip to Houston, Texas, which is reflected in a July 2005 trip report. The July 2005 trip report states that the purpose of the trip was to "observe the unloading of aggregate gondola cars re. potential damage of the NSC clean out door."

21.     The July 2005 trip report describes Mr. Forbes' observation and analysis of a railcar having a floor sheet and a shear web member of a side beam directly mated together.

22.     The July 2005 trip report, which was sent to the other named inventors, states that the modified coal cars had thick side sheets and ¼" floors. The trip report explains that the floor sheet was directly mated to the side sheet: The "edges of the floor sheet [were] bent up with what looked like a 1 [inch] plus radius to lap on the inside of the side sheets. The vertical leg was welded to the side sheets with a single fillet weld."

23.     The July 2005 trip report also describes the railcars as having a "clean out door:" "Notice in the pictures the loader left an angle profile of gravel in the lower end corner. It was clear that the blade of the bucket cannot touch the clean out door."

24.     On information and belief, and applying NSC's understanding of the scope of the '519 patent and the '125 patent, the modified coal cars described in the July 2005 trip report are prior art gondola cars having a floor panel and a shear web member of a side beam directly mated together and a clean out port mounted in one of the side beams.

25.     On information and belief, the named inventors and NSC had knowledge of the construction of the modified coal cars that were the subject of the July 2005 trip report.

26.     The July 2005 trip report refers to "several photos and a video" that were taken during the trip, and refers to "pictures" taken of the railcar described in the July 2005 trip report.

27.     On information and belief, NSC and/or one or more of the named inventors destroyed evidence that depicted the structure of the modified coal cars, including the "photos and a video" referred to in the July 2005 trip report.  For example, in response to an interrogatory asking NSC to describe with specificity the content of the "photos and a video" referred to in the July 2005 trip report, NSC responded that it had "not found any photos or video referenced in the July 4, 2005 Trip Report, or any information about any railcar(s) that may have been depicted therein."

**B.     NSC's and the Named Inventors' Failure to Disclose Material Prior Art to the PTO During Prosecution**

28.     The application ("Application") that issued as the '519 patent was filed on November 10, 2005, naming James W. Forbes, Tomasz Bis, and Mohammed Al-Kaabi as inventors.  An assignment was recorded with the PTO on February 1, 2006, assigning the Application to NSC.  Kenneth L. Bousfield of McCarthy Tetrault LLP was the attorney who signed the Application that issued as the '519 patent, and Michael H. Minns of Hahn Loeser & Parks LLP also signed filings in connection with the prosecution of the Application that issued as the '519 patent.

29.     On or around January 30, 2006, Mr. Forbes, Mr. Bis, and Mr. Al-Kaabi executed a sworn declaration acknowledging their "duty to disclose information, which is material to patentability as defined in 37, Code of Federal Regulations, § 1.56, and which is material to the examination of this [Application], namely, information where there is a substantial likelihood that a reasonable Examiner would consider it important in deciding whether to allow the application to issue as a patent . . . ."

30.     During prosecution of the Application, on January 8, 2008, the patent examiner issued an office action that rejected Application claims 1–3, 6–9, 12, 13, 15 and 16 under 35

U.S.C. § 102(b) as being anticipated by U.S. Patent No. 1,962,717 to Kiesel (hereafter "Kiesel"). Among other things, the examiner stated that Kiesel discloses "said at least one floor panel and said shear web member are directly mated together."  Application claim 1 reviewed by the examiner is reproduced below.

> 1. (Currently Amended)  A rail road gondola car comprising:
>    a gondola car body carried by railroad car trucks for rolling motion along rail road tracks;
>    said gondola car body having a longitudinal centerline;
>    said gondola car body having a floor and a wall structure standing upwardly of said floor,
>        said floor and said wall structure defining a lading receptacle;
>    said gondola car body including a pair of lengthwise running side beams, said side beams
>        defining portions of said wall structure;
>    said side beams each having an upper margin, and a longitudinally running shear web
>        member extending predominantly downwardly of said upper margin;
>    said floor including at least one floor panel; and
>    said at least one floor panel and said shear web member being directly mated together.

31.     In the January 8, 2008 office action, the patent examiner also allowed Application claim 22 if rewritten in independent form including all of the limitations of the base claim and any intervening claims.  Application claim 22 reviewed by the examiner is reproduced below.

> 22. (Currently Amended)  The rail road gondola car of claim 1 wherein said rail road gondola car
> includes at least one clean out port mounted in one of said side beams, said clean out port including a
> movable access member.

32.     In response to the January 8, 2008 office action, the applicant amended Application claim 1 and corresponding dependent claims to add limitations to overcome Kiesel, including  "said shear web member has a lower margin terminating at said at least one floor panel."  Application claim 1 as amended by the applications is reproduced below (with yellow highlighting added).

1. (Currently Amended)  A rail road gondola car comprising:
   a gondola car body carried by railroad car trucks for rolling motion along rail road tracks;
   said gondola car body having a longitudinal centerline;
   said gondola car body having a floor and a wall structure standing upwardly of said floor,
       said floor and said wall structure defining a lading receptacle;
   <u>said floor including at least one floor panel;</u>
   said gondola car body including a pair of lengthwise running side beams, said side beams
       defining portions of said wall structure;
   said side beams each having an upper margin, and a longitudinally running shear web
       member extending predominantly downwardly of said upper margin<mark>and said shear
       web member has a lower margin terminating at said at least one floor panel;</mark> and
   ~~said floor including at least one floor panel; and~~
   said at least one floor panel and <u>said lower margin of</u> said shear web member being directly
       mated together.

33.     Applicant argued that in contrast to the alleged invention "in which the laterally outboard portion of the floor panel and the lower margin of the web of the side beam are directly mated to form a structural section in which the floor panel acts as the bottom flange of the side beam, (and such as may then obviate the need for a longitudinal tensile chord member, such as the bottom chord defined by the horizontal leg of a side sill), the Kiesel structure employs a web that extends beyond the floor panel to mate with a bottom chord, 6."  An excerpt of the applicant's argument is reproduced below (with yellow highlighting added).

   1)     **Claim Amendments – Claim 1**

       The cited reference, US Patent 1,962,717 of Kiesel is an all-rivetted car that has deep side beams.  The depth of the side beams is greater between the trucks than at the ends of the car.  In this car the webs of the side beam do not stop at the floor, but rather continue past the floor sheet, as seen in Figures IV, VI, VII and VIII.  <mark>In contrast to a structure in which the laterally outboard portion of the floor panel and the lower margin of the web of the side beam are directly mated to form a structural section in which the floor panel acts as the bottom flange of the side beam, (and such as may then obviate the need for a longitudinal tensile chord member, such as the bottom chord defined by the horizontal leg of a side sill), the Kiesel structure employs a web that extends beyond the floor panel to mate with a bottom chord, 6.</mark>  It is this bottom chord **6** that functions as the bottom flange of Kiesel's side beam.

34.     Applicant did not amend any other Application claims to include the limitation "said shear web member has a lower margin terminating at said at least one floor panel."  For example, Application claim 22 does not include the limitation "said shear web member has a lower margin terminating at said at least one floor panel."  Application claim 22 as amended by

applicant is reproduced below.

22. (Currently Amended) A rail road gondola car comprising:
a gondola car body carried by railroad car trucks for rolling motion along rail road tracks;
said gondola car body having a longitudinal centerline;
said gondola car body having a floor and a wall structure standing upwardly of said floor,
said floor and said wall structure defining a lading receptacle;
said gondola car body including a pair of lengthwise running side beams, said side beams
defining portions of said wall structure;
said side beams each having an upper margin, and a longitudinally running shear web
member extending predominantly downwardly of said upper margin;
said floor including at least one floor panel;
said at least one floor panel and said shear web member being directly mated together; and
The rail road gondola car of claim 1 wherein said rail road gondola car includes at least one
clean out port mounted in one of said side beams, said clean out port including a
movable access member.

35.    On information and belief, no one disclosed the modified coal cars to the PTO
during prosecution of the Application that issued as the '519 patent.

36.    The '519 patent issued on October 14, 2008.

37.    Claims of the '519 patent include the limitation of "said at least one floor panel
and said [lower margin of said] shear web member being directly mated together" and/or "at
least one clean out port mounted in one of said side beams, side clean out port including a
movable access member."  For example, issued claim 27 of the '519 patent is reproduced below.

27. A rail road gondola car comprising:
a gondola car body carried by railroad car trucks for rolling
motion along rail road tracks;
said gondola car body having a longitudinal centerline;
said gondola car body having a floor and a wall structure
standing upwardly of said floor, said floor and said wall
structure defining a lading receptacle;
said gondola car body including a pair of lengthwise run-
ning side beams, said side beams defining portions of
said wall structure;
said side beams each having an upper margin, and a longi-
tudinally running shear web member extending pre-
dominantly downwardly of said upper margin;
said floor including at least one floor panel;
said at least one floor panel and said shear web member
being directly mated together; and
at least one clean out port mounted in one of said side
beams, said clean out port including a movable access
member.

## COUNT I
## (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,434,519)

38.    Greenbrier Entities repeat and allege every allegation contained in the foregoing

paragraphs 1–37 as if fully set forth herein.

39.    As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Greenbrier Entities have not infringed and do not infringe any asserted claim of the '519 patent directly or under any theory of indirect infringement, including contributory infringement or inducement.

40.    Greenbrier Entities have not and do not directly or indirectly infringe, literally or under the doctrine of equivalents, any asserted claim of the '519 Patent.

41.    Greenbrier Entities are entitled to a declaratory judgment that they have not and do not infringing, directly or indirectly, literally or under the doctrine of equivalents, any asserted claim of the '519 Patent.

## COUNT II
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,878,125)**

42.    Greenbrier Entities repeat and allege every allegation contained in the foregoing paragraphs 1–37 as if fully set forth herein.

43.    As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Greenbrier Entities have not infringed and do not infringe any asserted claim of the '125 patent directly or under any theory of indirect infringement, including contributory infringement or inducement.

44.    Greenbrier Entities have not and do not directly or indirectly infringe, literally or under the doctrine of equivalents, any asserted claim of the '125 Patent.

45.    Greenbrier Entities are entitled to a declaratory judgment that they have not and are not infringing, directly or indirectly, literally or under the doctrine of equivalents, any

asserted claim of the '125 Patent.

## COUNT III
### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,434,519)

46.     Greenbrier Entities repeat and allege every allegation contained in the foregoing paragraphs 1–37 as if fully set forth herein.

47.     As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the asserted claims of the '519 patent are invalid.

48.     The claims of the '519 patent asserted by NSC in this action are invalid under at least Title 35 of the United States Code, including, for example, Sections 102 and/or 103.

49.     Greenbrier Entities are entitled to a declaratory judgment that the claims of the '519 patent asserted by NSC in this action are invalid.

## COUNT IV
### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,878,125)

50.     Greenbrier Entities repeat and allege every allegation contained in the foregoing paragraphs 1–37 as if fully set forth herein.

51.     As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the asserted claims of the '125 patent are invalid.

52.     The claims of the '125 patent asserted by NSC in this action are invalid under at least Title 35 of the United States Code, including, for example, Sections 102, 103, and/or 112.

53.     Greenbrier Entities are entitled to a declaratory judgment that the claims of the '125 patent asserted by NSC in this action are invalid.

/ /

**COUNT V**
**(Declaratory Judgment of Unenforceability of U.S. Patent Nos. 7,434,519 and 7,878,125)**

54.     Greenbrier Entities repeat and allege every allegation contained in the foregoing paragraphs 1–37 as if fully set forth herein.

55.     As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the '519 patent and the '125 patent are unenforceable.

56.     The '519 patent and the '125 patent are unenforceable and void because one or more individuals associated with the prosecution of the Application that issued as the '519 patent violated their duty of candor and good faith in dealing with the PTO by intentionally and deceptively failing to disclose material information to the PTO during prosecution.

57.     On information and belief, the modified coal cars described in the July 2005 trip report anticipated and/or rendered obvious one or more claims of the '519 patent, for example, claims 1 and/or 27 of the '519 patent.

58.     On information and belief, NSC and one or more of the named inventors were aware that the modified coal cars were prior art to the '519 patent.

59.     On information and belief, no one disclosed the modified coal cars to the PTO during prosecution of the Application that issued as the '519 patent.

60.     On information and belief, during prosecution of the Application that issued as the '519 patent, NSC and one or more of the named inventors knew that the modified coal cars would be material to the patentability of one or more claims of the '519 patent.

61.     On information and belief, the modified coal cars would have been material to the patentability of one or more claims of the '519 patent because at least claims 1 and/or 27 of the '519 patent would not have issued but for the failure to disclose it to the PTO.

62.    On information and belief, NSC and/or one or more of the named inventors knew that the modified coal cars would have been material to the patentability of the claims of the '519 patent and withheld the material information with the improper intent of deceiving the PTO. While Greenbrier Entities have not yet completed discovery, NSC's and/or the named inventors' specific intent to deceive is evidenced by at least the following:

(a)    NSC, the named inventors, and the prosecuting attorneys never informed the PTO of the modified coal cars during prosecution of the Application that issued as the '519 patent;

(b)    even though NSC and one or more of the named inventors had "photos and a video" that, on information and belief, were of the modified coal cars, they never submitted those photos or video to the PTO or otherwise disclosed the design of the modified coal cars to the PTO;

(c)    NSC and the named inventors were well aware of the duty of disclosure due to their execution of a sworn declaration in connection with the Application acknowledging their duty to disclose and Mr. Forbes' prosecution of other patent applications on which he was a named inventor prior to prosecution of the Application that issued as the '519 patent;

(d)    on information and belief, NSC and/or one or more of the named inventors destroyed evidence that depicted the structure of the modified coal cars, including the "photos and a video" referred to in the July 2005 trip report.

63.    Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the PTO, which includes a duty to disclose to the PTO all information known to that individual to be material to

the patentability.

64.     On information and belief, individuals associated with the filing and prosecution of the Application that issued as the '519 patent violated this duty to disclose information material to the patentability of the '519 patent, including, but not limited to, the modified coal cars.  As Greenbrier Entities have not yet completed discovery, Greenbrier Entities may identify additional information material to the patentability of the '519 patent that individuals associated with the filing and prosecution of the Application that issued as the '519 patent, including NSC, the named inventors, and/or the prosecuting attorneys, failed to disclose, including, but not limited to, prior art patents, publications, uses, sales, and/or offers for sale.

65.     The '125 patent is a member of the same patent family as the '519 patents. Specifically, the '125 patent is a continuation of U.S. Patent No. 7,757,611, which is a division of U.S. Patent No. 7,559,284, which is a division of U.S. Patent No. 7,434,519.  As such, the '125 patent is also unenforceable and void because individuals associated with the prosecution of the Application that issued as the '519 patent violated their duty of candor and good faith in dealing with the PTO by intentionally and deceptively failing to disclose material information to the PTO during prosecution under the doctrine of infectious unenforceability.

66.     Greenbrier Entities are entitled to a declaratory judgment that the '519 patent and the '125 patent are unenforceable and void.

<u>**DEFENDANTS' PRAYER FOR RELIEF**</u>

Wherefore, Greenbrier Entities pray for judgment in its favor and against NSC as follows:

A.     Enter judgment against NSC and in favor of Greenbrier Entities and that Greenbrier Entities' counterclaims be granted in their entirety;

B.    Enter judgment that Greenbrier Entities do not infringe any asserted claim of the '519 patent or the '125 patent, directly or under any theory of indirect infringement (including contributory infringement or inducement), literally or under the doctrine of equivalents;

C.    Enter judgment that the claims of the '519 patent and the '125 patent asserted by NSC in this action are invalid under Title 35 of the United States Code, including, for example, Sections 102, 103, and/or 112;

D.    Enter judgement that the '519 patent and the '125 patent are unenforceable and void;

E.    Award Greenbrier Entities their costs and expenses;

F.    That the Court deem this an exceptional case under 35 U.S.C. § 285 and award Greenbrier Entities their costs and reasonable attorneys' fees; and

G.    That the Court award Greenbrier Entities any and all other and further relief that the Court deems just and proper.

## JURY TRIAL DEMANDS

Greenbrier Entities respectfully demand a trial by jury on all claims and issues so triable under Fed. R. Civ. P. 38.

Dated:  July 9, 2021                  Respectfully Submitted,

By: */s/ Steven T. Lovett*
Steven T. Lovett, OSB No. 910701
steve.lovett@stoel.com
Nathan C. Brunette, OSB No. 090913
nathan.brunette@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

Marc S. Cooperman (*Pro Hac Vice*)
mcooperman@bannerwitcoff.com
J. Pieter van Es (*Pro Hac Vice*)
pvanes@bannerwitcoff.com
Audra C. Eidem Heinze (*Pro Hac Vice*)
aheinze@bannerwitcoff.com
Brian Apel (*Pro Hac Vice*)
bapel@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, IL  60606
Telephone:  312.463.5000
Facsimile:  312.463.5001

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of July 2021 a true and correct copy of Defendants Greenbrier Leasing Company, LLC's and Greenbrier-Concarril, LLC's Answer, Affirmative Defenses, and Declaratory Judgment Counterclaims to First Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

/s/ Steven T. Lovett
Steven T. Lovett, OSB No. 910701
steve.lovett@stoel.com