UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NATIONAL STEEL CAR LIMITED,

        Plaintiff,

    v.

THE GREEBRIER COMPANIES, INC.,

        Defendant.

Case No. 3:20-cv-01275-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff National Steel Car Limited ("NSC") and defendant The Greenbrier Companies, Inc. ("Greenbrier") have filed motions asking the court to clarify or reconsider the portion of its claim construction order regarding the terms "floor panel" and "deck." NSC Mot. Clarification or Reconsideration, ECF 130; Greenbrier's Mot. Partial Reconsideration, ECF 132. The court denies Greenbrier's motion and grants NSC's motion for the reasons set forth below.

    A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Adidas Am.,*

1 – OPINION AND ORDER

*Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1179 (D. Or. 2008) (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) ("[R]econsideration is appropriate only in very limited circumstances."). "Motions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised in earlier litigation.").

The parties initially proposed the following constructions for the terms "floor panel" and "deck":

| NSC's Proposed Construction | Greenbrier's Proposed Construction |
|---|---|
| A "deck" or "floor panel" can be one piece, or a plurality of pieces joined together, and may also include one or more extensions, which may be integral, or which can be separate | floor sheet, or abutting floor sheets joined together, that may have one or more integral or abutting floor extensions |

In its prior order, the court adopted the word "sheet," as Greenbrier suggested, rather than the word "piece" suggested by NSC. Indeed, Claim 15 of the '125 Patent provides that "at least half of said deck is formed from a single monolithic piece of steel *sheet*." ECF 1-2, at 67 (emphasis added). Further confirming that the deck is made of a steel sheet, Claim 15 states that "said web of said first side wall is *welded* directly to said deck." *Id.* (emphasis added). To "weld" means "to unite (*metallic* parts) by heating and allowing the *metals* to flow together or by

hammering or compressing with or without previous heating." *Weld*, *Merriam-Webster*, https://www.merriam-webster.com /dictionary/weld (last visited July 5, 2021) (emphasis added).

Language from the '519 Patent also supports a construction that uses the word "sheet." According to Claim 10 of the '519 Patent, the floor panel can be "the only floor panel of said rail road gondola car." ECF 1-1, at 65. Alternatively, Claim 11 states that the "majority of said floor panel is made from one said floor panel." *Id.* Either way, the '519 Patent contemplates at least one very large floor panel, which is consistent with a "sheet" rather than, for example, the wooden planks alluded to by NSC in its original briefing. *See* NSC's Reply 23, ECF 99. Finally, Claims 1 and 15 of the '519 Patent reiterate that there is "at least one floor panel." ECF 1-1, at 66. In sum, a person of ordinary skill in the art would conclude that a floor panel or deck is a sheet and that there can be more than one sheet.

The court previously rejected Greenbrier's argument that the floor sheets must be abutting. Greenbrier asks the court to reconsider this ruling, again relying on excerpts from the detailed descriptions and embodiments of the patents, which state in pertinent part:

> Flooring . . . *may* include a floor panel . . ., which may be made of a plurality of floor sheets joined together, in an abutting fashion such as *may* yield a continuous lading containing surface, or, in one embodiment, may be made from a single, monolithic steel sheet 46.

ECF 1-1, at 49 (emphasis added). However, as the court already recognized, the word "may" is permissive, not mandatory. Moreover, while the detailed descriptions and embodiments refer to abutting sheets, nothing in the claims themselves dictates that floor sheets must be abutting. "Consistent with the principle that the patented invention is defined by the claims, . . . limitations cannot be read into the claims from the specification[.]" *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999); *Phillips v. AMH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (recognizing that reading a limitation from the written description into the claims is

3 – OPINION AND ORDER

"one of the cardinal sins of patent law") (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)); *Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

The court also rejected Greenbrier's argument that floor extensions must be abutting, which Greenbrier asks the court to reconsider. Greenbrier again relies on permissive language from the detailed descriptions:

> Floor panel **344** may have floor panel extensions **484** that underlie stiffeners **422** and that may be of the same nature as extensions **188** described above, being integral parts of a larger sheet, cut to the desired size. Alternatively, extensions **484** may be fabricated piecemeal, as stub plates, and welded in planar abutment to the laterally outboard margin of floor sheet **346.**

ECF 1-1, at 59; *see also* ECF 1-2, at 60. But the claims do not contain a requirement that floor extensions must be abutting, and instead describe floor extensions simply as follows:

> 17. The rail road gondola car of claim 15 wherein said side beams include an upwardly standing post that extends upwardly from said at least one floor panel, outboard of said shear web member; and said *at least one floor panel extends past said shear web member and underlies at least a portion of said post*.
> . . .
> 21. . . . said side beams include an upwardly standing post that extends upwardly from said at least one floor panel, outboard of said shear web member; and said *at least one floor panel extends past said shear web member and underlies at least a portion of said post*.
>
> said side beams include an upwardly standing post that extends upwardly from said at least one floor panel, outboard of said shear web member; and said *at least one floor panel extends past said shear web member and underlies at least a portion of said post*.

ECF 1-1, at 65 (emphasis added).

>   14. The rail road gondola car of claim 13 wherein said deck has a corresponding deck extension that extends under said first stiffener and to which said first stiffener is mounted, said deck extension having a central portion under said first stiffener, said central portion having a most laterally outboard margin.

ECF 1-2 at 67.

Thus, the court did not commit "clear error" in its prior decision that sheets and extensions do not have to be abutting. *Sch. Dist. No. 1J*, 5 F.3d at 1263. Greenbrier's motion for reconsideration is therefore denied.

However, in its motion, NSC correctly observes that removing the word "abutting" from Greenbrier's construction leads to the following result: "floor sheet, or floor sheets joined together, that may have one or more integral floor extensions." This leaves out the possibility that an extension may be separate from the floor panel, which certainly was not what the court intended and contrary to what is permissible under the claims. Therefore, the court follows NSC's proposed solution and adopts this construction: A "deck" or "floor panel" can be one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate.

   IT IS SO ORDERED.

   DATED  November 19, 2021.

      /s/ Youlee Yim You
   Youlee Yim You
   United States Magistrate Judge

5 – OPINION AND ORDER