1             IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF OREGON

3   NATIONAL STEEL CAR LIMITED,        )
                                       )
4          Plaintiff,                  )    3:20-cv-01275-YY
                                       )
5   vs.                                )    April 26, 2022
                                       )
6   GREENBRIER-CONCARRIL LLC, et al.,  )    Portland, Oregon
                                       )
7          Defendants.                 )

8

9

10              (Telephonic Motion Hearing )

11          BEFORE THE HONORABLE YOULEE M. YOU

12        UNITED STATES DISTRICT COURT MAGISTRATE

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                            APPEARANCES

2

    FOR THE PLAINTIFF:       Megan M. New
3                            Craig D. Leavell
                             Barnes & Thornburg LLP
4                            One N. Upper Wacker Drive, Suite 4400
                             Chicago, IL  60606
5

6                            C. Marie Eckert
                             Miller Nash LLP
7                            111 SW Fifth Avenue, Suite 3400
                             Portland, OR  97204
8

9                            Daniel A. Valenzuela
                             Barnes & Thornburg LLP
10                           2121 North Pearl Street, Suite 700
                             Dallas, TX  75201
11

12   FOR THE DEFENDANTS:     Marc S. Cooperman
                             Brian T. Apel
13                           J. Pieter van es
                             71 S. Wacker Drive, Suite 3600
14                           Chicago, IL  60606

15                           Steven T. Lovett
                             Stoel Rives, LLP
16                           760 SW Ninth Avenue, Suite 3000
                             Portland, OR  97205
17

18

19

20

21   COURT REPORTER:         Dennis W. Apodaca, RDR, FCRR, CRR
                             United States District Courthouse
22                           1000 SW Third Avenue, Room 301
                             Portland, OR  97204
23                           (503) 326-8182

24

25
```

1                                    INDEX

2

3    Telephonic motion hearing                                    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              (April 26, 2022)

2                         P R O C E E D I N G S

3              (Telephonic motion hearing:)

4              THE COURT:  Good morning, Counsel.  This is

5    Judge You.  Before we get started, I would like to confirm

6    that we are scheduled today for a discovery hearing in

7    National Steel Car Limited versus Greenbrier, LLC.  It is

8    case No. 20-cv-1275.

9              As you heard, we have a court reporter who is

10   going to be doing his best to ensure that we have an

11   accurate transcript of the proceedings, so please make sure

12   to articulate what it is you are saying, not speak too

13   quickly, particularly if you are reading, and also identify

14   yourself before making your remarks.

15             Do we have an attorney for plaintiff on the line?

16             MS. NEW:  Yes, Your Honor.  This is Megan New from

17   Barnes & Thornburg for the plaintiff.

18             MS. ECKERT:  Your Honor, Marie Eckert from

19   Miller Nash on behalf of plaintiff as well.

20             MR. VALENZUELA:  Daniel Valenzuela on behalf of

21   plaintiff as well.

22             MR. LEAVELL:  Your Honor, Craig Leavell is also on

23   the line for National Steel Car, more or less just listening

24   in.

25             THE COURT:  Sure.  Thank you.

 1              What about for the defense?

 2              MR. LOVETT:  Yes, Your Honor.  This is

 3    Steve Lovett, Oregon counsel for the defendants.  Also on

 4    the call are Pieter van Es, Brian Apel, and Marc Cooperman

 5    who will argue on defendants' behalf.

 6              THE COURT:  Thank you very much.

 7              As I mentioned, we are here for a discovery

 8    hearing.  I have a number of emails that you've provided.

 9    Let me say first how helpful it has been to read your

10    emails.  They are very clear and outline the issues for

11    today.  I just want to confirm that no additional email was

12    submitted after April 13th, the Greenbrier email, on that

13    date.

14              Is that correct?

15              MS. NEW:  That's correct, Your Honor.

16    Megan New on behalf of the plaintiff.

17              THE COURT:  All right.  Thank you.

18              Let me ask how you would like to proceed in

19    discussing these requests, which appear to be related.

20              MR. COOPERMAN:  They are, Your Honor.

21              THE COURT:  Who was speaking?

22              MR. COOPERMAN:  I'm sorry, Your Honor.  This is

23    Marc Cooperman on behalf of defendants.

24              THE COURT:  All right.  I'm wondering if we should

25    talk more broadly about the first request and then move to

1    the second request.

2            MR. COOPERMAN:  That makes sense to me,

3    Your Honor.

4            Again, this is Marc Cooperman.

5            I'm happy to try and frame the issues since these

6    are issues that defendants have raised, if you think that

7    might make sense.

8            THE COURT:  I would like to make one observation,

9    which is that you seem to be -- first of all, let me say

10   that in looking at the case law that has been submitted, I

11   find that this THX Limited v. Apple, Inc. case from the

12   Northern District of California to be persuasive.  There,

13   the Court said:  "Courts in this district have compelled

14   patent plaintiffs to provide the factual bases for their

15   damages claims through initial disclosures and written

16   discovery, over protestations that responsive information

17   will be forthcoming through expert reports."

18           I find that to be persuasive in that I don't quite

19   see why there shouldn't be ongoing discovery on the issue of

20   damages that can be supplemented and further explored during

21   the course of expert discovery.  That being said, I also

22   understand that you're at a little bit of an impasse here in

23   that NSC's response -- and I'm just broadly responding

24   here -- there is some claim that NSC needs some information

25   from Greenbrier in order to adequately respond.  So I wanted

1    to just point that out and ask how -- the thought that came

2    to my mind was a chicken-and-egg scenario.  So I'm wondering

3    if you could talk about that at the outset so that I can

4    wrap my brain around that issue.

5             MR. COOPERMAN:  Yeah.  Absolutely Your Honor.

6    Again this is Marc Cooperman.

7             Of course NSC has to provide a computation of its

8    damages, and that's required by Rule 26 in its initial

9    disclosures.  So we should be seeing a dollar sign and some

10   explanation of what its position is.  The fact that

11   discovery is ongoing and/or may not be completed doesn't

12   excuse NSC -- this is going to your chicken-and-egg analogy,

13   Your Honor.

14            In fact, the rule, Rule 26(a), specifically says

15   that a party is not excused from making its disclosures

16   because it has not fully investigated the case.  So you can

17   kind of start out maybe with a small chicken or a small egg

18   based on what the plaintiff knows.

19            We should then be able to get from them, based on

20   what they have, their preliminary damages computation and

21   then they supplement throughout the case.  As Your Honor

22   said, discovery is ongoing.  That's the typical case.

23            Unfortunately, here, there was nothing -- no

24   computation given to us in its initial disclosures from NSC,

25   and then throughout discovery there has been no computation

```
 1   given to us or supplemented by NSC.  We submitted an
 2   interrogatory supplementing the initial disclosure
 3   requirement asking for information about their damages
 4   claim, the factual support -- that was interrogatory No. 13
 5   that we have cited to Your Honor -- and we still didn't get
 6   any sort of computation.  And it is more than just the
 7   dollars, right.  It's an explanation of the basis for the
 8   damages as well.
 9           So we contacted them.  And we had a dispute.  We
10   couldn't resolve it, so we raised it with Your Honor, now
11   going on, I think, over two months ago.  It's part of that
12   briefing that Your Honor just mentioned that NSC actually
13   promised to supplement its initial disclosures or its
14   interrogatory response No. 13.  "Supplement" is an
15   interesting word, because they didn't ever provide it in the
16   first place.  And they haven't, even today.  Discovery
17   closed last Friday.  Fact discovery closed with the
18   exception of two financial related officers from NSC that we
19   are deposing because of scheduling conflicts.
20           Fact discovery closed last Friday, and NSC still
21   hasn't provided any computation or explanation for its
22   computation, and it could have given up something and
23   continued to supplement as it receives more information.  I
24   understand the chicken-and-egg saying.  And sure, we have
25   been providing documents along the way, but we started --
```

1   Greenbrier started providing its financial information

2   before this case was even transferred to Your Honor.

3   Remember, this case started out, I think, in Texas and then

4   got transferred.

5            In Texas, we provided the names of our customers,

6   the revenues, the costs, the profitability for many of our

7   accused products.  As a starting point, that was close to

8   two years ago, and we have supplemented since.  The point

9   being, again, NSC could have and should have been providing

10  computations all along, and we got nothing.

11           So our position at this point, Your Honor, is that

12  by having not provided any computation of damages, and now

13  that discovery is closed, they should not be allowed to

14  claim damages.

15           That's the principal relief that we are looking

16  for on this be particular issue.  They shouldn't be allowed

17  to just wait and spring it on us in their expert report.

18  That's not the way it works.  It's backwards.  We're

19  supposed to get their factual bases and then have a chance

20  to fairly test those claims and numbers and facts and

21  evidence with their witnesses before we get to expert

22  discovery.

23           So I hope that addresses your questions,

24  Your Honor.

25           THE COURT:  Thank you, Counsel.  On that last

1   point that you made with respect to foreclosing NSC from

2   seeking damages because it has not provided information

3   regarding damages during fact discovery, I understand why

4   you're making that request.  However, that can be easily

5   remedied by reopening fact discovery for NSC to provide that

6   information.  So I just wanted to take that option off the

7   table so that we are all clear that that's not going to

8   happen, where there is an alternative remedy.

9            MR. COOPERMAN:  I certainly understand

10  Your Honor's hesitance.  Discovery has been going on for

11  quite some time, and I would hate for it to have to continue

12  on for a lot longer.  On the other hand, we don't want to be

13  blindsided either.  So I completely understand what you're

14  saying.

15           We'd request, if Your Honor wouldn't go down that

16  road of prohibiting damages, that you order NSC to provide

17  its computation of damages and its underlying facts and

18  evidence and the other things that we asked for in our

19  March 10th letter to you within a week so that we can go

20  ahead.  We have these depositions on the table, as I

21  mentioned, Your Honor, of their chief financial officer, and

22  as I've said, the head of marketing and sales, both heavily

23  related to damages claims, and those are coming up in the

24  next couple of weeks.  So we would ask that you order NSC to

25  provide computations and the other things that we've asked

1    for no later than a week from today.

2              THE COURT:  Can you please respond to NSC's

3    statements -- it is in the last paragraph of their email

4    response -- that NSC will supplement its response to

5    interrogatory No. 13 in a reasonable time period as soon as

6    Greenbrier complies with the discovery obligations relating

7    to damages.

8              Would you please respond to that specifically.

9              MR. COOPERMAN:  Sure.  I think Your Honor is

10   asking about whether we have or what ongoing discovery that

11   we haven't provided that they need?  Is that what you are

12   asking?

13             THE COURT:  That's right.  And also to -- just one

14   moment, please.  I think it is addressed in a couple of

15   paragraphs in more detail.

16             MR. COOPERMAN:  Would you like me to jump in?

17             THE COURT:  Yes.  Go ahead.

18             Anyway, it's more specifically detailed in NSC's

19   response.  So what are your thoughts on what they're

20   asserting here, that they need specifically more information

21   from Greenbrier in order to be able to respond themselves?

22             MR. COOPERMAN:  Sure.  So a few thoughts on that.

23             First, specifically, on June 1st, 2020, so going

24   on two years ago, the case was transferred from Texas to

25   Oregon.  Prior to that or right around that same time we

1    provided -- Greenbrier provided detailed cost and revenue

2    information and customer names to NSC in connection with the

3    earlier case.  About a year later we gave them even that

4    much more information in June of 2021.  So that was about a

5    year ago.  So about two years ago we provided information in

6    the original case.  Then a year ago we provided a lot more

7    information after discovery was ongoing.  Let me add that

8    the first disclosure we provided was before fact discovery

9    was done, because we had this venue valve going on in Texas.

10         So NSC has had from Greenbrier specifically

11   information concerning our customer names, the revenues that

12   we sold the accused products for, the costs that were

13   associated with those accused products, and the

14   profitability.  And as time has gone on, we have

15   supplemented that specifically.  One of the dates that we

16   specifically supplemented on was June 8th, 2021.

17         So they have a lot of information.  They should

18   have everything they need now to complete their computation,

19   but they haven't even provided an initial computation,

20   Your Honor, as mentioned before.

21         The rule, again, requires that plaintiff -- both

22   parties provide -- like I said, in this situation the

23   plaintiff, because the computation is the plaintiff's

24   burden.  But they need to provide that information, their

25   computation, based on what they know at the time and then

1    supplement.  And they've known a lot all along the way.  So

2    they should not be allowed, even as the rule specifically

3    says, Rule 26, to hide behind the fact that supposedly

4    Greenbrier hasn't provided everything.  They should be

5    providing their computation based on what we have provided.

6         Your Honor, we have provided everything that

7    they've requested.  One of the ways that you can know that

8    is that NSC hasn't ever filed their own motion saying, "Oh,

9    we are missing X,Y, and Z from Greenbrier."  It hasn't

10   happened.  Even if arguably there was something that we

11   missed, that still, again, shouldn't stop NSC from providing

12   its computations based on what it does know.  And it has

13   never provided a single computation supporting evidence of

14   that.

15        THE COURT:  Can I ask you also -- and I'm sure NSC

16   wants to respond.  I have just one more question for

17   Greenbrier, and that has to do with the NSC's response.

18   It's the sentence in which NSC asserts "Greenbrier refused

19   to answer any additional interrogatories on the basis that

20   NSC reached its 25-interrogatory limit and would not respond

21   to any subsequent interrogatories."  Could you briefly

22   address that, and then I'll check in with NSC.

23        MR. COOPERMAN:  Sure.  So this is a position that

24   both parties have taken towards the end of discovery that

25   sometimes happens.  So at some point we, Greenbrier, said,

1    "You're over your 25-rog. limit," and the parties hadn't

2    agreed to go beyond that.  And NSC has said the same thing

3    to us and has refused to respond to interrogatories that it

4    believes is over the 25-interrogatory limit.

5              I don't know, sitting here, Your Honor, what

6    specific interrogatory NSC may be challenging that we

7    haven't answered because of the 25-interrogatory limit, but

8    I'm unaware of any information that NSC is missing that

9    would be required for its damages calculation.  I don't

10   know -- I don't believe that the 25-interrogatory limit has

11   prevented us -- or has caused Greenbrier not to provide the

12   information on damages that NSC would need to complete its

13   calculation or its computations.

14             THE COURT:  All right.  Thank you.

15             Let me turn to NSC.  Who is going to be arguing

16   today?

17             MS. NEW:  Good morning, Your Honor.  This is

18   Megan New on behalf of the plaintiff.

19             THE COURT:  Okay.  So we've discussed a lot so

20   far.

21             Is there anything in particular you would like to

22   begin with?

23             MS. NEW:  Sure.  I will try to kind of go through

24   the points that you raised, Your Honor, and respond to

25   Mr. Cooperman as best as I'm able.  Of course, if you have

1    questions, please let me know, and I'll stop.

2         So the first thing that I want to acknowledge is

3    that we have -- and this is based on Your Honor's comment

4    about the THX case.  We have provided a lot of facts in

5    response to the interrogatory, including our initial

6    analysis of the Georgia-Pacific factors, which as I'm sure

7    Your Honor knows, is part of the reasonable royalty analysis

8    that an expert would conduct.

9         The reason that we haven't been able to provide a

10   computation of damages yet is for several reasons.  No. 1,

11   as I'm sure Your Honor knows, in a patent case the focus of

12   the damages number is on the defendants' profits, the

13   defendants' revenue, the defendants' pricing, how the

14   defendant sells its product, the value it assigns to the

15   patented versus the non-patented features.  It is not as

16   simple as saying, "You sold X number of products," and you

17   multiply that by an arbitrary royalty rate.

18        Similarly, for the lost profits analysis, we need

19   detailed information about the defendants' revenue, to which

20   we would apply our profit margin, but we also need

21   information that would allow us to address the Panduit

22   factors that go into lost profits.  So it is not a simple

23   math calculation.

24        We have been waiting for discovery on those

25   issues.  There have been financial documents that have been

1    provided, but they have been -- as Mr. Cooperman just said,

2    have been supplemented over time.  In fact, we are waiting

3    right now for a new supplement to address an additional

4    order that will be subject to damages.  So we don't yet have

5    all of the information that we need.

6         What we also needed was a 30(b)(6) witness who

7    could explain the documents to us.  As I'm sure you've seen,

8    Your Honor, these financial documents aren't very easy to

9    understand.  We need to make sure we understand how things

10   like price, revenue, costs, any allocations -- relate how

11   all of that goes into reaching a profit.

12        Then we need to understand other information that

13   may not be in those documents that go into a company's

14   overall calculation of its revenues and profits related to

15   the infringing products.  We were just able to take that

16   deposition last Monday, so we don't yet have the final

17   transcript for that.  We, of course, will need that

18   information to do our damages analysis.

19        I think the third point importantly is that all of

20   Greenbrier's financial documents are designated "highly

21   confidential," and so they are not documents that we can

22   show to our client.  They are only documents that counsel

23   and a disclosed expert can consider.  So we have provided

24   that information to our expert, but as they just noted, this

25   isn't a simple rate times base calculation.  There is a very

1    involved process that the experts have to go through to

2    arrive at the damages number.  So providing -- we could

3    provide an estimate, a calculation now, but it wouldn't be

4    based on any of the economic or accounting considerations

5    that an expert takes into account when putting together an

6    opinion.

7              What it seems that defendants are asking for is

8    our expert opinions, if you look at the laundry list of

9    information that they are asking you to come up with to

10   provide at the end of the March 10th email.  So it puts, I

11   think, an undue burden on us and our experts to go through

12   an entire casework of discovery and put together our entire

13   damages case and damages opinions.

14             I think Mr. Cooperman asked us to do that in one

15   week, and that would kind of -- it wouldn't make a lot of

16   sense, given the scheduling order.  We have a date for

17   expert reports.  The date is in nearly two months, and

18   that's to give the experts time to access the discovery, to

19   look at all of the depositions, to consider all of the

20   financial information, and to come up with a model and with

21   numbers that make sense and are defensible from, again,

22   accounting and economic principles.  So I don't think we are

23   in a position to provide that computation.  And if we did

24   provide it, I would think it would most likely be different

25   than what the expert would ultimately say at the time of

1    expert discovery.

2           With respect to your question, Your Honor, about

3    the NSC rogs. to which Greenbrier has not provided a

4    response, those are three interrogatories.  They are

5    interrogatories Nos. 14, 15, and 17.  Three of them relate

6    to damages.  That is information that we either need or

7    would like to have before we depose their 30(b)(6) witness.

8           But in order to not burden the Court with so many

9    disputes around damages, we didn't raise it.  But certainly

10   it would have been helpful to have defendants' position in

11   writing about things like profit, market share, customer

12   goodwill, demand, what Greenbrier views to be the value of

13   the infringing products, how they calculate pricing, how

14   they calculate value.  Those are all things that we asked

15   for in interrogatories, and they refused to provide it.  So

16   we are kind of in a situation here -- and I fully recognize

17   that it is the plaintiff's burden to prove damages.  But

18   what they want is us to provide our entire expert analysis,

19   opinions, and damages numbers before the time of expert

20   opinions without giving us anything in return.

21          The last thing I would point out is that the one

22   part of both the lost profits and the reasonable royalty

23   calculation is that we have to consider whether there are

24   viable non-infringing alternatives.  We served an

25   interrogatory asking defendant to identify non-infringing

1   alternatives, and they have.  But they've also been

2   supplementing that interrogatory.  We just received the most

3   recent supplement, I think, a week or two ago.  So that is

4   other additional information that goes into a damages

5   calculation.

6          So I think we would be, Your Honor, happy to

7   provide -- if Greenbrier needs it, we would be happy to

8   provide more factual information and citation to documents

9   on which our expert may rely, but our expert needs time to

10   come up with the damages computation and to come up with the

11   opinions and the models to determine what the ultimate would

12   be.  And if we're providing that -- if defendants intend to

13   provide that at the time for expert discovery, then we

14   should be allowed to do the same.

15          THE COURT:  Let me ask, with respect to the

16   interrogatories, Greenbrier's counsel mentioned that both

17   parties had expressed that the limit had been reached.

18   Could some of this dispute be resolved by increasing the

19   number of interrogatories?

20          MS. NEW:  I think potentially it could be.  I

21   apologize, Your Honor.  In front of me, I don't have the

22   exact interrogatories that we have not responded to,

23   although I believe we have provided responses up to

24   interrogatory No. 21.  Defendants, I believe, stopped

25   providing responses at interrogatory No. 13.  So there is a

1    little bit of an imbalance there, but I certainly think that

2    if we were able to get responses on these damages issues,

3    there may be a compromise that the parties could reach.

4            THE COURT:  So one of the things that you are

5    saying is that you need some additional information from

6    Greenbrier in order to be able to come up with the damages

7    figure and also that you need your expert to do the

8    assessments in order to accurately compute damages.  Just

9    broadly speaking, that's what you're saying.

10            MS. NEW:  That's correct, Your Honor, although I

11   want to be very clear that we are waiting on a supplement to

12   the accused product's specific financial information.  My

13   understanding is that it will be updated to just reflect one

14   additional order, but all of those orders, for reasonable

15   royalty calculation, goes into what we call the royalty

16   base.  For lost profits, we need to consider that order to

17   determine whether that is a sale that NSC likely would have

18   made but for the infringement.  So it would be -- without

19   that information, it would be an incomplete computation, if

20   we are talking just about numbers.

21            But as I'm is sure Your Honor knows, in a patent

22   case, there are very stringent rules about what an expert

23   needs to do to calculate damages, and there is very specific

24   considerations and factors that they need to take into

25   account.  That's why we have this additional two-month

1    period after the fact discovery deadline so that the experts

2    can analyze all of that data, can figure out the right and

3    appropriate and in line with a Federal Circuit precedent way

4    to calculate damages.

5            It is not -- as I said before -- and I apologize

6    for repeating myself.  It is not a simple math calculation.

7    There are a lot of components and information that goes into

8    the calculations.

9            THE COURT:  All right.  Thank you, Counsel.

10           Let me turn back to Greenbrier briefly and ask

11   what if, hypothetically, the case progresses as it is right

12   now, some additional interrogatories are allowed, and NSC

13   prepares its expert report, where is the harm as Greenbrier

14   sees it?  Are you concerned that because fact discovery has

15   closed that you will not be able to make inquiries and get

16   information with respect to what's contained in the expert

17   report?

18           MR. COOPERMAN:  Not exactly, Your Honor.  Again,

19   this is Marc Cooperman.

20           It is more an issue of timing and fact discovery

21   versus expert discovery.  We're focusing right now in our

22   request on fact discovery and being able to, A, on the one

23   hand, get NSC's factual position.  For example, if NSC says

24   we have a 20 percent profit margin, we learn that fact

25   during fact discovery, and we learned that fact by NSC

1    providing its computation of damages and an explanation for

2    that.

3          During fact discovery, we can then challenge that.

4    We can depose their CFO, who we have scheduled to depose

5    within the next ten days -- actually, next week.  Then we

6    can say, "What goes into why you believe you have a

7    20 percent profit margin?"  We can challenge that.  We can

8    look at their documents if we have that, and we can ask

9    questions about that during fact discovery and learn the

10   facts.

11         Then once fact discovery is over, we can then see

12   the facts and positions to our expert, and NSC can do the

13   same to their expert.  If, on the other hand, we have to

14   wait to get this information as part of NSC's expert report

15   after fact discovery has closed, and we haven't had a chance

16   to ask NSC's fact witnesses, the two who are left, again,

17   their chief financial officer and the vice president of

18   marketing and sales, if we haven't had a chance to ask

19   questions during fact discovery, and based on information

20   NSC has provided us during fact discovery, then we are

21   prejudiced, because we are going to have to wait to learn

22   what these facts are in expert discovery, and that's wrong.

23   That's not the way the rules are supposed to work.  It is

24   the other way around.  We are supposed to get the facts and

25   information in the initial disclosures and throughout the

1   rest of discovery, factually be able to then challenge it,

2   rebut it, ask questions about it during fact discovery, and

3   then give that information to our experts and look at their

4   reports and then conduct expert discovery.

5          So there is significant harm to Greenbrier in

6   waiting for the expert's report before we get the actual

7   facts, Your Honor.

8          THE COURT:  Thank you.

9          I have a question for NSC's counsel.  So there are

10  a number of factors that you've identified that go into the

11  damages calculation.  Of course, your expert is going to

12  have to do that computation.  But the underlying factors, it

13  seems, and you identified a list of them, is known at this

14  time.  So why not provide that information to Greenbrier,

15  even though you haven't done the expert calculation, as

16  Mr. Cooperman has just described?

17         MS. NEW:  Well, Your Honor, at least as it relates

18  to the reasonable royalty calculation, we have provided some

19  of those facts.  We did provide Greenbrier with a detailed

20  interrogatory response that walks through NSC's kind of

21  preliminary position on how the Georgia-Pacific factors

22  would affect a royalty rate, either raising the rate or

23  lowering the rate.  So we have given them that information.

24         And as I said a minute ago, I think we would be to

25  supplement the interrogatory response to provide additional

1    citation to documents or other factual bases that our expert

2    may rely on.  We would be happy to do that.

3            I do want to address what I think is a little bit

4    of a misrepresentation by Mr. Cooperman.  He uses this idea

5    of our profit margin as an example of facts that NSC

6    shouldn't be withholding from Greenbrier during discovery.

7    Just so Your Honor is clear, that is not the case.  We have

8    provided detailed financial information for the commercial

9    embodying products.

10           As Mr. Cooperman just said, they are going to have

11   an opportunity to depose our CFO next week and ask questions

12   about those financials, including information like revenue,

13   costs, and profit margin.

14           I would also like to point out that, in a patent

15   case, the focus of damages is typically on the defendants'

16   financials and the defendants' information.  So we are

17   not -- Mr. Cooperman has kind of framed this to you as

18   though we have withheld all facts and information related to

19   damages, and I just want Your Honor to be clear that that's

20   not the case.  Everything has been produced and provided to

21   Greenbrier.

22           If the Court is inclined to order us to move

23   forward with a supplement to the interrogatory and add that

24   information, citations to specific documents on which we may

25   rely, that our expert may rely for the damages opinions, we

1   would be happy to do that.  Again, this is all information

2   that has been produced in the case.  It would simply be a

3   matter of collecting the information into an interrogatory

4   response.  I just want to be crystal clear that nothing has

5   been withheld, and there is not going to be any surprise

6   opinions about NSC's profit from expert discovery.

7           THE COURT:  Thank you, Counsel.

8           I do want to get to the information that you are

9   seeking from Greenbrier in just a moment.

10          But I would like to go through this list of

11  requests that Greenbrier makes in its first email dated

12  March 10th.  It is asking the Court to order NSC to

13  supplement its response to interrogatory No. 3.

14          MR. COOPERMAN:  No. 13.

15          THE COURT:  I'm sorry.  Thank you.  No. 13.

16          The amount of damages that NSC contends it is

17  entitled to and related computation; the amount of lost

18  profit damages NSC contends it is entitled to and its

19  computation, including NSC's profit margin and

20  identifications of sales that NSC contends it would have

21  made but for Greenbrier's alleged infringement.

22          Specifically pertaining to this that I just

23  described, what is NSC's response to that?

24          MS. NEW:  Your Honor, we would be able to

25  provide -- again, we provided the financial information, so

1   we would be able to provide a 33(d) response to the document

2   that contains the profit margins.  I think that would be

3   simple to do.

4          The second piece, the identification of the

5   specific sales that NSC contends it would have made but for

6   Greenbrier's alleged infringement, that is, again, I think,

7   very squarely subject to expert discovery.

8          For the lost profit calculation, there are four

9   Panduit factors that the expert is going to have to

10  consider, and there is various testimony and documents that

11  will go into identifying those sales.  Certainly we have

12  provided documents that show what jobs NSC has made

13  proposals for and where those sales have instead gone to

14  Greenbrier.  So Greenbrier does have that information.  And

15  if they need it, we can provide them with a 33(d) response

16  identifying those documents.  But identifying the specific

17  sales, again, is something that our expert will need to go

18  through and ensure that all of the Panduit factors are met

19  and that there is a reliable economic or accounting basis

20  for claiming those damages.

21         MR. LEAVELL:  Your Honor, this is Craig Leavell.

22  If I could add one thing to that.

23         With respect to our clients, we have been working

24  with our clients and trying to do the best we can to get

25  their impression of which sales they think they lost out to

1    Greenbrier.  But again, remember, our client and our

2    internal people at NSC are not allowed to see Greenbrier's

3    documents.  They marked them all "attorneys' eyes only."

4            They don't know when they are competing against

5    Greenbrier.  They may suspect it, but their customers don't

6    say "on every occasion."  Rarely they give a heads-up,

7    "Okay, we are going to go with Greenbrier instead of you

8    guys."

9            So the only people who can sit through and look at

10   all of the documents and say, "Okay, it looks like this sale

11   that Greenbrier made was at the expense of NSC due to the

12   infringement" are people that have access to both sets of

13   documents, NSC and Greenbrier's.  That's our experts, and

14   they are working on that and have been working on that.

15   There are hundreds of thousands of documents that have been

16   produced in this case to go through.  Lawyers can sit and do

17   that, I guess, but we have been focusing on getting through

18   fact discovery and getting that done and getting documents

19   produced, getting written discovery out, and that's

20   something that we have been prioritizing that the lawyers

21   have access to both sets of documents.  That's what we have

22   delegated to our experts, just to keep things -- in a

23   desperate attempt and fruitful attempt to try to keep things

24   reasonable from a cost perspective, I've delegated that to

25   the experts, and they are working on that.

1          Again, we can't just go to our client and say

2    which sales that Greenbrier made were at the expense of NSC,

3    because our client doesn't know what sales Greenbrier made.

4    They marked all that stuff confidential.  So we can't go

5    tell them, "Here are all of Greenbrier's sales.  Here is

6    when they made them.  Here is what price they were quoting.

7    Was Greenbrier the reason you lost this sale?"  It is not

8    like we can just sit with our client and do this analysis.

9    This is the realm of the experts.

10          THE COURT:  Thank you, Counsel.

11          You expect, though, that your experts will be able

12    to do that analysis?

13          MR. LEAVELL:  Yes, of course, eventually.  And now

14    that fact discovery is closed -- almost closed, technically

15    closed but some carryover is going, they are digging in and

16    starting that analysis.  They told us that it is going to

17    take them at least a month, and that's if they set things

18    aside and work more than they planned to on this case in the

19    next month, given the deadline for the report is not for two

20    months.

21          THE COURT:  I understand that.  I think if I were

22    to guess what Greenbrier's response would be to what you

23    just said, it's that they would like to know what that is,

24    the identification of the specific sale, so that before fact

25    discovery closes they can ask questions of NSC's employees

 1   with regard to those sales.  Let me just make sure that that

 2   is in fact what Greenbrier is asking.

 3            Is that correct?

 4            MR. COOPERMAN:  Your Honor, that is correct.  We

 5   need to be able to ask questions about the facts that we are

 6   learning during fact discovery and ask those questions of

 7   NSC's witnesses, Your Honor.  So that's exactly right.

 8   Waiting until expert discovery is putting the cart behind

 9   the horse.  It is not the way the rules anticipated.

10            THE COURT:  An alternative would be, and I'm sure

11   nobody wants this to happen, is the experts conduct their

12   reports, then because they base some of their computations

13   on particular evidence, you reopen discovery so that you can

14   ask the people with information about, for example, "Here

15   are specific sales," you can ask for more information about

16   that.  But that's just going to delay things.  Then there

17   will be perhaps more information that will require the

18   experts' advice, of course.  It seems like -- while I

19   appreciate that, that the experts cannot do their final

20   computations and certainly are not expected to do their

21   final computations, the information that they are going to

22   base their reports on is not subject to fact discovery,

23   isn't it?  Then why shouldn't Greenbrier have information

24   about that so it can conduct discovery on the facts that the

25   experts are going to be making their decisions on?

1            From an efficiency standpoint, I don't see how you

2   can do it any other way.  It sounds like somebody wants to

3   say something.

4            MR. LEAVELL:  Your Honor, this is Craig Leavell.

5   I will briefly chime in, and then I'll turn it back to

6   Ms. New.  They have the information.  The documents have

7   been produced.  The question is -- they want us to go

8   through and summarize all of the documents for them or

9   identify the relevant documents and do all of this work, and

10  that's not something that we have done yet or prioritized.

11           They have all the information.  They can do that.

12  They can go through the documents.  They can do all of this,

13  just like they are asking us to do.  We haven't done it yet.

14  Had we done, we would tell them.  We have been focused on

15  the infringement issue, the validity issue, and we have our

16  damage experts starting the damage analysis.

17           But they have all of the documents.  They have all

18  of the information.  They have access to those sets of

19  documents.  Their lawyers could do it before the

20  depositions.  It is just a matter of we haven't done it yet.

21  We are not hiding anything.  We are not sitting on

22  information or positions that we have developed, but we were

23  waiting to get their information and turn it over to our

24  experts.

25           MS. NEW:  Your Honor, this is Megan New.

1           THE COURT:  Hold on for a moment.  I definitely

2    want to hear what you have to say.  Before I forget, I want

3    to also mention that we're going to, at some point, return

4    to the issue of what information NSC needs from Greenbrier.

5    I have not forgotten about that, or I don't want to forget

6    to do that.

7           So, Ms. New, you wanted to say something.

8           MS. NEW:  Yes, Your Honor.  Thank you.

9           I was going to add to what Mr. Leavell was saying,

10   which, again, we are talking specifically now about lost

11   profit damages.  The focus of that is, again, on Greenbrier

12   sales and would NSC have made those sales.  So Greenbrier is

13   well aware of what their sales were.  They have documents

14   that summarize all of the sales of the infringing products

15   that they've made.

16          So if they want to question -- to follow-up on

17   Mr. Cooperman's example of what they would be able to ask in

18   depositions, if they want to ask our CFO or vice president

19   of marketing about those sales and whether NSC would have

20   made those sales and why, they have all of the information

21   they need to be able to do that.

22          Again, this is not a situation where documents or

23   information have been withheld that deprive Greenbrier from

24   the ability to ask those questions.  The interrogatories are

25   sort of irrelevant to that, because they do have the

1    documents.  They are their own documents.  They have all of

2    the information they would need to ask those questions.

3              MR. COOPERMAN:  Your Honor, may I comment on that

4    briefly?

5              THE COURT:  Sure.  Go ahead.

6              MR. COOPERMAN:  I apologize for jumping in.  I

7    have heard several times now that counsel has suggested that

8    it is defendant's documents that are the focus of those

9    damages calculations, and that's just not right.  It is both

10   parties' financial documents.

11             So the fact that we have our own financial

12   documents doesn't allow us -- Greenbrier -- to calculate the

13   damages that NSC is claiming.  That's again, not the way it

14   works.  It is not logical.  It is based on both parties'

15   financial documents and information, and that's why we have

16   come to the Court asking for help getting NSC's financial

17   information.

18             Lost profits, for example, is based on both

19   parties' financial information.  The profit margin that NSC

20   makes on its products, the time, the number of cars that are

21   accused of infringing is information from Greenbrier is one

22   example.  So it's really a requirement for both parties to

23   provide financial information.  We can't calculate NSC's

24   damages based on what information we have from Greenbrier.

25             MS. NEW:  Just so we are clear, Your Honor.  This

1    is Megan New.

2            We have provided that financial information.  I

3    was following up on Mr. Cooperman's example that they want

4    to be able to ask about sales that NSC contends it would

5    have made but for the infringement.  My point was just --

6    the focus of that is Greenbrier's sales, and they have that

7    information.  They also have our financial data.

8            THE COURT:  Okay.  I understand what you're all

9    saying here.

10           Let's go back to this list of items that

11   Greenbrier is requesting.

12           First, the amount of damages NSC contends it is

13   entitled to and related computations, the computations I

14   appreciate are something that the experts have to conduct.

15   I guess my question is whether at this point, considering

16   that damages calculation hasn't been conducted, I guess I

17   don't really see how NSC could provide a figure without

18   having actually performed those computations, and it really

19   would be in the form of speculation to some extent.  So I'm

20   not going to require that right now.

21           There is the second request, which is the amount

22   of lost profit damages that NSC contends it is entitled to

23   and related computations, including NSC's profit margins and

24   identification of the specific sales that NSC contends it

25   would have made.

1        So I guess what I'm saying is that, although I'm

2  not requiring NSC to provide its actual computations,

3  because it is premature, and the ultimate amount that it is

4  arriving at, the bases for those computations that the

5  experts are ultimately going to make, I think Greenbrier is

6  entitled to at this point so that it can conduct its

7  discovery and for purposes of efficiency, like I've

8  described before.  So I am going to require that NSC provide

9  this underlying information so that it helps to winnow the

10  issues.  It helps Greenbrier understand what it is that it

11  needs to conduct discovery on at this point.

12        The next point of dispute is the amount of

13  reasonable royalty damages NSC contends it is entitled to

14  and related computations, including the total royalty base

15  and the royalty rates.

16        Let me ask Greenbrier.  That appears to me also to

17  be computations that the expert is ultimately going to be

18  conducting, but tell me if you disagree.

19        MR. COOPERMAN:  Ultimately that should be part of

20  an expert report, yes, Your Honor.  But again, based on

21  underlying facts, for example, what is the royalty base?  Is

22  it just the number of cars that Greenbrier has sold?  Is it

23  the number of cars that Greenbrier has sold and leased?  Is

24  it the number of cars that have been repaired; that are

25  accused of infringement?  There are a lot of underlying

1    facts, going to your theme, Your Honor, that impact the
2    total royalty base.  Then there are also lots of facts that
3    go into calculating the royalty rate as well, which
4    includes, as one example, the profitability of the cars and
5    the profitability of plaintiffs overall.

6         So I think we would request, if we are not going
7    to be able to get the amount at this point in time, similar
8    to what you just ordered, get all the underlying information
9    that the experts and NSC are going to rely on in support of
10   their ultimate royalty calculation.

11        THE COURT:  And what is NSC's response?

12        MS. NEW:  Your Honor, this is Megan New again.

13        I think we would be in a position to provide the
14   royalty base, and we can provide additional citation to
15   additional documents that the expert may rely on in support
16   of the reasonable royalty analysis.  But it's the rate that
17   is really what would be the tough part there, because that
18   is, I think, strictly subject to expert analysis.

19        THE COURT:  All right.  So let me ask Greenbrier
20   what your thoughts are on that, the royalty rate in
21   particular.

22        MR. COOPERMAN:  Well, again, Your Honor, I would
23   ask that we get the underlying facts for both the royalty
24   rate and royalty base, and that's because a reasonable
25   royalty is calculated by taking the royalty base and

1   multiplying it by the royalty rate.  So there are two

2   components to the calculation.  We should be able to, during

3   fact discovery, get the underlying facts for both of the

4   parts of the reasonable royalty analysis.  Just having half

5   of it is an incomplete picture, Your Honor.  There is no

6   reason to have any sort of patent exception to what's being

7   required by the rules.  It should apply equally to patent

8   cases as well as to other cases.

9              THE COURT:  What's NSC's response to that?

10             MS. NEW:  Your Honor, we have already provided

11  a lot of facts related to the Georgia-Pacific analysis,

12  which is what goes into calculating the rate.  As I said

13  before, we are happy to provide it.  If Greenbrier needs it,

14  we are happy to provide document citation to additional

15  documents that the experts can rely on in calculating the

16  rate.

17             THE COURT:  I think that whatever the underlying

18  factual information is, that needs to be provided to

19  Greenbrier.  Computations, I'm not expecting, of course,

20  those to be provided at this point.  But whatever underlying

21  factual information that is going to be required, that needs

22  to be disclosed.

23             MR. COOPERMAN:  Your Honor --

24             THE COURT:  Go ahead.

25             MR. COOPERMAN:  I'm sorry to interrupt you,

1   Your Honor.  I don't want to interrupt you.

2          THE COURT:  Don't worry.  It is really not a

3   problem, not in any way.  I am not going to be offended.  We

4   are on the telephone.  I have no concern about that.

5          Go ahead.

6          MR. COOPERMAN:  Thank you, Your Honor.

7          Just briefly, so we are all communicating really

8   well, what I'm hearing counsel say is that they are going to

9   provide perhaps a list of information that this expert might

10  rely on, and I think that may not be particularly helpful to

11  us.  If we get five pages with a list of documents that most

12  of which the expert isn't going to rely on, so kind of not

13  letting us know specifically what the important information

14  is.  I just wanted to raise that point, and that's part of

15  why I think -- and I know Your Honor has made a decision on

16  computation.  Computations are important.  It gives some

17  guidance on where this underlying evidence and facts are

18  going and kind of the results.  But I think it wouldn't be

19  too helpful to Greenbrier if we get a list of 3,000

20  documents that the expert might rely on.  That's not going

21  to be helpful at all.  It needs to be more specific.

22         THE COURT:  Could you attempt to get more specific

23  information through additional interrogatories?

24         MR. COOPERMAN:  I don't think so.  I think what we

25  are talking about right now is providing information in

1   response to interrogatories, and I don't see additional

2   information coming from further interrogatories.  The

3   information is in -- counsel knows the information from

4   looking at the documents and from working with its expert.

5   So all I'm asking is that counsel provide a specific

6   identification of underlying documents and information that

7   it is going to use and not just overwhelm us with a boatload

8   of information that becomes effectively useless.

9              THE COURT:  I understand your concern.  Let me

10  just say I'm going to give the parties the opportunity to

11  follow through on what I've just said, and, of course, if

12  you feel that you are provided with information that is

13  overwhelming and not specific enough, then we can reconvene.

14             Just to make sure my intent is clear, I agree, I

15  don't think it would be particularly helpful to be provided

16  with thousands of pieces of information.  I don't think that

17  that's going to further the case along.  So I would

18  certainly discourage NSC from doing that.  I'm not

19  suggesting that's your intention, if that makes sense.

20             MS. NEW:  Your Honor, this is Megan New.

21             It does.  But now I have kind of a concern on the

22  other side of this, which is, as Mr. Leavell spoke to a

23  moment ago and I have been saying throughout this hearing,

24  there is a lot of analyses that the experts have to do, and

25  that includes kind of combing through all of the documents

1  that were produced in discovery that might be relevant to

2  damages.

3          So while we certainly have no intention of

4  providing any interrogatory response that has a 33(d) cite

5  to 3,000 documents, what I'm concerned about, given what

6  defendants counsel's expectation is, is that if we don't

7  identify a document and our expert determines a couple of

8  weeks before expert reports that certain information is

9  relevant to the analysis, and we rely on those documents,

10 then once we get the expert discovery, then I'm going to see

11 a motion to strike or a motion to preclude certain testimony

12 or reliance on certain documents because they weren't

13 provided in response to the interrogatory.

14         This is back to Your Honor's comment about the

15 chicken-and-the-egg problem, which the problem with a lot of

16 these contention interrogatories is that so much of what's

17 being requested is truly expert analysis.  What Greenbrier

18 is asking us to do as the lawyers is to essentially provide

19 the expert opinion and all underlying factual bases right

20 now, when our experts haven't had a chance to really do a

21 deep dive on all of the information that has been provided

22 and identify what is truly relevant and then going to be

23 relied upon.

24         We can certainly and will, of course, do our best

25 to provide what we think right now the expert might rely on,

1   and we can do so without providing a citation to 3,000

2   documents.  But I don't want to run into an issue where

3   there is preclusion down the road, because, as lawyers, we

4   couldn't correctly guess what an economist or an accountant

5   might rely on for their opinions, especially in the time

6   frame that Mr. Cooperman is requesting.

7         THE COURT:  I completely understand your concerns.

8         So let me just say that it sounds like NSC is

9   going to not -- NSC is going to provide the information that

10  we have been discussing in a specific way, not attempting to

11  overwhelm Greenbrier with thousands of pages of information

12  or with, I guess, the kitchen sink, so to speak.

13        As long as NSC is operating in good faith by

14  attempting to provide the information that it is aware of at

15  this time, as long as counsel is operating in good faith, or

16  if it turns out that expert relies on another piece of

17  information, well, then that might be a reason to -- if

18  Greenbrier feels it is necessary -- to reopen discovery to

19  explore that further.  That's a bridge we can cross in the

20  future.  We might not have to.

21        But I think that discussing this right now -- it's

22  really important that NSC brought this up.  It is really

23  important that Greenbrier expressed its concern about being

24  overwhelmed with information.  I'm asking NSC to provide

25  specific information to Greenbrier, but like I said, should

 1  something be left out, but NSC has been operating in good

 2  faith, then we will deal with that at the time.

 3        All right?

 4        MS. NEW:  That makes sense, Your Honor.  Thank

 5  you.

 6        THE COURT:  Okay.  So I'm not going to get into

 7  any additional details with respect to my decision, just, as

 8  you know, the underlying factual bases need to be provided

 9  to Greenbrier.

10        Now, let's talk about NSC's concerns that

11  Greenbrier has not provided it with information it needs in

12  order to be able to move the case along, and that's

13  contained in NSC's response.

14        What, if anything, further does NSC want to say on

15  this issue?

16        MS. NEW:  Your Honor, in the interest of

17  efficiency, I think I really have said everything that there

18  is to say, which is we are in a little bit of an imbalance

19  here, because Greenbrier refused to provide responses to

20  interrogatories that are related to our damages and other

21  information that goes into the damages analysis.

22        So we are now in a situation where we are going to

23  provide as much information as possible about our damages

24  case in response to Your Honor's order, and we will have

25  virtually -- I think we will have no information from

1    Greenbrier other than their contentions with respect to

2    non-infringing alternatives.

3            So I think in the interest of equity and fairness,

4    I think if NSC is being required to provide information

5    about its damages case, the documents it's going to rely on,

6    the facts that are relevant to the lost profits and

7    reasonable royalty falses, then I think Greenbrier should be

8    compelled to provide that information as well.  Just for the

9    record, that is NSC's interrogatories 14, 15, and 17.

10            MR. COOPERMAN:  Your Honor, may I respond?

11            THE COURT:  Mr. Cooperman.

12            MR. COOPERMAN:  Thank you.  This is really truly

13    the first time that we have heard from NSC about any

14    concerns about those interrogatories responses.  As far as I

15    know, and I'm kind of relying on the rest of the team on the

16    call to supplement, I don't believe we've received any

17    suggestion from NSC previously that we need to supplement

18    those interrogatories.  What I would suggest -- I think, in

19    other words, the issue is premature.

20            Now, we have correspondence.  We have had

21    meet-and-confers about the issues that Greenbrier had raised

22    in discovery with NSC, but NSC hasn't said, "Hey, let's have

23    a meet-and-confer and try to work this out."  So instead of

24    just asking for broad relief when the parties haven't

25    specifically hashed it out, I would suggest, Your Honor,

1    that the parties be given an opportunity to talk about and

2    see if we can work out the issues that NSC may have that we

3    haven't had an opportunity to deal with before, and then if

4    it is necessary, come back to Your Honor.

5              THE COURT:  This argument was asserted in the

6    response, and Greenbrier did file a reply here, or responded

7    to an email reply.  I think that really means we should

8    resolve this today rather than kicking the can down the road

9    as it pertains to NSC's interrogatories 14, 15, and 17.

10             MS. NEW:  That's correct, Your Honor.

11             THE COURT:  In the response email.  Oh, I see.

12   14, 217.

13             MS. NEW:  Your Honor, I apologize.  It is 14

14   through 17.

15             THE COURT:  That's my speed reading.  I apologize.

16             Just generally speaking, Greenbrier has not

17   responded to those, because of the interrogatory limit; is

18   that correct?

19             MS. NEW:  Correct, Your Honor.  Like

20   Mr. Cooperman, I'm going to have to defer a little bit to my

21   colleagues here.  But my understanding is that Greenbrier's

22   position is, in view of some parts of other interrogatories,

23   Greenbrier's position is that our 25 interrogatory limit

24   really ended at interrogatory No. 13.  So anything beyond 13

25   they refused to provide a response.

1           MR. LEAVELL:  This is Craig Leavell.  I can speak

2     to that.  It's a patent case.  There are several accused

3     products.  There are several purported items of prior art.

4     So as is very often the case, the interrogatories, in an

5     effort to be detailed and provide guidance as to what

6     they're looking for, with the type of information we are

7     asking for, they treated those as subparts, counted our

8     first 12 interrogatories as 25, and then refused to answer

9     anything after that.  Since they were doing that, and didn't

10    answer anything after 12, we calculated how best we thought

11    they were counting, and we stopped after 21 or so.

12          I think what we should do is pick a date and both

13    sides respond.  We provide the information we've already

14    discussed in response to their interrogatory 13, and they

15    provide the factual basis and identification of documents in

16    response to those four interrogatories on damages, and we

17    just do it on the same dates.

18          THE COURT:  Mr. Cooperman, any reason your client

19    cannot respond to 14 through 17?

20          MR. COOPERMAN:  Your Honor, I expect not.  I

21    expect we can.  I don't know off the top of my head, and I

22    apologize what each of those interrogatories goes to.  But

23    what I would suggest we do is, since we're dealing with

24    interrogatories over which party believes is 25, let's do

25    this even-handed.  If Greenbrier is going to be required to

1    answer interrogatories that they believe is over 25, then

2    NSC should do the same.  Then we pick a date for an exchange

3    of interrogatory responses to complete all of the

4    interrogatories that the parties have supplemented and not

5    making it one-sided.

6              THE COURT:  I thought that's what Mr. Leavell had

7    said.

8              Did I mishear that?

9              MR. LEAVELL:  Your Honor, thank you.  This is

10   Craig Leavell.  I was speaking about the damages

11   interrogatories, the three or four they haven't answered,

12   and the one that they filed in their email requesting.

13   There are a lot more interrogatories out there.  We served a

14   bunch more that they haven't responded to.  They have served

15   two or three that we haven't responded to.  I don't know off

16   the top of my head what's all in that.  I don't know that I

17   can commit to any particular date by which we can respond to

18   the last two or three interrogatories.

19              I thought that Mr. Cooperman could give a firm

20   date when they could respond to the other 12 interrogatories

21   that we served that they didn't answer.  My proposal was

22   limited to the damages topics, because that's what this call

23   has been about.  I'm happy to talk on this call or

24   independently with Mr. Cooperman about the

25   non-damages-related interrogatories.

1          THE COURT:  I would prefer to not talk about any

2  non-damages issues right now.

3          MR. LEAVELL:  I agree, Your Honor.

4          THE COURT:  Are you saying that there are four

5  damages-related interrogatories that are outstanding by NSC,

6  and how many damages interrogatories are outstanding by

7  Greenbrier?

8          MS. NEW:  Your Honor, this is Megan New.  We have

9  four outstanding interrogatories that relate to damages.  As

10  I understand it, the interrogatory related to damages that

11  Greenbrier has served on NSC is the one we just talked about

12  and that we will be supplementing.

13          THE COURT:  All right.  Mr. Cooperman, are you

14  suggesting that because NSC gets four extra damages-related

15  interrogatories that you should also get four extra damages

16  interrogatories?

17          MR. COOPERMAN:  No.  I wasn't specifically

18  suggesting that, Your Honor.  I was suggesting that both

19  parties answer all outstanding interrogatories and not use

20  the 25 interrogatory limit as some sort of shield, so that

21  it is even-handed.

22          THE COURT:  Okay.  I'm not going to get into all

23  of the other possibly outstanding interrogatories.  I am

24  going to expand the interrogatory limit for NSC's

25  outstanding interrogatories.  You can work out a date by

1   which those interrogatories have to be answered.  As I

2   understand it, we have already resolved the issue with

3   respect to Greenbrier's interrogatory.

4           Is there anything else on that?

5           MR. COOPERMAN:  Your Honor, can we just add in,

6   because I'm uncertain on this call if there are -- are you

7   still there?

8           THE COURT:  Yes, I'm still here.  I think that

9   means that somebody left the meeting.

10          MR. COOPERMAN:  Got it.  I was going to suggest

11  that for the order that, to the extent there is any

12  damages-related interrogatories that Greenbrier has asked

13  NSC for that haven't been responded to, again, to be

14  even-handed, if we just wanted to narrow it to

15  damages-related interrogatories that both parties need to

16  complete responding to damages relating to interrogatories

17  by some date, so it is even-handed.

18          THE COURT REPORTER:  Counsel, who was speaking?

19          THE COURT:  That was Mr. Cooperman.

20          THE COURT REPORTER:  Thank you, Judge.

21          THE COURT:  Any objection to that from NSC?

22          So Mr. Cooperman is suggesting that, should there

23  be fully outstanding damages related interrogatories from

24  either side, that they shall be answered -- any outstanding

25  ones, including the four outstanding ones that NSC has

1   noted.

2          MR. LEAVELL:  Your Honor, this is Craig Leavell.

3          I don't know if there are any other outstanding

4   ones that NSC has received related to damages.  I'll ask

5   that those on the call know that.  I agree with the general

6   proposition of fairness.  I think the question then is what

7   timing?  I think we are prepared and ready to discuss their

8   interrogatory 13 and have a feeling for how quickly we might

9   be able to do that.  But it's hard for me to say or to pick

10  a date by which we can respond to anything else, assuming

11  there is anything else.  I just don't know what it is.

12         THE COURT:  Sure.  I'm going to ask the parties to

13  work out the dates, because I don't know the amount of time

14  that Greenbrier is going to need to answer those four

15  outstanding interrogatories.  I am just going to ask you to

16  confer and try to agree on a date for that.

17         MS. NEW:  That makes sense, Your Honor.

18         THE COURT:  Okay.  I want to make a quick note.

19         Finally, moving to the April 13th email from

20  Greenbrier, what, if anything more, Mr. Cooperman, would you

21  like to say on that?

22         MR. COOPERMAN:  Not much, I don't think.  There

23  are two issues to try and figure out how to frame that

24  email.  One of the issues, there has been a development

25  since the briefly, and so that may be worth talking about

1   for a couple of minutes.

2           On Friday, this last Friday, on the last day of

3   fact discovery, actually after close of fact discovery, NSC

4   sent us a chart with information on it, and we are in the

5   process of reviewing the chart.  This may relate to our

6   interrogatory No. 14 that is the subject of one of the two

7   issues we raised in our April 13th email to you.  We're just

8   not sure, because we have only had it for one business day,

9   and so we need time to evaluate it.

10          So what I would suggest, Your Honor, is that you

11  just stay that particular issue with regard to interrogatory

12  No. 14, which asks for NSC's costs and profits of its

13  patented cars, because maybe we have that.  NSC hasn't

14  actually supplemented its interrogatory response, so we are

15  not sure there is a clear connection between the documents

16  they provided and interrogatory No. 14.

17          But if we can be granted leave to come back and

18  raise this issue with Your Honor or continue this issue with

19  Your Honor, if it turns out that this issue still exists.  I

20  just don't want to spend the time if there is not going to

21  be an issue, and I can't tell if there is an issue or not,

22  if that makes sense.

23          THE COURT:  That makes sense to me.  Thank you for

24  making that suggestion.

25          So then what else needs to be resolved?

1              MR. COOPERMAN:  So the other issue, Your Honor, is

2     Greenbrier's request for the company-wide financial

3     information -- and this goes to our request for production

4     109 and our 30(b)(6) topic, No. 27.

5              So basically what NSC has provided to us financial

6     document-wise relates to its sales and revenues and costs

7     for its patented cars that it sells, but it hasn't provided

8     company-wide financial information, and that is recognized

9     in the case law, and we cited the cases to you, Your Honor,

10    to be relevant to both lost profit analysis and the

11    reasonable royalty analysis.

12             So, for example, under lost profits, if NSC were

13    to say, our damages calculation is based on a 20 percent

14    profit margin; that we, NSC, have a 20 percent profit margin

15    on our patented cars, but it turns out that the company, on

16    a company-wide basis has only a 10 percent profit margin,

17    then that's relevant to our ability to challenge their

18    20 percent profit margin.  That includes things like

19    indirect costs, costs that would be reflective of paying the

20    lease on the building, paying the electricity, and paying

21    salaries.  Those sorts of costs may not have been allocated

22    in NSC's profit margins for the particular cars at issue.

23             So this is a level of higher information, and this

24    should be information that is readily available to NSC in

25    their financial statement, and it's the type of information

1  that's given in patent cases, because it does relate to lost

2  profit and to reasonable royalty.  And we can show you the

3  cases where that has been required, Your Honor.

4         About the only real response that NSC has had

5  seems like -- that this is super secret, confidential.  We

6  are a private company, and we shouldn't have to provide this

7  information.  Of course, there is a protective order in

8  place.  This is information that they no doubt generate,

9  regardless of whether they are a private company or not.

10 This is, again, the type of information that we need to

11 fairly challenge their damages claims and calculations.

12         I think that's it.

13         THE COURT:  All right.  I understand.

14         I noticed before, and I think you answered, NSC

15 did not email any response to this last email; is that

16 correct?

17         MS. NEW:  That's correct, Your Honor.  After

18 Greenbrier sent their email over, I think Ms. Hunt emailed

19 us pretty quickly thereafter just setting the hearing.  So

20 we were unsure about whether we should give the Court more

21 paper, so we did not respond.

22         THE COURT:  Thank you.

23         MS. NEW:  You're welcome.

24         THE COURT:  I understand why you chose to respond

25 and have the hearing instead.  I won't fault you for not

1    sending another email.  This can be handled in a number of

2    effective ways.

3              What is your response?

4              MS. NEW:  Sure.  So let me start with

5    interrogatory No. 14 issue, the one that Mr. Cooperman

6    suggested that we table and potentially continue.  We did

7    provide that information in a document to Greenbrier last

8    week.  We did not supplement the interrogatory response to

9    include that information, because we were waiting to see

10   what would happen today with the other issues, so we could

11   do one supplement all at once.  So we have already provided

12   the document, and we will just provide a supplemental

13   response to interrogatory No. 14 with the information in

14   that document.  So I think that should resolve that issue.

15             On the question of the company-wide financials,

16   contrary to what Mr. Cooperman said, which is the only

17   reason NSC has provided that we shouldn't have to produce

18   this information, that it's super secret, the information is

19   also not relevant.

20             The focus of the damages analysis is going to be

21   on the accused cars, Greenbrier's accused cars, and on NSC's

22   profit margin for its embodying products, and that's the

23   information that we have provided.

24             So the company-wide financials just aren't

25   necessary.  Greenbrier has cited to three cases in their

1    April 13th email.  I just want to note that in each of those

2    cases, there were very specific reasons that the Court

3    ordered those company-wide financials.  One was because the

4    defendant said they were going to take the analytical

5    approach to damages and so -- one of those parties had

6    convinced the Court that the company-wide financials was

7    relevant to that.  That was actually the case, I think, in

8    two of the cases.  Then in one of the other cases, an expert

9    submitted a declaration saying that they needed company-wide

10    financials to calculate one specific cost, which was an

11    overhead rate.  We don't have any of those issues here.

12         We have provided all the information that

13    Greenbrier says company-wide financials are relevant to is

14    information that is either provided in the document that we

15    have already produced or can be addressed through NSC's

16    30(b)(6) witness on -- I believe it is topic 26, which

17    relates to the accused gondola, the embodying

18    gondola-specific financials.

19         So this is all information that Greenbrier says it

20    needs, I think in the fifth paragraph of the email, is all

21    addressed either through that document or through deposition

22    testimony.

23         There is no reason that we need to provide the

24    company-wide financials.  I do think it is also -- as much

25    as Greenbrier has contended that they need our company-wide

financials, they have not produced company-wide financials.
So I think that kind of goes to show that they know this
stuff is really irrelevant, and it is more of a fishing
expedition than anything else.

MR. LEAVELL:  Your Honor, this is Craig Leavell
again.  If I could just add a little bit more background on
this.  I'll try to be brief.

NSC is a private company.  It has always been a
private company.  That means a lot more than just a
nonpublic company.  The deponents -- the witnesses in this
case don't have access to this information.  There is one
gentleman who runs the company, and he keeps this type of
company-wide information very, very tightly held.

Our witnesses will be able to explain how we
calculated fixed cost on the gondola cars, the cars relevant
to this case.  They can ask specific questions about how
those costs are allocated and what other projects they might
be allocated to.  But the company-wide profitability, the
company-wide profit margin is not even known to these
witnesses.

So it's just not shared outside of the CEO.  It is
very, very confidential; very tightly held, and it has been
for decades.  I view this as them just trying to -- they
recognize that's an issue with the leadership of our
company, and Greenbrier is pushing for it just to try to

1    impose discomfort and punish National Steel Car for trying

2    to enforce its intellectual property rights.

3            There is no company-wide information that is

4    necessary.  They are free to ask how we calculated the fixed

5    costs and the costs that are in the segments -- the relevant

6    segment.  They will answer that.  But they don't need

7    company-wide information for that; certainly not

8    company-wide profitability.

9            MR. COOPERMAN:  Your Honor, may I respond?

10            THE COURT:  Yes, of course.  One moment.

11            Let me ask NSC if you have any legal authority

12    that you would like to share on that issue.  And if you

13    don't have it right now, that's fine.  If you want to

14    provide it at a later time, I want to give you an

15    opportunity to do so.

16            MS. NEW:  Your Honor, this is Ms. New.  We don't

17    have it handy, but we can certainly provide it.

18            THE COURT:  All right.  I think I probably

19    indicated to you that I would like to look into this issue a

20    little bit more and wanted to see if there is any authority

21    that NSC wanted to provide.  I would like to hear from

22    Mr. Cooperman, and I also want to be mindful of the court

23    reporter and the fact that we've been going for an hour and

24    a half.  I believe that he is also not available after

25    11:00.

1              MR. COOPERMAN:   I'll try to be brief, Your Honor.

2     In every case that I've ever been involved in, a patent case

3     that I can think of, this information, company-wide

4     financial information, has been provided and is important to

5     the lost profits and reasonable royalties analysis for the

6     reasons we stated in our email and for the reasons stated on

7     the phone.   I've just never seen a case where the

8     information is considered irrelevant, because it is not.   It

9     is very relevant to the case.   We're not going after this

10    information to try and somehow create pain for the

11    plaintiffs, not at all.

12             Instead, we are trying to get the information so

13    that we are not going blind into depositions and so that we

14    have a fair -- all we're asking for is a fair opportunity to

15    question and challenge statements.   If we don't have the

16    financial information and we're asking -- and if we don't

17    have the documents from NSC, how can we fairly depose

18    witnesses about cost information?

19             The fact that NSC treats their own information

20    super confidential shouldn't prevent Greenbrier --

21    Greenbrier shouldn't be punished by not being able to --

22    and, of course, it's Greenbrier lawyers with a protective

23    order in place.   We shouldn't be punished by not being able

24    to see that confidential information.

25             If it's so confidential, NSC shouldn't have been

1    asking for damages in the first place.  They put this issue

2    into play.  They are asking for lost profits and reasonable

3    royalties, and it is only fair that we get to defend

4    ourselves, and that's what this all relates to.  This is all

5    very relevant information.  We explained why in our email.

6    Hopefully that makes some sense.

7              MR. LEAVELL:  Your Honor, if I may.  This is

8    Craig Leavell.

9              So the profitability of different products lines

10   that are not the gondola car products -- that's a particular

11   type of railcar.  NSC makes several different kind of

12   railcars that are not at issue in this case.  Some may be

13   more profitable than others.  It makes sense that the

14   gondola cars are more profitable, because we have a whole

15   portfolio of patents protecting those, and we are supposed

16   to have that exclusive right to market the patented

17   invention.

18             So if the profitability of these products are

19   higher than the overall company profitability or the

20   profitability for other product lines, that's not unusual,

21   and it's irrelevant.  The costs -- I understand the

22   allocation of fixed costs -- overhead, space, those kind of

23   things and how they get allocated company wide, or how we

24   calculate the allocation of those fixed costs to the gondola

25   product line, that is in the documents.  The line items are

1  there.  They can ask the CFO about how that's calculated.

2  He can explain how those costs are calculated.

3            But that's not what they are asking for.  They are

4  asking for all company-wide information, including

5  profitability of the company as a whole, and all sorts of

6  other things that go well beyond the allocation of fixed

7  costs to the gondola car product line.  That's where I think

8  the potential relevancy would end, and they are free to

9  ask -- and we produced the spreadsheet that had that

10  information.  They are free to ask the CFO under oath what

11  he knows, and I think we have even designated him as a

12  30(b)(6) witness on some of these topics.  They can ask him

13  about that.  He can explain the costs.

14            If there are certain particular cost documents

15  about the allocation of costs to the gondola line that they

16  think is relevant, we are willing to discuss that.  But the

17  company-wide information, it is just something that is

18  not relevant, and it is not something that needs to be

19  produced.

20            MR. COOPERMAN:  Your Honor --

21            THE COURT:  Go ahead, Mr. Cooperman.

22            MR. COOPERMAN:  Your Honor, all I was going to say

23  is that we have a fundamental disagreement about what's

24  relevant and what's not relevant in a patent damages case.

25  We would be happy to supplement our authority on this issue

1   as well.

2           THE COURT:  Well, I do want to give it some more

3   thought and consider the authority that you can provide.

4   What is the reasonable time frame in which to provide me

5   with additional authority?

6           Also, I'm not looking for additional briefing.  I

7   think the issue is pretty straightforward.  But if there are

8   cases that you want to provide to me with like a very brief

9   explanation as to what in those cases I should be looking

10  for in particular, I think that would be the most helpful.

11  You can provide me with a list of cases.  Then just point to

12  the particular page number or quote that you think is

13  helpful.

14          How much time would you like to do that?

15          MS. NEW:  Your Honor, this is Ms. New.

16          I think we could provide something by the close of

17  business on Thursday.

18          Is that acceptable to the Court?

19          THE COURT:  It is completely acceptable to me.

20          I'm more concerned about your schedules and what

21  other commitments you have.  I am very flexible in how much

22  time you need.

23          MR. COOPERMAN:  That's fine with Greenbrier too,

24  Your Honor.

25          THE COURT:  Okay.

1          Well, if that's what you would like to do, then

2   that would be fine.  By close of business on Thursday.  If

3   you need more time, just confer and let me know.  I think

4   you can submit that by email, if you would like.  That would

5   be fine.  You don't have to file it.  It is really up to

6   you.

7          MS. NEW:  Your Honor, I believe we have been

8   using -- we have been addressing emails to Ms. Hunt.  Is

9   that where we should treat that same email address and send

10  it to her attention?

11         THE COURT:  Yes, that would be great.

12         Okay.  Then.  All right.  Anything further for

13  today?

14         MS. NEW:  Nothing for the plaintiff, Your Honor.

15         MR. COOPERMAN:  This is Marc Cooperman.

16         I just wanted to mention that there are a handful

17  of other discovery issues that we have raised with NSC in

18  correspondence, and we are hopeful that we will get them

19  worked out with them, but we may need your assistance again.

20  I just wanted to let you know.

21         THE COURT:  I appreciate that heads-up, and also I

22  apologize that it took so long for me to get to your dispute

23  this time.  My intention is that it is not going to take

24  that much time if you have to return.  March was a busy

25  month because of other criminal calendar today duties I

1   had -- more than usual is what I'm trying to say.

2           I had additional responsibilities than what I

3   usually have.  That's fine.  You can just let Ms. Hunt know

4   that you have additional matters that you need to discuss.

5           I'm not going to be issuing a written order today.

6   I have indicated on the record what the ruling it is.  I've

7   made detailed notes that I can refer to, if necessary, in

8   the future, and, of course, there is also a record, an

9   official transcript that you can obtain of these proceedings

10  if you would like.

11          All right then.  Anything else from NSC?

12          MS. NEW:  No, Your Honor.

13          THE COURT:  Okay.  Well, thank you very much.  I

14  will wait for your submissions.

15          Thank you.  We will be in recess.

16          MS. NEW:  Thank you, Your Honor.

17          MR. COOPERMAN:  Thank you, Your Honor.

18          (Court adjourned.)

19

20

21

22

23

24

25

1                              --oOo--

2

3             I certify, by signing below, that the foregoing is

4    a correct transcript of the record of proceedings in the

5    above-entitled cause.  A transcript without an original

6    signature, conformed signature, or digitally signed

7    signature is not certified.

8
     /s/ Dennis W. Apodaca                    May 20, 2022
9    DENNIS W. APODACA, RDR, RMR, FCRR, CRR              DATE
     Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. COOPERMAN: [35]**  5/19 5/21 6/1 7/4 10/8 11/8 11/15
11/21 13/22 21/17 25/13 29/3 32/2 32/5 34/18 35/21 36/22
36/24 37/5 37/23 42/9 42/11 44/19 46/16 47/4 47/9 48/21
49/25 55/8 55/25 58/19 58/21 59/22 60/14 61/16
**MR. LEAVELL: [10]**  4/21 26/20 28/12 30/3 43/25 45/8
46/2 48/1 54/4 57/6
**MR. LOVETT: [1]**  5/1
**MR. VALENZUELA: [1]**  4/19
**MS. NEW: [30]**  4/15 5/14 14/16 14/22 19/19 20/9 23/16
25/3 30/24 31/7 32/24 35/11 36/9 38/19 41/3 41/15 43/9
43/12 43/18 46/7 48/16 51/16 51/22 52/3 55/15 59/14 60/6
60/13 61/11 61/15
**THE COURT REPORTER: [2]**  47/17 47/19
**THE COURT: [64]**

**-**

**--oOo [1]**  62/1

**/**

**/s [1]**  62/8

**1**

**10 [1]**  50/16
**1000 [1]**  2/22
**109 [1]**  50/4
**10th [3]**  10/19 17/10 25/12
**111 [1]**  2/7
**11:00 [1]**  55/25
**12 [3]**  44/8 44/10 45/20
**1275 [1]**  4/8
**13 [10]**  8/4 8/14 11/5 19/25 25/14 25/15 43/24 43/24 44/14
48/8
**13th [1]**  5/12
**14 [11]**  18/5 42/9 43/9 43/12 43/13 44/19 49/6 49/12 49/16
52/5 52/13
**15 [3]**  18/5 42/9 43/9
**17 [5]**  18/5 42/9 43/9 43/14 44/19
**1st [1]**  11/23

**2**

**20 [2]**  21/24 62/8
**20 percent [4]**  22/7 50/13 50/14 50/18
**2020 [1]**  11/23
**2021 [2]**  12/4 12/16
**2022 [3]**  1/5 4/1 62/8
**21 [2]**  19/24 44/11
**2121 [1]**  2/10
**217 [1]**  43/12
**25 [5]**  43/23 44/8 44/24 45/1 46/20
**25-interrogatory [4]**  13/20 14/4 14/7 14/10
**25-rog [1]**  14/1
**26 [6]**  1/5 4/1 7/8 7/14 13/3 53/16
**27 [1]**  50/4

**3**

**3,000 [3]**  37/19 39/5 40/1
**30 [5]**  16/6 18/7 50/4 53/16 58/12
**3000 [1]**  2/16
**301 [1]**  2/22
**326-8182 [1]**  2/23
**33 [3]**  26/1 26/15 39/4
**3400 [1]**  2/7
**3600 [1]**  2/13
**3:20-cv-01275-YY [1]**  1/4

**4**

**4400 [1]**  2/4

**5**

**503 [1]**  2/23

**6**

**60606 [2]**  2/4 2/14

**7**

**700 [1]**  2/10
**71 [1]**  2/13
**75201 [1]**  2/10
**760 [1]**  2/16

**8**

**8182 [1]**  2/23
**8th [1]**  12/16

**9**

**97204 [2]**  2/7 2/22
**97205 [1]**  2/16

**A**

**a lot [1]**  36/11
**ability [2]**  31/24 50/17
**able [24]**  7/19 11/21 14/25 15/9 16/15 20/2 20/6 21/15
21/22 23/1 25/24 26/1 28/11 29/5 31/17 31/21 33/4 35/7
36/2 41/12 48/9 54/14 56/21 56/23
**about [53]**  5/1 5/25 7/3 8/3 11/10 12/3 12/4 12/5 15/4
15/19 18/2 18/11 20/20 20/22 22/9 23/2 24/12 25/6 29/5
29/14 29/15 29/24 31/5 31/10 31/19 33/4 37/4 37/25 39/5
39/14 40/23 41/10 41/23 42/5 42/13 42/14 42/21 43/1 45/10
45/23 45/24 46/1 46/11 48/25 51/4 51/20 54/16 56/18 58/1
58/13 58/15 58/23 59/20
**above [1]**  62/5
**above-entitled [1]**  62/5
**Absolutely [1]**  7/5
**acceptable [2]**  59/18 59/19
**access [5]**  17/18 27/12 27/21 30/18 54/11
**account [2]**  17/5 20/25
**accountant [1]**  40/4
**accounting [3]**  17/4 17/22 26/19
**accurate [1]**  4/11
**accurately [1]**  20/8
**accused [10]**  9/7 12/12 12/13 20/12 32/21 34/25 44/2
52/21 52/21 53/17
**acknowledge [1]**  15/2
**actual [2]**  23/6 34/2
**actually [6]**  8/12 22/5 33/18 49/3 49/14 53/7
**add [6]**  12/7 24/23 26/22 31/9 47/5 54/6
**additional [19]**  5/11 13/19 16/3 19/4 20/5 20/14 20/25
21/12 23/25 35/14 35/15 36/14 37/23 38/1 41/7 59/5 59/6
61/2 61/4
**address [5]**  13/22 15/21 16/3 24/3 60/9
**addressed [3]**  11/14 53/15 53/21
**addresses [1]**  9/23
**addressing [1]**  60/8
**adequately [1]**  6/25
**adjourned [1]**  61/18
**advice [1]**  29/18
**affect [1]**  23/22
**after [11]**  5/12 12/7 21/1 22/15 44/9 44/10 44/11 49/3 51/17
55/24 56/9
**again [25]**  6/4 7/6 9/9 12/21 13/11 17/21 21/18 22/16 25/1
25/25 26/6 26/17 27/1 28/1 31/10 31/11 31/22 32/13 34/20
35/12 35/22 47/13 51/10 54/6 60/19

**A**

against [1]  27/4
ago [9]  8/11 9/8 11/24 12/5 12/5 12/6 19/3 23/24 38/23
agree [4]  38/14 46/3 48/5 48/16
agreed [1]  14/2
ahead [6]  10/20 11/17 32/5 36/24 37/5 58/21
al [1]  1/6
all [62]  5/17 5/24 6/9 9/10 10/7 13/1 14/14 16/5 16/11
16/19 17/19 17/19 18/14 20/14 21/2 21/9 24/18 25/1 26/18
27/3 27/10 28/4 28/5 30/8 30/9 30/11 30/12 30/17 30/17
31/14 31/20 32/1 33/8 35/8 35/19 37/7 37/21 38/5 38/25
39/19 39/21 41/3 45/3 45/16 46/13 46/19 46/22 51/13 52/11
53/12 53/19 53/20 55/18 56/11 56/14 57/4 57/4 58/4 58/5
58/22 60/12 61/11
alleged [2]  25/21 26/6
allocated [4]  50/21 54/17 54/18 57/23
allocation [4]  57/22 57/24 58/6 58/15
allocations [1]  16/10
allow [2]  15/21 32/12
allowed [6]  9/13 9/16 13/2 19/14 21/12 27/2
almost [1]  28/14
along [5]  8/25 9/10 13/1 38/17 41/12
already [5]  36/10 44/13 47/2 52/11 53/15
also [23]  4/13 4/22 5/3 6/21 11/13 13/15 15/20 16/6 19/1
20/7 24/14 31/3 33/7 34/16 35/2 46/15 52/19 53/24 55/22
55/24 59/6 60/21 61/8
alternative [2]  10/8 29/10
alternatives [3]  18/24 19/1 42/2
although [3]  19/23 20/10 34/1
always [1]  54/8
am [5]  34/8 37/3 46/23 48/15 59/21
amount [8]  25/16 25/17 33/12 33/21 34/3 34/12 35/7 48/13
analogy [1]  7/12
analyses [1]  38/24
analysis [20]  15/6 15/7 15/18 16/18 18/18 28/8 28/12
28/16 30/16 35/16 35/18 36/4 36/11 39/9 39/17 41/21 50/10
50/11 52/20 56/5
analytical [1]  53/4
analyze [1]  21/2
and/or [1]  7/11
another [2]  40/16 52/1
answer [8]  13/19 44/8 44/10 45/1 45/21 46/19 48/14 55/6
answered [5]  14/7 45/11 47/1 47/24 51/14
anticipated [1]  29/9
any [27]  8/6 8/21 9/12 13/19 13/21 14/8 16/10 17/4 25/5
30/2 36/6 37/3 39/4 41/7 42/13 42/16 44/18 45/17 46/1
47/11 47/21 47/24 48/3 51/15 53/11 55/11 55/20
anything [14]  14/21 18/20 30/21 41/14 43/24 44/9 44/10
47/4 48/10 48/11 48/20 54/4 60/12 61/11
Anyway [1]  11/18
Apel [2]  2/12 5/4
Apodaca [3]  2/21 62/8 62/9
apologize [7]  19/21 21/5 32/6 43/13 43/15 44/22 60/22
appear [1]  5/19
APPEARANCES [1]  2/1
appears [1]  34/16
Apple [1]  6/11
apply [2]  15/20 36/7
appreciate [3]  29/19 33/14 60/21
approach [1]  53/5
appropriate [1]  21/3
April [6]  1/5 4/1 5/12 48/19 49/7 53/1
April 13th [1]  5/12
April 13th email [3]  48/19 49/7 53/1
arbitrary [1]  15/17
are [134]
aren't [2]  16/8 52/24

arguably [1]  13/10
argue [1]  5/5
arguing [1]  14/15
argument [1]  43/5
around [4]  7/4 11/25 18/9 22/24
arrive [1]  17/2
arriving [1]  34/4
art [1]  44/3
articulate [1]  4/12
as [68]
aside [1]  28/18
ask [34]  5/18 7/1 10/24 13/15 19/15 21/10 22/8 22/16
22/18 23/2 24/11 28/25 29/5 29/6 29/14 29/15 31/17 31/18
31/24 32/2 33/4 34/16 35/19 35/23 48/4 48/12 48/15 54/16
55/4 55/11 58/1 58/9 58/10 58/12
asked [5]  10/18 10/25 17/14 18/14 47/12
asking [21]  8/3 11/10 11/12 17/7 17/9 18/25 25/12 29/2
30/13 32/16 38/5 39/18 40/24 42/24 44/7 56/14 56/16 57/1
57/2 58/3 58/4
asks [1]  49/12
asserted [1]  43/5
asserting [1]  11/20
asserts [1]  13/18
assessments [1]  20/8
assigns [1]  15/14
assistance [1]  60/19
associated [1]  12/13
assuming [1]  48/10
attempt [3]  27/23 27/23 37/22
attempting [2]  40/10 40/14
attention [1]  60/10
attorney [1]  4/15
attorneys' [1]  27/3
authority [5]  55/11 55/20 58/25 59/3 59/5
available [2]  50/24 55/24
Avenue [3]  2/7 2/16 2/22
aware [2]  31/13 40/14

**B**

back [6]  21/10 30/5 33/10 39/14 43/4 49/17
background [1]  54/6
backwards [1]  9/18
Barnes [3]  2/3 2/9 4/17
base [10]  16/25 20/16 29/12 29/22 34/14 34/21 35/2 35/14
35/24 35/25
based [13]  7/18 7/19 12/25 13/5 13/12 15/3 17/4 22/19
32/14 32/18 32/24 34/20 50/13
bases [6]  6/14 9/19 24/1 34/4 39/19 41/8
basically [1]  50/5
basis [5]  8/7 13/19 26/19 44/15 50/16
be [123]
because [31]  7/16 8/15 8/19 10/2 12/9 12/23 14/7 21/14
22/21 28/3 29/12 31/25 34/3 35/17 35/24 39/12 40/3 41/19
43/17 45/22 46/14 47/6 48/13 49/8 49/13 51/1 52/9 53/3
56/8 57/14 60/25
becomes [1]  38/8
been [45]  5/9 6/10 7/25 8/25 9/9 10/10 15/9 15/24 15/25
15/25 16/1 16/2 18/10 19/1 19/17 24/20 25/2 25/5 26/23
27/14 27/15 27/17 27/20 30/7 30/10 31/23 33/16 34/24
38/23 39/21 40/10 41/1 45/23 47/13 48/24 50/21 51/3 54/8
54/22 55/23 56/2 56/4 56/25 60/7 60/8
before [19]  1/11 4/5 4/14 9/2 9/21 12/8 12/20 18/7 18/19
21/5 23/6 28/24 30/19 31/2 34/8 36/13 39/8 43/3 51/14
begin [1]  14/22
behalf [6]  4/19 4/20 5/5 5/16 5/23 14/18
behind [2]  13/3 29/8
being [9]  6/21 9/9 21/22 36/6 39/17 40/23 42/4 56/21 56/23

**believe [9]** 14/10 19/23 19/24 22/6 42/16 45/1 53/16 55/24 60/7
**believes [2]** 14/4 44/24
**below [1]** 62/3
**best [5]** 4/10 14/25 26/24 39/24 44/10
**between [1]** 49/15
**beyond [3]** 14/2 43/24 58/6
**bit [7]** 6/22 20/1 24/3 41/18 43/20 54/6 55/20
**blind [1]** 56/13
**blindsided [1]** 10/13
**boatload [1]** 38/7
**both [17]** 10/22 12/21 13/24 18/22 19/16 27/12 27/21 32/9 32/14 32/18 32/22 35/23 36/3 44/12 46/18 47/15 50/10
**brain [1]** 7/4
**Brian [2]** 2/12 5/4
**bridge [1]** 40/19
**brief [3]** 54/7 56/1 59/8
**briefing [2]** 8/12 59/6
**briefly [6]** 13/21 21/10 30/5 32/4 37/7 48/25
**broad [1]** 42/24
**broadly [3]** 5/25 6/23 20/9
**brought [1]** 40/22
**building [1]** 50/20
**bunch [1]** 45/14
**burden [4]** 12/24 17/11 18/8 18/17
**business [3]** 49/8 59/17 60/2
**busy [1]** 60/24

**C**

**calculate [8]** 18/13 18/14 20/23 21/4 32/12 32/23 53/10 57/24
**calculated [6]** 35/25 44/10 54/15 55/4 58/1 58/2
**calculating [3]** 35/3 36/12 36/15
**calculation [18]** 14/9 14/13 15/23 16/14 16/25 17/3 18/23 19/5 20/15 21/6 23/11 23/15 23/18 26/8 33/16 35/10 36/2 50/13
**calculations [3]** 21/8 32/9 51/11
**calendar [1]** 60/25
**California [1]** 6/12
**call [7]** 5/4 20/15 42/16 45/22 45/23 47/6 48/5
**came [1]** 7/1
**can [67]**
**can't [4]** 28/1 28/4 32/23 49/21
**cannot [2]** 29/19 44/19
**car [6]** 1/3 4/7 4/23 55/1 57/10 58/7
**carryover [1]** 28/15
**cars [14]** 32/20 34/22 34/23 34/24 35/4 49/13 50/7 50/15 50/22 52/21 52/21 54/15 54/15 57/14
**cart [1]** 29/8
**case [38]** 4/8 6/10 6/11 7/16 7/21 7/22 9/2 9/3 11/24 12/3 12/6 15/4 15/11 17/13 20/22 21/11 24/7 24/15 24/20 25/2 27/16 28/18 38/17 41/12 41/24 42/5 44/25 44/4 50/9 53/7 54/11 54/16 56/2 56/2 56/7 56/9 57/12 58/24
**cases [12]** 36/8 36/8 50/9 51/1 51/3 52/25 53/2 53/8 53/8 59/8 59/9 59/11
**casework [1]** 17/12
**cause [1]** 62/5
**caused [1]** 14/11
**CEO [1]** 54/21
**certain [4]** 39/8 39/11 39/12 58/14
**certainly [10]** 10/9 18/9 20/1 26/11 29/20 38/18 39/3 39/24 55/7 55/17
**certified [1]** 62/7
**certify [1]** 62/3
**CFO [5]** 22/4 24/11 31/18 58/1 58/10
**challenge [6]** 22/3 22/7 23/1 50/17 51/11 56/15

**challenging [1]** 14/6
**chance [4]** 9/19 22/15 22/18 59/20
**chart [2]** 49/4 49/5
**check [1]** 13/22
**Chicago [2]** 2/4 2/14
**chicken [5]** 7/2 7/12 7/17 8/24 39/15
**chicken-and-egg [3]** 7/2 7/12 8/24
**chicken-and-the-egg [1]** 39/15
**chief [2]** 10/21 22/17
**chime [1]** 30/5
**chose [1]** 51/24
**Circuit [1]** 21/3
**citation [5]** 19/8 24/1 35/14 36/14 40/1
**citations [1]** 24/24
**cite [1]** 39/4
**cited [3]** 8/5 50/9 52/25
**claim [2]** 26/20 32/13
**claiming [2]** 26/20 32/13
**claims [4]** 6/15 9/20 10/23 51/11
**clear [9]** 5/10 10/7 20/11 24/7 24/19 25/4 32/25 38/14 49/15
**client [6]** 16/22 27/1 28/1 28/3 28/8 44/18
**clients [2]** 26/23 26/24
**close [4]** 9/7 49/3 59/16 60/2
**closed [9]** 8/17 8/17 8/20 9/13 21/15 22/15 28/14 28/14 28/15
**closes [1]** 28/25
**colleagues [1]** 43/21
**collecting [1]** 25/3
**combing [1]** 38/25
**come [8]** 17/9 17/20 19/10 19/10 20/6 32/16 43/4 49/17
**coming [2]** 10/23 38/2
**comment [3]** 15/3 32/3 39/14
**commercial [1]** 24/8
**commit [1]** 45/17
**commitments [1]** 59/21
**communicating [1]** 37/7
**company [32]** 50/2 50/8 50/15 50/16 51/6 51/9 52/15 52/24 53/3 53/6 53/9 53/13 53/24 53/25 54/1 54/8 54/9 54/10 54/12 54/13 54/18 54/19 54/25 55/3 55/7 55/8 56/3 57/19 57/23 58/4 58/5 58/17
**company's [1]** 16/13
**company-wide [21]** 50/2 50/8 50/16 52/15 52/24 53/3 53/6 53/9 53/13 53/24 53/25 54/1 54/18 54/19 55/3 55/7 55/8 56/3 58/4 58/17
**compelled [2]** 6/13 42/8
**competing [1]** 27/4
**complete [4]** 12/18 14/12 45/3 47/16
**completed [1]** 7/11
**completely [3]** 10/13 40/7 59/19
**complies [1]** 11/6
**components [2]** 21/7 36/2
**compromise [1]** 20/3
**computation [24]** 7/7 7/20 7/24 7/25 8/6 8/21 8/22 9/12 10/17 12/18 12/19 12/23 12/25 13/5 13/13 15/10 17/23 19/10 20/19 22/1 23/12 25/17 25/19 37/16
**computations [17]** 9/10 10/25 13/12 14/13 29/12 29/20 29/21 33/13 33/13 33/18 33/23 34/2 34/4 34/14 34/17 36/19 37/16
**compute [1]** 20/8
**CONCARRIL [1]** 1/6
**concern [4]** 37/4 38/9 38/21 40/23
**concerned [3]** 21/14 39/5 59/20
**concerning [1]** 12/11
**concerns [3]** 40/7 41/10 42/14
**conduct [7]** 15/8 23/4 29/11 29/24 33/14 34/6 34/11
**conducted [1]** 33/16

## C

**conducting** [1] 34/18
**confer** [3] 42/23 48/16 60/3
**confers** [1] 42/21
**confidential** [7] 16/21 28/4 51/5 54/22 56/20 56/24 56/25
**confirm** [2] 4/5 5/11
**conflicts** [1] 8/19
**conformed** [1] 62/6
**connection** [2] 12/2 49/15
**consider** [6] 16/23 17/19 18/23 20/16 26/10 59/3
**considerations** [2] 17/4 20/24
**considered** [1] 56/8
**considering** [1] 33/15
**contacted** [1] 8/9
**contained** [2] 21/16 41/13
**contains** [1] 26/2
**contended** [1] 53/25
**contends** [9] 25/16 25/18 25/20 26/5 33/4 33/12 33/22 33/24 34/13
**contention** [1] 39/16
**contentions** [1] 42/1
**continue** [3] 10/11 49/18 52/6
**continued** [1] 8/23
**contrary** [1] 52/16
**convinced** [1] 53/6
**Cooperman** [28] 2/12 5/4 5/23 6/4 7/6 14/25 16/1 17/14 21/19 23/16 24/4 24/10 24/17 40/6 42/11 43/20 44/18 45/19 45/24 46/13 47/19 47/22 48/20 52/5 52/16 55/22 58/21 60/15
**Cooperman's** [2] 31/17 33/3
**correct** [11] 5/14 5/15 20/10 29/3 29/4 43/10 43/18 43/19 51/16 51/17 62/4
**correctly** [1] 40/4
**correspondence** [2] 42/20 60/18
**cost** [6] 12/1 27/24 53/10 54/15 56/18 58/14
**costs** [19] 9/6 12/12 16/10 24/13 49/12 50/6 50/19 50/20 50/21 54/17 55/5 55/5 57/21 57/22 57/24 58/2 58/7 58/13 58/15
**could** [18] 7/3 8/22 9/9 13/21 16/7 17/2 19/18 19/20 20/3 26/22 30/19 33/17 37/22 45/19 45/20 52/10 54/6 59/16
**couldn't** [2] 8/10 40/4
**counsel** [15] 4/4 5/3 9/25 16/22 19/16 21/9 23/9 25/7 28/10 32/7 37/8 38/3 38/5 40/15 47/18
**counsel's** [1] 39/6
**counted** [1] 44/7
**counting** [1] 44/11
**couple** [4] 10/24 11/14 39/7 49/1
**course** [14] 6/21 7/7 14/25 16/17 23/11 28/13 29/18 36/19 38/11 39/24 51/7 55/10 56/22 61/8
**court** [16] 1/1 1/12 2/21 4/9 6/13 18/8 24/22 25/12 32/16 51/20 53/2 53/6 55/22 59/18 61/18 62/9
**Courthouse** [1] 2/21
**Courts** [1] 6/13
**Craig** [9] 2/3 4/22 26/21 30/4 44/1 45/10 48/2 54/5 57/8
**Craig Leavell** [2] 45/10 57/8
**create** [1] 56/10
**criminal** [1] 60/25
**cross** [1] 40/19
**CRR** [2] 2/21 62/9
**crystal** [1] 25/4
**customer** [3] 12/2 12/11 18/11
**customers** [2] 9/5 27/5
**cv** [2] 1/4 4/8

## D

**Dallas** [1] 2/10
**damage** [2] 30/16 30/16
**damages** [7]
**damages-related** [4] 46/5 46/14 47/12 47/15
**Daniel** [2] 2/9 4/20
**data** [2] 21/2 33/7
**date** [12] 5/13 17/16 17/17 44/12 45/2 45/17 45/20 46/25 47/17 48/10 48/16 62/9
**dated** [1] 25/11
**dates** [3] 12/15 44/17 48/13
**day** [2] 49/2 49/8
**days** [1] 22/5
**deadline** [2] 21/1 28/19
**deal** [2] 41/2 43/3
**dealing** [1] 44/23
**decades** [1] 54/23
**decision** [2] 37/15 41/7
**decisions** [1] 29/25
**declaration** [1] 53/9
**deep** [1] 39/21
**defend** [1] 57/3
**defendant** [3] 15/14 18/25 53/4
**defendant's** [1] 32/8
**defendants** [9] 1/7 2/12 5/3 5/23 6/6 17/7 19/12 19/24 39/6
**defendants'** [8] 5/5 15/12 15/13 15/13 15/19 18/10 24/15 24/16
**defense** [1] 5/1
**defensible** [1] 17/21
**defer** [1] 43/20
**definitely** [1] 31/1
**delay** [1] 29/16
**delegated** [2] 27/22 27/24
**demand** [1] 18/12
**Dennis** [3] 2/21 62/8 62/9
**deponents** [1] 54/10
**depose** [5] 18/7 22/4 22/4 24/11 56/17
**deposing** [1] 8/19
**deposition** [2] 16/16 53/21
**depositions** [5] 10/20 17/19 30/20 31/18 56/13
**deprive** [1] 31/23
**described** [3] 23/16 25/23 34/8
**designated** [2] 16/20 58/11
**desperate** [1] 27/23
**detail** [1] 11/15
**detailed** [7] 11/18 12/1 15/19 23/19 24/8 44/5 61/7
**details** [1] 41/7
**determine** [2] 19/11 20/17
**determines** [1] 39/7
**developed** [1] 30/22
**development** [1] 48/24
**did** [8] 17/23 23/19 43/6 45/8 51/15 51/21 52/6 52/8
**didn't** [5] 8/5 8/15 18/9 44/9 45/21
**different** [3] 17/24 57/9 57/11
**digging** [1] 28/15
**digitally** [1] 62/6
**disagree** [1] 34/18
**disagreement** [1] 58/23
**disclosed** [2] 16/23 36/22
**disclosure** [2] 8/2 12/8
**disclosures** [6] 6/15 7/9 7/15 7/24 8/13 22/25
**discomfort** [1] 55/1
**discourage** [1] 38/18
**discovery** [64]
**discuss** [3] 48/7 58/16 61/4
**discussed** [2] 14/19 44/14
**discussing** [3] 5/19 40/10 40/21
**dispute** [4] 8/9 19/18 34/12 60/22
**disputes** [1] 18/9
**district** [6] 1/1 1/2 1/12 2/21 6/12 6/13

**dive** [1] 39/21
**do** [46] 4/15 13/17 16/18 17/14 19/14 20/7 20/23 22/12 23/12 24/2 24/3 25/1 25/8 26/3 26/24 27/16 28/8 28/12 29/19 29/20 30/2 30/9 30/11 30/12 30/13 30/19 31/6 31/21 31/25 38/24 39/18 39/20 39/24 40/1 44/12 44/17 44/23 44/24 45/2 48/9 52/11 53/24 55/15 59/2 59/14 60/1
**document** [9] 26/1 36/14 39/7 50/6 52/7 52/12 52/14 53/14 53/21
**document-wise** [1] 50/6
**documents** [52] 8/25 15/25 16/7 16/8 16/13 16/20 16/21 16/22 19/8 22/8 24/1 24/24 26/10 26/12 26/16 27/3 27/10 27/13 27/15 27/18 27/21 30/6 30/8 30/9 30/12 30/17 30/19 31/13 31/22 32/1 32/1 32/8 32/10 32/12 32/15 35/15 36/15 37/11 37/20 38/4 38/6 38/25 39/5 39/9 39/12 40/2 42/5 44/15 49/15 56/17 57/25 58/14
**does** [5] 13/12 26/14 38/21 41/14 51/1
**doesn't** [3] 7/11 28/3 32/12
**doing** [3] 4/10 38/18 44/9
**dollar** [1] 7/9
**dollars** [1] 8/7
**don't** [39] 6/18 10/12 14/5 14/9 14/10 16/4 16/16 17/22 19/21 27/4 27/5 30/1 31/5 33/17 37/1 37/2 37/24 38/1 38/15 38/16 39/6 40/2 42/16 44/21 45/15 45/16 48/3 48/11 48/13 48/22 49/20 53/11 54/11 55/6 55/13 55/16 56/15 56/16 60/5
**done** [7] 12/9 23/15 27/18 30/10 30/13 30/14 30/20
**doubt** [1] 51/8
**down** [3] 10/15 40/3 43/8
**Drive** [2] 4/2 2/13
**due** [1] 27/11
**during** [11] 6/20 10/3 21/25 22/3 22/9 22/19 22/20 23/2 24/6 29/6 36/2
**duties** [1] 60/25

**E**

**each** [2] 44/22 53/1
**earlier** [1] 12/3
**easily** [1] 10/4
**easy** [1] 16/8
**Eckert** [3] 2/6 4/18 4/18
**economic** [3] 17/4 17/22 26/19
**economist** [1] 40/4
**effective** [1] 52/7
**effectively** [1] 38/8
**efficiency** [3] 30/1 34/7 41/17
**effort** [1] 44/5
**egg** [5] 7/2 7/12 7/17 8/24 39/15
**either** [6] 10/13 18/6 23/22 47/24 53/14 53/21
**electricity** [1] 50/20
**else** [6] 47/4 48/10 48/11 49/25 54/4 61/11
**email** [21] 5/11 5/12 11/3 17/10 25/11 43/7 43/11 45/12 48/19 48/24 49/7 51/15 51/15 51/18 52/1 53/1 53/20 56/6 57/5 60/4 60/9
**emailed** [1] 51/18
**emails** [3] 5/8 5/10 60/8
**embodying** [3] 24/9 52/22 53/17
**employees** [1] 28/25
**end** [3] 13/24 17/10 58/8
**ended** [1] 43/24
**enforce** [1] 55/2
**enough** [1] 38/13
**ensure** [2] 4/10 26/18
**entire** [3] 17/12 17/12 18/18
**entitled** [7] 25/17 25/18 33/13 33/22 34/6 34/13 62/5
**equally** [1] 36/7
**equity** [1] 42/3
**es** [2] 2/13 5/4

**especially** [1] 40/5
**essentially** [1] 39/18
**estimate** [1] 17/3
**et** [1] 1/6
**evaluate** [1] 49/9
**even** [13] 8/16 9/2 12/3 12/19 13/2 13/10 23/15 44/25 46/21 47/14 47/17 54/19 58/11
**even-handed** [4] 44/25 46/21 47/14 47/17
**eventually** [1] 28/13
**ever** [3] 8/15 13/8 56/2
**every** [2] 27/6 56/2
**everything** [5] 12/18 13/4 13/6 24/20 41/17
**evidence** [5] 9/21 10/18 13/13 29/13 37/17
**exact** [1] 19/22
**exactly** [2] 21/18 29/7
**example** [10] 21/23 24/5 29/14 31/17 32/18 32/22 33/3 34/21 35/4 50/12
**exception** [2] 8/18 36/6
**exchange** [1] 45/2
**exclusive** [1] 57/16
**excuse** [1] 7/12
**excused** [1] 7/15
**exists** [1] 49/19
**expand** [1] 46/24
**expect** [3] 28/11 44/20 44/21
**expectation** [1] 39/6
**expected** [1] 29/20
**expecting** [1] 36/19
**expedition** [1] 54/4
**expense** [2] 27/11 28/2
**expert** [52] 6/17 6/21 9/17 9/21 15/8 16/23 16/24 17/5 17/8 17/17 17/25 18/1 18/18 18/19 19/9 19/9 19/13 20/7 20/22 21/13 21/16 21/21 22/12 22/13 22/22 23/4 23/11 23/15 24/1 24/25 25/6 26/7 26/9 26/17 29/8 34/17 34/20 35/15 35/18 37/9 37/12 37/20 38/4 39/7 39/8 39/10 39/17 39/19 39/25 40/16 53/8
**expert's** [1] 23/6
**experts** [21] 17/1 17/11 17/18 21/1 23/3 27/13 27/22 27/25 28/9 28/11 29/11 29/19 29/25 30/16 30/24 33/14 34/5 35/9 36/15 38/24 39/20
**experts'** [1] 29/18
**explain** [4] 16/7 54/14 58/2 58/13
**explained** [1] 57/5
**explanation** [5] 7/10 8/7 8/21 22/1 59/9
**explore** [1] 40/19
**explored** [1] 6/20
**expressed** [2] 19/17 40/23
**extent** [2] 33/19 47/11
**extra** [2] 46/14 46/15
**eyes** [1] 27/3

**F**

**fact** [36] 7/10 7/14 8/17 8/20 10/3 10/5 12/8 13/3 16/2 21/1 21/14 21/20 21/22 21/24 21/25 21/25 22/3 22/9 22/11 22/15 22/16 22/19 22/20 23/2 27/18 28/14 28/24 29/2 29/6 29/22 32/11 36/3 49/3 49/3 55/23 56/19
**factors** [8] 15/6 15/22 20/24 23/10 23/12 23/21 26/9 26/18
**facts** [21] 9/20 10/17 15/4 22/10 22/12 22/22 22/24 23/7 23/19 24/5 24/18 29/5 29/24 34/21 35/1 35/2 35/23 36/3 36/11 37/17 42/6
**factual** [11] 6/14 8/4 9/19 19/8 21/23 24/1 36/18 36/21 39/19 41/8 44/15
**factually** [1] 23/1
**fair** [3] 56/14 56/14 57/3
**fairly** [3] 9/20 51/11 56/17
**fairness** [2] 42/3 48/6
**faith** [3] 40/13 40/15 41/2

**F**

falses [1] 42/7
far [2] 14/20 42/14
fault [1] 51/25
FCRR [2] 2/21 62/9
features [1] 15/15
Federal [1] 21/3
feel [1] 38/12
feeling [1] 48/8
feels [1] 40/18
few [1] 11/22
fifth [2] 2/7 53/20
figure [4] 20/7 21/2 33/17 48/23
file [2] 43/6 60/5
filed [2] 13/8 45/12
final [3] 16/16 29/19 29/21
Finally [1] 48/19
financial [25] 8/18 9/1 10/21 15/25 16/8 16/20 17/20 20/12
22/17 24/8 25/25 32/10 32/11 32/15 32/16 32/19 32/23 33/2
33/7 50/2 50/5 50/8 50/25 56/4 56/16
financials [12] 24/12 24/16 52/15 52/24 53/3 53/6 53/10
53/13 53/18 53/24 54/1 54/1
find [2] 6/11 6/18
fine [5] 55/13 59/23 60/2 60/5 61/3
firm [1] 45/19
first [12] 5/9 5/25 6/9 8/16 11/23 12/8 15/2 25/11 33/12
42/13 44/8 57/1
fishing [1] 54/3
five [1] 37/11
fixed [5] 54/15 55/4 57/22 57/24 58/6
flexible [1] 59/21
focus [6] 15/11 24/15 31/11 32/8 33/6 52/20
focused [1] 30/14
focusing [2] 21/21 27/17
follow [2] 31/16 38/11
follow-up [1] 31/16
following [1] 33/3
foreclosing [1] 10/1
foregoing [1] 62/3
forget [2] 31/2 31/5
forgotten [1] 31/5
form [1] 33/19
forthcoming [1] 6/17
forward [1] 24/23
four [9] 26/8 44/16 45/11 46/4 46/9 46/14 46/15 47/25
48/14
frame [4] 6/5 40/6 48/23 59/4
framed [1] 24/17
free [3] 55/4 58/8 58/10
Friday [4] 8/17 8/20 49/2 49/2
front [1] 19/21
fruitful [1] 27/23
fully [3] 7/16 18/16 47/23
fundamental [1] 58/23
further [6] 6/20 38/2 38/17 40/19 41/14 60/12
future [2] 40/20 61/8

**G**

gave [1] 12/3
general [1] 48/5
generally [1] 43/16
generate [1] 51/8
gentleman [1] 54/12
Georgia [3] 15/6 23/21 36/11
Georgia-Pacific [3] 15/6 23/21 36/11
get [30] 4/5 7/19 8/5 9/19 9/21 20/2 21/15 21/23 22/14
22/24 23/6 25/8 26/24 30/23 35/7 35/8 35/23 36/3 37/11

37/19 37/23 39/10 41/6 46/15 46/22 56/12 57/3 57/23 60/18
60/22
gets [1] 46/14
getting [5] 27/17 27/18 27/18 27/19 32/16
give [8] 17/18 23/3 27/6 38/10 45/19 51/20 55/14 59/2
given [9] 7/24 8/1 8/22 17/16 23/23 28/19 39/5 43/1 51/1
gives [1] 37/16
giving [1] 18/20
go [26] 10/15 10/19 11/17 14/2 14/23 15/22 16/13 17/1
17/11 23/10 25/10 26/11 26/17 27/7 27/16 28/1 28/4 30/7
30/12 32/5 33/10 35/3 36/24 37/5 58/6 58/21
goes [10] 16/11 19/4 20/15 21/7 22/6 36/12 41/21 44/22
50/3 54/2
going [61] 4/10 7/12 8/11 10/7 10/10 11/23 12/9 14/15
22/21 23/11 24/10 25/5 26/9 27/7 28/15 28/16 29/16 29/21
29/25 31/3 31/9 33/20 34/5 34/8 34/17 35/1 35/6 35/9 36/21
37/3 37/8 37/12 37/18 37/20 38/7 38/10 38/17 39/10 39/22
40/9 40/9 41/6 41/22 42/5 43/20 44/25 46/22 46/24 47/10
48/12 48/14 48/15 49/20 52/20 53/4 55/23 56/9 56/13 58/22
60/23 61/5
gondola [8] 53/17 53/18 54/15 57/10 57/14 57/24 58/7
58/15
gondola-specific [1] 53/18
gone [2] 12/14 26/13
good [5] 4/4 14/17 40/13 40/15 41/1
goodwill [1] 18/12
got [3] 9/4 9/10 47/10
granted [1] 49/17
great [1] 60/11
GREENBRIER [86]
Greenbrier's [14] 16/20 19/16 25/21 26/6 27/2 27/13 28/5
28/22 33/6 43/21 43/23 47/3 50/2 52/21
GREENBRIER-CONCARRIL [1] 1/6
guess [7] 27/17 28/22 33/15 33/16 34/1 40/4 40/12
guidance [2] 37/17 44/5
guys [1] 27/8

**H**

had [19] 8/9 12/9 12/10 19/17 19/17 22/15 22/18 30/14
39/20 42/20 42/21 43/3 45/6 49/8 51/4 53/5 58/9 61/1 61/2
hadn't [1] 14/1
half [2] 36/4 55/24
hand [3] 10/12 21/23 22/13
handed [4] 44/25 46/21 47/14 47/17
handful [1] 60/16
handled [1] 52/1
handy [1] 55/17
happen [3] 10/8 29/11 52/10
happened [1] 13/10
happens [1] 13/25
happy [9] 6/5 19/6 19/7 24/2 25/1 36/13 36/14 45/23 58/25
hard [1] 48/9
harm [2] 21/13 23/5
has [50] 5/9 6/10 7/7 7/16 7/25 10/2 10/10 12/10 12/14
13/12 13/17 14/2 14/3 14/10 14/11 18/3 21/14 22/15 22/20
23/16 24/17 24/20 25/2 25/4 26/12 32/7 34/22 34/23 37/15
39/4 39/21 41/1 41/11 43/16 45/23 46/11 47/12 47/25 48/4
48/24 50/5 50/16 51/3 51/4 52/17 52/25 53/25 54/8 54/22
56/4
hashed [1] 42/25
hasn't [8] 8/21 13/4 13/8 13/9 33/16 42/22 49/13 50/7
hate [1] 10/11
have [163]
haven't [17] 8/16 11/11 12/19 14/7 15/9 22/15 22/18 23/15
30/13 30/20 39/20 42/24 43/3 45/11 45/14 45/15 47/13
having [5] 9/12 33/18 36/4
he [6] 24/4 54/12 55/24 58/2 58/11 58/13

**head [3]** 10/22 44/21 45/16
**heads [2]** 27/6 60/21
**heads-up [2]** 27/6 60/21
**hear [2]** 31/2 55/21
**heard [3]** 4/9 32/7 42/13
**hearing [9]** 1/10 3/3 4/3 4/6 5/8 37/8 38/23 51/19 51/25
**heavily [1]** 10/22
**held [2]** 54/13 54/22
**help [1]** 32/16
**helpful [8]** 5/9 18/10 37/10 37/19 37/21 38/15 59/10 59/13
**helps [1]** 34/9 34/10
**her [1]** 60/10
**here [17]** 5/7 6/22 6/24 7/23 11/20 14/5 18/16 28/5 28/5 28/6 29/14 33/9 41/19 43/6 43/21 47/8 53/11
**hesitance [1]** 10/10
**Hey [1]** 42/22
**hide [1]** 13/3
**hiding [1]** 30/21
**higher [2]** 50/23 57/19
**highly [1]** 16/20
**him [2]** 58/11 58/12
**his [1]** 4/10
**Hold [1]** 31/1
**Honor [95]**
**Honor's [4]** 10/10 15/3 39/14 41/24
**HONORABLE [1]** 1/11
**hope [1]** 9/23
**hopeful [1]** 60/18
**Hopefully [1]** 57/6
**horse [1]** 29/9
**hour [1]** 55/23
**how [25]** 5/9 5/18 7/1 15/13 16/9 16/10 18/13 18/13 23/21 30/1 33/17 44/10 46/6 48/8 48/23 54/14 54/16 55/4 56/17 57/23 57/23 58/1 58/2 59/14 59/21
**However [1]** 10/4
**hundreds [1]** 27/15
**Hunt [3]** 51/18 60/8 61/3
**hypothetically [1]** 21/11

---

**I**

**I'll [6]** 13/22 15/1 30/5 48/4 54/7 56/1
**I'm [38]** 5/22 5/24 6/5 6/23 7/2 13/15 14/8 14/25 15/6 15/11 16/7 20/21 25/15 29/10 33/19 34/1 34/1 36/19 36/25 37/8 38/5 38/10 38/18 39/5 39/10 40/24 41/6 42/15 43/20 45/23 46/22 47/6 47/8 48/12 59/6 59/20 61/1 61/5
**I've [7]** 10/22 27/24 34/7 38/11 56/2 56/7 61/6
**idea [1]** 24/4
**identification [5]** 26/4 28/24 33/24 38/6 44/15
**identifications [1]** 25/20
**identified [2]** 23/10 23/13
**identify [5]** 4/13 18/25 30/9 39/7 39/22
**identifying [3]** 26/11 26/16 26/16
**IL [2]** 2/4 2/14
**imbalance [2]** 20/1 41/18
**impact [1]** 35/1
**impasse [1]** 6/22
**important [5]** 37/13 37/16 40/22 40/23 56/4
**importantly [1]** 16/19
**impose [1]** 55/1
**impression [1]** 26/25
**Inc [1]** 6/11
**inclined [1]** 24/22
**include [1]** 52/9
**includes [3]** 35/4 38/25 50/18
**including [7]** 15/5 24/12 25/19 33/23 34/14 47/25 58/4
**incomplete [2]** 20/19 36/5

**increasing [1]** 19/18
**independently [1]** 45/24
**INDEX [1]** 3/1
**indicated [2]** 55/19 61/6
**indirect [1]** 50/19
**information [137]**
**infringement [7]** 20/18 25/21 26/6 27/12 30/15 33/5 34/25
**infringing [7]** 16/15 18/13 18/24 18/25 31/14 32/21 42/2
**initial [8]** 6/15 7/8 7/24 8/2 8/13 12/19 15/5 22/25
**inquiries [1]** 21/15
**instead [5]** 26/13 27/7 42/23 51/25 56/12
**intellectual [1]** 55/2
**intend [1]** 19/12
**intent [1]** 38/14
**intention [3]** 38/19 39/3 60/23
**interest [2]** 41/16 42/3
**interesting [1]** 8/15
**internal [1]** 27/2
**interrogatories [47]** 13/19 13/21 14/3 18/4 18/5 18/15 19/16 19/19 19/22 21/12 31/24 37/23 38/1 38/2 39/16 41/20 42/9 42/14 42/18 43/9 43/22 44/4 44/8 44/16 44/22 44/24 45/1 45/4 45/11 45/13 45/18 45/20 45/25 46/5 46/6 46/9 46/15 46/16 46/19 46/23 46/25 47/1 47/12 47/15 47/16 47/23 48/15
**interrogatory [38]** 8/2 8/4 8/14 11/5 13/20 14/4 14/6 14/7 14/10 15/5 18/25 19/2 19/24 19/25 23/20 23/25 24/23 25/3 25/13 39/4 39/13 43/17 43/23 43/24 44/14 45/3 46/10 46/20 46/24 47/3 48/46 49/11 49/14 49/16 52/5 52/8 52/13
**interrupt [2]** 36/25 37/1
**invention [1]** 57/17
**investigated [1]** 7/16
**involved [2]** 17/1 56/2
**irrelevant [4]** 31/25 54/3 56/8 57/21
**is [279]**
**isn't [3]** 16/25 29/23 37/12
**issue [28]** 6/19 7/4 9/16 21/20 30/15 30/15 31/4 40/2 41/15 42/19 47/2 49/11 49/18 49/18 49/19 49/21 49/21 50/1 50/22 52/5 52/14 54/24 54/25 57/1 57/12 58/25 59/7
**issues [15]** 5/10 6/5 6/6 15/25 20/2 34/10 42/21 43/2 46/2 48/23 48/24 49/7 52/10 53/11 60/17
**issuing [1]** 61/5
**it [160]**
**it's [18]** 8/7 8/11 9/18 11/18 13/18 28/23 32/22 35/16 40/21 42/5 44/2 48/9 50/25 52/18 54/21 56/22 56/25 57/21
**items [3]** 33/10 44/3 57/25
**its [36]** 7/7 7/8 7/10 7/15 7/24 8/13 8/13 8/21 9/1 10/17 10/17 11/4 13/12 13/20 14/9 14/12 14/13 15/14 16/14 21/13 22/1 25/11 25/13 25/18 32/20 34/2 34/6 38/4 40/23 42/5 49/12 49/14 50/6 50/7 52/22 55/2

---

**J**

**jobs [1]** 26/12
**Judge [2]** 4/5 47/20
**Judge You [1]** 4/5
**jump [1]** 11/16
**jumping [1]** 32/6
**June [3]** 11/23 12/4 12/16
**June 1st [1]** 11/23
**June 8th [1]** 12/16
**just [74]**

---

**K**

**keep [2]** 27/22 27/23
**keeps [1]** 54/12
**kicking [1]** 43/8
**kind [14]** 7/17 14/23 17/15 18/16 23/20 24/17 37/12 37/18 38/21 38/25 42/15 54/2 57/11 57/22

**kitchen [1]** 40/12
**know [24]** 12/25 13/7 13/12 14/5 14/10 15/1 27/4 28/3
28/23 37/13 37/15 41/8 42/15 44/21 45/15 45/16 48/3 48/5
48/11 48/13 54/2 60/3 60/20 61/3
**known [3]** 13/1 23/13 54/19
**knows [6]** 7/18 15/7 15/11 20/21 38/3 58/11

**L**

**last [11]** 8/17 8/20 9/25 11/3 16/16 18/21 45/18 49/2 49/2
51/15 52/7
**later [3]** 11/1 12/3 55/14
**laundry [1]** 17/8
**law [2]** 6/10 50/9
**lawyers [6]** 27/16 27/20 30/19 39/18 40/3 56/22
**leadership [1]** 54/24
**learn [3]** 21/24 22/9 22/21
**learned [1]** 21/25
**learning [1]** 29/6
**lease [1]** 50/20
**leased [1]** 34/23
**least [2]** 23/17 28/17
**leave [1]** 49/17
**Leavell [12]** 2/3 4/22 26/21 30/4 31/9 38/22 44/1 45/6
45/10 48/2 54/5 57/8
**left [3]** 22/16 41/1 47/9
**legal [1]** 55/11
**less [1]** 4/23
**let [18]** 5/9 5/18 6/9 12/7 14/15 15/1 19/15 21/10 29/1
34/16 35/19 38/9 40/8 52/4 55/11 60/3 60/20 61/3
**let's [4]** 33/10 41/10 42/22 44/24
**letter [1]** 10/19
**letting [1]** 37/13
**level [1]** 50/23
**like [33]** 4/5 5/18 6/8 11/16 12/22 14/21 16/10 18/7 18/11
24/12 24/14 25/10 27/10 28/8 28/23 29/18 30/2 30/13 34/7
40/8 40/25 43/19 48/21 50/18 51/5 55/12 55/19 55/21 59/8
59/14 60/1 60/4 61/10
**likely [2]** 17/24 20/17
**limit [10]** 13/20 14/1 14/4 14/7 14/10 19/17 43/17 43/23
46/20 46/24
**limited [4]** 1/3 4/7 6/11 45/22
**line [7]** 4/15 4/23 21/3 21/3 57/25 57/25 58/7 58/15
**lines [2]** 57/9 57/20
**list [8]** 17/8 23/13 25/10 33/10 37/9 37/11 37/19 59/11
**listening [1]** 4/23
**little [7]** 6/22 20/1 24/3 41/18 43/20 54/6 55/20
**LLC [2]** 1/6 4/7
**LLP [4]** 2/3 2/6 2/9 2/15
**logical [1]** 32/14
**long [3]** 40/13 40/15 60/22
**longer [1]** 10/12
**look [6]** 17/8 17/19 22/8 23/3 27/9 55/19
**looking [6]** 6/10 9/15 38/4 44/6 59/6 59/9
**looks [1]** 27/10
**lost [17]** 15/18 15/22 18/22 20/16 25/17 26/8 26/25 28/7
31/10 32/18 33/22 42/6 50/10 50/12 51/1 56/5 57/2
**lot [14]** 10/12 12/6 12/17 13/1 14/19 15/4 17/15 21/7 34/25
36/11 38/24 39/15 45/13 54/9
**lots [1]** 35/2
**Lovett [2]** 2/15 5/3
**lowering [1]** 23/23

**M**

**made [16]** 10/1 20/18 25/21 26/5 26/12 27/11 28/2 28/3
28/6 31/12 31/15 31/20 33/5 33/25 37/15 61/7
**MAGISTRATE [1]** 1/12

**make [11]** 4/1 6/7 6/8 16/9 17/15 17/21 21/15 29/1 34/5
38/14 48/18
**makes [11]** 6/2 25/11 32/20 38/19 41/4 48/17 49/22 49/23
57/6 57/11 57/13
**making [6]** 4/14 7/15 10/4 29/25 45/5 49/24
**many [3]** 9/6 18/8 46/6
**Marc [7]** 2/12 5/4 5/23 6/4 7/6 21/19 60/15
**March [4]** 10/19 17/10 25/12 60/24
**March 10th [3]** 10/19 17/10 25/12
**margin [13]** 15/20 21/24 22/7 24/5 24/13 25/19 32/19
50/14 50/14 50/16 50/18 52/22 54/19
**margins [3]** 26/2 33/23 50/22
**Marie [2]** 2/6 4/18
**marked [2]** 27/3 28/4
**market [2]** 18/11 57/16
**marketing [3]** 10/22 22/18 31/19
**math [2]** 15/23 21/6
**matter [2]** 25/3 30/20
**matters [1]** 61/4
**may [22]** 7/11 14/6 16/13 19/9 20/3 24/2 24/24 24/25 27/5
32/3 35/15 37/10 42/10 43/2 48/25 49/5 50/21 55/9 57/7
57/12 60/19 62/8
**maybe [2]** 7/17 49/13
**me [28]** 5/9 5/18 6/2 6/9 11/16 12/7 14/15 15/1 19/15 19/21
21/10 29/1 34/16 34/16 34/18 35/19 38/9 40/8 48/9 49/23
52/4 55/11 59/4 59/8 59/11 59/19 60/3 60/22
**means [2]** 43/7 47/9 54/9
**meet [2]** 42/21 42/23
**meet-and-confer [1]** 42/23
**meet-and-confers [1]** 42/21
**meeting [1]** 47/9
**Megan [9]** 2/2 4/16 5/16 14/18 30/25 33/1 35/12 38/20 46/8
**Megan New [1]** 14/18
**Megan New on [1]** 5/16
**mention [2]** 31/3 60/16
**mentioned [5]** 5/7 8/12 10/21 12/20 19/16
**met [1]** 26/18
**might [10]** 6/7 37/9 37/20 39/1 39/25 40/5 40/17 40/20
48/8 54/17
**Miller [2]** 2/6 4/19
**Miller Nash [1]** 4/19
**mind [1]** 7/2
**mindful [1]** 55/22
**minute [1]** 23/24
**minutes [1]** 49/1
**mishear [1]** 45/8
**misrepresentation [1]** 24/4
**missed [1]** 13/11
**missing [2]** 13/9 14/8
**model [1]** 17/20
**models [1]** 19/11
**moment [5]** 11/14 25/9 31/1 38/23 55/10
**Monday [1]** 16/16
**month [4]** 20/25 28/17 28/19 60/25
**months [3]** 8/11 17/17 28/20
**more [31]** 4/23 5/25 8/6 8/23 11/15 11/18 11/20 12/4 12/6
13/16 19/8 21/20 28/18 29/15 29/17 37/21 37/22 45/13
45/14 48/20 51/20 54/3 54/6 54/9 55/20 57/13 57/14 59/2
59/20 60/3 61/1
**morning [2]** 4/4 14/17
**most [4]** 17/24 19/2 37/11 59/10
**motion [6]** 1/10 3/3 4/3 13/8 39/11 39/11
**move [3]** 5/25 24/22 41/12
**moving [1]** 48/19
**Mr [14]** 24/10 24/17 33/3 40/6 42/11 44/18 45/24 46/13
47/19 47/22 48/20 52/5 52/16 58/21
**Mr. [12]** 14/25 16/1 17/14 23/16 24/4 31/9 31/17 38/22

**M**

**Mr....** [4]  43/20 45/6 45/19 55/22
**Mr. Cooperman** [8]  14/25 16/1 17/14 23/16 24/4 43/20 45/19 55/22
**Mr. Cooperman's** [1]  31/17
**Mr. Leavell** [3]  31/9 38/22 45/6
**MS** [2]  4/18 55/16
**Ms.** [6]  30/6 31/7 51/18 59/15 60/8 61/3
**Ms. Hunt** [3]  51/18 60/8 61/3
**Ms. New** [3]  30/6 31/7 59/15
**much** [10]  5/6 12/4 39/16 41/23 48/22 53/24 59/14 59/21 60/24 61/13
**multiply** [1]  15/17
**multiplying** [1]  36/1
**my** [14]  7/2 7/4 20/12 33/5 33/15 38/14 41/7 43/15 43/20 43/21 44/21 45/16 45/21 60/23
**myself** [1]  21/6

**N**

**names** [3]  9/5 12/2 12/11
**narrow** [1]  47/14
**Nash** [2]  6/4 4/19
**NATIONAL** [4]  1/3 4/7 4/23 55/1
**nearly** [1]  17/17
**necessary** [5]  40/18 43/4 52/25 55/4 61/7
**need** [34]  11/11 11/20 12/18 12/24 14/12 15/18 15/20 16/5 16/9 16/12 16/17 18/6 20/5 20/7 20/16 20/24 26/15 26/17 29/5 31/21 32/2 41/8 42/17 47/15 48/14 49/9 51/10 53/23 53/25 55/6 59/22 60/3 60/19 61/4
**needed** [2]  16/6 53/9
**needs** [14]  6/24 19/7 19/9 20/23 31/4 34/11 36/13 36/18 36/21 37/21 41/11 49/25 53/20 58/18
**never** [2]  13/13 56/7
**new** [14]  2/4 4/16 5/16 14/18 16/3 30/6 30/25 31/7 33/1 35/12 38/20 46/8 55/16 59/15
**next** [6]  10/24 22/5 22/5 24/11 28/19 34/12
**Ninth** [1]  2/16
**no** [14]  5/11 7/23 7/25 11/1 15/10 36/5 37/4 39/3 41/25 46/17 51/8 53/23 55/3 61/12
**No.** [16]  4/8 8/4 8/14 11/5 19/24 19/25 25/13 25/14 25/15 43/24 49/6 49/12 49/16 50/4 52/5 52/13
**No. 13** [7]  8/4 8/14 11/5 19/25 25/14 25/15 43/24
**No. 14** [5]  49/6 49/12 49/16 52/5 52/13
**No. 20-cv-1275** [1]  4/8
**No. 21** [1]  19/24
**No. 27** [1]  50/4
**No. 3** [1]  25/13
**nobody** [1]  29/11
**non** [6]  15/15 18/24 18/25 42/2 45/25 46/2
**non-damages** [1]  46/2
**non-damages-related** [1]  45/25
**non-infringing** [3]  18/24 18/25 42/2
**non-patented** [1]  15/15
**nonpublic** [1]  54/10
**North** [1]  2/10
**Northern** [1]  6/12
**Nos** [1]  18/5
**not** [101]
**note** [2]  48/18 53/1
**noted** [2]  16/24 48/1
**notes** [1]  61/7
**nothing** [4]  7/23 9/10 25/4 60/14
**noticed** [1]  51/14
**now** [21]  8/10 9/12 12/18 16/3 17/3 21/12 21/21 28/13 31/10 32/7 33/20 37/25 38/21 39/20 39/25 40/21 41/10 41/22 42/20 46/2 55/13
**NSC** [99]

**NSC's** [28]  6/23 11/2 11/18 13/17 21/23 22/14 22/16 23/9 23/20 25/6 25/19 25/23 28/20 29/7 32/16 32/23 33/23 35/11 36/9 41/10 41/13 42/9 43/9 46/24 49/12 50/22 52/21 53/15
**number** [12]  5/8 15/12 15/16 17/2 19/19 23/10 32/20 34/22 34/23 34/24 52/1 59/12
**numbers** [4]  9/20 17/21 18/19 20/20

**O**

**oath** [1]  58/10
**objection** [1]  47/21
**obligations** [1]  11/6
**observation** [2]  6/8
**obtain** [1]  61/9
**occasion** [1]  27/6
**off** [3]  10/6 44/21 45/15
**offended** [1]  37/3
**officer** [2]  10/21 22/17
**officers** [1]  8/18
**official** [2]  61/9 62/9
**often** [1]  44/4
**Oh** [2]  13/8 43/11
**Okay** [10]  14/19 27/7 27/10 33/8 41/6 46/22 48/18 59/25 60/12 61/13
**once** [3]  22/11 39/10 52/11
**one** [28]  2/4 6/8 11/13 12/15 13/7 13/16 17/14 18/21 20/4 20/13 21/22 26/22 32/21 35/4 45/5 45/12 46/1 48/24 49/6 49/8 52/5 52/11 53/3 53/5 53/8 53/10 54/11 55/10
**one-sided** [1]  45/5
**ones** [3]  47/25 47/25 48/4
**ongoing** [5]  6/19 7/11 7/22 11/10 12/7
**only** [8]  16/22 27/3 27/9 49/8 50/16 51/4 52/16 57/3
**oOo** [1]  62/1
**operating** [4]  40/13 40/15 41/1
**opinion** [2]  17/6 39/19
**opinions** [8]  17/8 17/13 18/13 18/19 18/20 19/11 24/25 25/6 40/5
**opportunity** [6]  24/11 38/10 43/1 43/3 55/15 56/14
**option** [1]  10/6
**order** [19]  6/25 10/16 10/24 11/21 16/4 17/16 18/8 20/6 20/8 20/14 20/16 24/22 25/12 41/12 41/24 47/11 51/7 56/23 61/5
**ordered** [2]  35/8 53/3
**orders** [1]  20/14
**OREGON** [4]  1/2 1/6 5/3 11/25
**original** [2]  12/6 62/5
**other** [27]  10/12 10/18 10/25 16/12 19/4 22/13 22/24 24/1 30/2 36/8 38/22 41/20 42/1 42/19 43/22 45/20 46/23 48/3 50/1 52/10 53/8 54/17 57/20 58/6 59/21 60/17 60/25
**others** [1]  57/13
**our** [58]  9/5 9/6 9/11 10/18 12/11 15/5 15/20 16/18 16/22 16/24 17/8 17/11 17/12 18/18 19/9 19/9 21/21 22/12 23/3 24/1 24/5 24/11 24/25 26/17 26/23 26/24 27/1 27/1 27/13 27/22 28/1 28/3 28/8 30/15 30/23 31/18 32/11 33/7 39/7 39/20 39/24 41/20 41/23 44/7 49/5 49/7 50/3 50/4 50/13 50/15 50/17 53/25 54/14 54/24 56/6 57/5 58/25
**ourselves** [1]  57/4
**out** [20]  7/1 7/17 9/3 18/21 21/2 24/14 26/25 27/19 40/16 41/1 42/23 42/25 43/2 45/13 46/25 48/13 48/23 49/19 50/15 60/19
**outline** [1]  5/10
**outset** [1]  7/3
**outside** [1]  54/21
**outstanding** [11]  46/5 46/6 46/9 46/19 46/23 46/25 47/23 47/24 47/25 48/3 48/15
**over** [10]  6/16 8/11 14/1 14/4 16/2 22/11 30/23 44/24 45/1 51/18
**overall** [3]  16/14 35/5 57/19
**overhead** [2]  53/11 57/22

**overwhelm [2]** 38/7 40/11
**overwhelmed [1]** 40/24
**overwhelming [1]** 38/13
**own [4]** 13/8 32/1 32/11 56/19

**P**

**Pacific [3]** 15/6 23/21 36/11
**page [1]** 59/12
**pages [2]** 37/11 40/11
**pain [1]** 56/10
**Panduit [3]** 15/21 26/9 26/18
**paper [1]** 51/21
**paragraph [2]** 11/3 53/20
**paragraphs [1]** 11/15
**part [7]** 8/11 15/7 18/22 22/14 34/19 35/7 37/14
**particular [11]** 9/16 14/21 29/13 35/21 45/17 49/11 50/22 57/10 58/14 59/10 59/12
**particularly [3]** 4/13 37/10 38/15
**parties [14]** 12/22 13/24 14/1 19/17 20/3 32/22 38/10 42/24 43/1 45/4 46/19 47/15 48/12 53/5
**parties' [3]** 32/10 32/14 32/19
**parts [2]** 36/4 43/22
**party [2]** 7/15 44/24
**patent [10]** 6/14 15/11 20/21 24/14 36/6 36/7 44/2 51/1 56/2 58/24
**patented [6]** 15/15 15/15 49/13 50/7 50/15 57/16
**patents [1]** 57/15
**paying [3]** 50/19 50/20 50/20
**Pearl [1]** 2/10
**people [4]** 27/2 27/9 27/12 29/14
**percent [6]** 21/24 22/7 50/13 50/14 50/16 50/18
**performed [1]** 33/18
**perhaps [2]** 29/17 37/9
**period [2]** 11/5 21/1
**perspective [1]** 27/24
**persuasive [2]** 6/12 6/18
**pertaining [1]** 25/22
**pertains [1]** 43/9
**phone [1]** 56/7
**pick [3]** 44/12 45/2 48/9
**picture [1]** 36/5
**piece [2]** 26/4 40/16
**pieces [1]** 38/16
**Pieter [2]** 2/13 5/4
**place [4]** 8/16 51/8 56/23 57/1
**plaintiff [12]** 1/4 2/2 4/15 4/17 4/19 4/21 5/16 7/18 12/21 12/23 14/18 60/14
**plaintiff's [2]** 12/23 18/17
**plaintiffs [3]** 6/14 35/5 56/11
**planned [1]** 28/18
**play [1]** 57/2
**please [5]** 4/11 11/2 11/8 11/14 15/1
**point [19]** 7/1 9/7 9/8 9/11 10/1 13/25 16/19 18/21 24/14 31/3 33/5 33/15 34/6 34/11 34/12 35/7 36/20 37/14 59/11
**points [1]** 14/24
**portfolio [1]** 57/15
**Portland [4]** 1/6 2/7 2/16 2/22
**position [10]** 7/10 9/11 13/23 17/23 18/10 21/23 23/21 35/13 43/22 43/23
**positions [2]** 22/12 30/22
**possible [1]** 41/23
**possibly [1]** 46/23
**potential [1]** 58/8
**potentially [2]** 19/20 52/6
**precedent [1]** 21/3
**preclude [1]** 39/11

**preclusion [1]** 40/3
**prefer [1]** 46/1
**prejudiced [1]** 22/21
**preliminary [2]** 7/20 23/21
**premature [2]** 34/3 42/19
**prepared [1]** 48/7
**prepares [1]** 21/13
**president [2]** 22/17 31/18
**pretty [2]** 51/19 59/7
**prevent [1]** 56/20
**prevented [1]** 14/11
**previously [1]** 42/17
**price [2]** 16/10 28/6
**pricing [2]** 15/13 18/13
**principal [1]** 9/15
**principles [1]** 17/22
**prior [2]** 11/25 44/3
**prioritized [1]** 30/10
**prioritizing [1]** 27/20
**private [4]** 51/6 51/9 54/8 54/9
**probably [1]** 55/18
**problem [3]** 37/3 39/15 39/15
**proceed [1]** 5/18
**proceedings [3]** 4/11 61/9 62/4
**process [2]** 17/1 49/5
**produce [1]** 52/17
**produced [10]** 24/20 25/2 27/16 27/19 30/7 39/1 53/15 54/1 58/9 58/19
**product [4]** 15/14 57/20 57/25 58/7
**product's [1]** 20/12
**production [1]** 50/3
**products [14]** 9/7 12/12 12/13 15/16 16/15 18/13 24/9 31/14 32/20 44/3 52/22 57/9 57/10 57/18
**profit [25]** 15/20 16/11 18/11 21/24 22/7 24/5 24/13 25/6 25/18 25/19 26/2 26/8 31/11 32/19 33/22 33/23 50/10 50/14 50/14 50/16 50/18 50/22 51/2 52/22 54/19
**profitability [11]** 9/6 12/14 35/4 35/5 54/18 55/8 57/9 57/18 57/19 57/20 58/5
**profitable [2]** 57/13 57/14
**profits [12]** 15/12 15/18 15/22 16/14 18/22 20/16 32/18 42/6 49/12 50/12 56/5 57/2
**progresses [1]** 21/11
**prohibiting [1]** 10/16
**projects [1]** 54/17
**promised [1]** 8/13
**property [1]** 55/2
**proposal [1]** 45/21
**proposals [1]** 26/13
**proposition [1]** 48/6
**protecting [1]** 57/15
**protective [2]** 51/7 56/22
**protestations [1]** 6/16
**prove [1]** 18/17
**provide [60]** 6/14 7/7 8/15 10/5 10/16 10/25 12/22 12/24 14/11 15/9 17/3 17/10 17/23 17/24 18/15 18/18 19/7 19/8 19/13 23/14 23/19 23/25 25/25 26/1 26/15 32/23 33/17 34/2 34/8 35/13 35/14 36/13 36/14 37/9 38/5 39/18 39/25 40/9 40/14 40/24 41/19 41/23 42/4 42/8 43/25 44/5 44/15 51/6 52/7 52/12 53/23 55/14 55/17 55/21 59/3 59/4 59/8 59/11 59/16
**provided [46]** 5/8 8/21 9/5 9/12 10/2 11/11 12/1 12/1 12/5 12/6 12/8 12/19 13/4 13/5 13/6 13/13 15/4 16/1 16/23 18/3 19/23 22/20 23/18 24/8 24/20 26/12 32/2 33/2 36/10 36/18 36/20 38/12 38/15 39/13 39/21 41/8 41/11 49/16 50/5 50/7 52/11 52/17 52/23 53/12 53/14 56/4
**providing [12]** 8/25 9/1 9/9 13/5 13/11 17/2 19/12 19/25 22/1 37/25 39/4 40/1

**P**

**punish [1]** 55/1
**punished [2]** 56/21 56/23
**purported [1]** 44/3
**purposes [1]** 34/7
**pushing [1]** 54/25
**put [2]** 17/12 57/1
**puts [1]** 17/10
**putting [2]** 17/5 29/8

**Q**

**question [9]** 13/16 18/2 23/9 30/7 31/16 33/15 48/6 52/15 56/15
**questions [12]** 9/23 15/1 22/9 22/19 23/2 24/11 28/25 29/5 29/6 31/24 32/2 54/16
**quick [1]** 48/18
**quickly [3]** 4/13 48/8 51/19
**quite [2]** 6/18 10/11
**quote [1]** 59/12
**quoting [1]** 28/6

**R**

**railcar [1]** 57/11
**railcars [1]** 57/12
**raise [3]** 18/9 37/14 49/18
**raised [6]** 6/6 8/10 14/24 42/21 49/7 60/17
**raising [1]** 23/22
**Rarely [1]** 27/6
**rate [13]** 15/17 16/25 23/22 23/22 23/23 35/3 35/16 35/20 35/24 36/1 36/12 36/16 53/11
**rates [1]** 34/15
**rather [1]** 43/8
**RDR [2]** 2/21 62/9
**reach [1]** 20/3
**reached [2]** 13/20 19/17
**reaching [1]** 16/11
**read [1]** 5/9
**readily [1]** 50/24
**reading [2]** 4/13 43/15
**ready [1]** 48/7
**real [1]** 51/4
**really [15]** 32/22 33/17 33/18 35/17 37/2 37/7 39/20 40/22 40/22 41/17 42/12 43/7 43/24 54/3 60/5
**realm [1]** 28/9
**reason [7]** 15/9 28/7 36/6 40/17 44/18 52/17 53/23
**reasonable [16]** 11/5 15/7 18/22 20/14 23/18 27/24 34/13 35/16 35/24 36/4 42/7 50/11 51/2 56/5 57/2 59/4
**reasons [4]** 15/10 53/2 56/6 56/6
**rebut [1]** 23/2
**received [3]** 19/2 42/16 48/4
**receives [1]** 8/23
**recent [1]** 19/3
**recess [1]** 61/15
**recognize [2]** 18/16 54/24
**recognized [1]** 50/8
**reconvene [1]** 38/13
**record [4]** 42/9 61/6 61/8 62/4
**refer [1]** 61/7
**reflect [1]** 20/13
**reflective [1]** 50/19
**refused [6]** 13/18 14/3 18/15 41/19 43/25 44/8
**regard [2]** 29/1 49/11
**regarding [1]** 10/3
**regardless [1]** 51/9
**relate [5]** 16/10 18/5 46/9 49/5 51/1
**related [19]** 5/19 8/18 10/23 16/14 24/18 25/17 33/13 33/23 34/14 36/11 41/20 45/25 46/5 46/10 46/14 47/12 47/15

**relates [4]** 23/17 50/6 53/11 57/4
**relating [2]** 11/6 47/16
**relevancy [1]** 58/8
**relevant [18]** 30/9 39/1 39/9 39/22 42/6 50/10 50/17 52/19 53/7 53/13 54/15 55/5 56/9 57/5 58/16 58/18 58/24 58/24
**reliable [1]** 26/19
**reliance [1]** 39/12
**relied [1]** 39/23
**relief [2]** 9/15 42/24
**relies [1]** 40/16
**rely [14]** 19/9 24/2 24/25 24/25 35/9 35/15 36/15 37/10 37/12 37/20 39/9 39/25 40/5 42/5
**relying [1]** 42/15
**remarks [1]** 4/14
**remedied [1]** 10/5
**remedy [1]** 10/8
**remember [2]** 9/3 27/1
**reopen [2]** 29/13 40/18
**reopening [1]** 10/5
**repaired [1]** 34/24
**repeating [1]** 21/6
**reply [2]** 43/6 43/7
**report [7]** 9/17 21/13 21/17 22/14 23/6 28/19 34/20
**reporter [4]** 2/21 4/9 55/23 62/9
**reports [6]** 6/17 17/17 23/4 29/12 29/22 39/8
**request [9]** 5/25 6/1 10/4 10/15 21/22 33/21 35/6 50/2 50/3
**requested [2]** 13/7 39/17
**requesting [3]** 33/11 40/6 45/12
**requests [2]** 5/19 25/11
**require [3]** 29/17 33/20 34/8
**required [7]** 7/8 14/9 36/7 36/21 42/4 44/25 51/3
**requirement [2]** 8/3 32/22
**requires [1]** 12/21
**requiring [1]** 34/2
**resolve [3]** 8/10 43/8 52/14
**resolved [3]** 19/18 47/2 49/25
**respect [8]** 10/1 18/2 19/15 21/16 26/23 41/7 42/1 47/3
**respond [17]** 6/25 11/2 11/8 11/21 13/16 13/20 14/3 14/24 42/10 44/13 44/19 45/17 45/20 48/10 51/21 51/24 55/9
**responded [6]** 19/22 43/6 43/17 45/14 45/15 47/13
**responding [2]** 6/23 47/16
**response [34]** 6/23 8/14 11/4 11/4 11/19 13/17 15/5 18/4 23/20 23/25 25/4 25/13 25/23 26/1 26/15 28/22 35/11 36/9 38/1 39/4 39/13 41/13 41/24 43/6 43/11 43/25 44/14 44/16 49/14 51/4 51/15 52/3 52/8 52/13
**responses [6]** 19/23 19/25 20/2 41/19 42/14 45/3
**responsibilities [1]** 61/2
**responsive [1]** 6/16
**rest [2]** 23/1 42/15
**results [1]** 37/18
**return [3]** 18/20 31/3 60/24
**revenue [5]** 12/1 15/13 15/19 16/10 24/12
**revenues [4]** 9/6 12/11 16/14 50/6
**reviewing [1]** 49/5
**right [28]** 5/17 5/24 8/7 11/13 11/25 14/14 16/3 21/2 21/9 21/11 21/21 29/7 32/9 33/20 35/19 37/25 39/19 39/25 40/21 41/3 46/2 46/13 51/13 55/13 55/18 57/16 60/12 61/11
**rights [1]** 55/2
**Rives [1]** 2/15
**RMR [1]** 62/9
**road [3]** 10/16 40/3 43/8
**rog [1]** 14/1
**rogs [1]** 18/3
**Room [1]** 2/22
**royalties [2]** 56/5 57/3
**royalty [26]** 15/7 15/17 18/22 20/15 20/15 23/18 23/22

**R**

**royalty... [19]** 34/13 34/14 34/15 34/21 35/2 35/3 35/10 35/14 35/16 35/20 35/23 35/24 35/25 35/25 36/1 36/4 42/7 50/11 51/2

**rule [6]** 7/8 7/14 7/14 12/21 13/2 13/3

**rules [4]** 20/22 22/23 29/9 36/7

**ruling [1]** 61/6

**run [1]** 40/2

**runs [1]** 54/12

**S**

**said [20]** 6/13 6/21 7/22 10/22 12/22 13/25 14/2 16/1 21/5 23/24 24/10 28/23 36/12 38/11 40/25 41/17 42/22 45/7 52/16 53/4

**salaries [1]** 50/21

**sale [4]** 20/17 27/10 28/7 28/24

**sales [23]** 10/22 22/18 25/20 26/5 26/11 26/13 26/17 26/25 28/2 28/3 28/5 29/1 29/15 31/12 31/12 31/13 31/14 31/19 31/20 33/4 33/6 33/24 50/6

**same [7]** 11/25 14/2 19/14 22/13 44/17 45/2 60/9

**say [20]** 5/9 6/9 17/25 22/6 27/6 27/10 28/1 30/3 31/2 31/7 37/8 38/10 40/8 41/14 41/18 48/9 48/21 50/13 58/22 61/1

**saying [13]** 4/12 8/24 10/14 13/8 15/16 20/5 20/9 31/9 33/9 34/1 38/23 46/4 53/9

**says [5]** 7/14 13/3 21/23 53/13 53/19

**scenario [1]** 7/2

**scheduled [2]** 4/6 22/4

**schedules [1]** 59/20

**scheduling [2]** 8/19 17/16

**second [3]** 6/1 26/4 33/21

**secret [2]** 51/5 52/18

**see [12]** 6/19 22/11 27/2 30/1 33/17 38/1 39/10 43/2 43/11 52/9 55/20 56/24

**seeing [1]** 7/9

**seeking [2]** 10/2 25/9

**seem [1]** 6/9

**seems [4]** 17/7 23/13 29/18 51/5

**seen [2]** 16/7 56/7

**sees [1]** 21/14

**segment [1]** 55/6

**segments [1]** 55/5

**sells [2]** 15/14 50/7

**send [1]** 60/9

**sending [1]** 52/1

**sense [11]** 6/2 6/7 17/16 17/21 38/19 41/4 48/17 49/22 49/23 57/6 57/13

**sent [2]** 49/4 51/18

**sentence [1]** 13/18

**served [5]** 18/24 45/13 45/14 45/21 46/11

**set [1]** 28/17

**sets [3]** 27/12 27/21 30/18

**setting [1]** 51/19

**several [5]** 15/10 32/7 44/2 44/3 57/11

**shall [1]** 47/24

**share [2]** 18/11 55/12

**shared [1]** 54/21

**shield [1]** 46/20

**should [24]** 5/24 7/9 7/19 9/9 9/13 12/17 13/2 13/4 19/14 34/19 36/2 36/7 40/25 42/7 43/7 44/12 45/2 46/15 47/22 50/24 51/20 52/14 59/9 60/9

**shouldn't [11]** 6/19 9/16 13/11 24/6 29/23 51/6 52/17 56/20 56/21 56/23 56/25

**show [4]** 16/22 26/12 51/2 54/2

**side [2]** 38/22 47/24

**sided [1]** 45/5

**sides [1]** 44/13

**sign [1]** 7/9

**signature [3]** 62/6 62/6 62/7

**signed [1]** 62/6

**significant [1]** 23/5

**signing [1]** 62/3

**similar [1]** 35/7

**Similarly [1]** 15/18

**simple [5]** 15/16 15/22 16/25 21/6 26/3

**simply [1]** 25/2

**since [5]** 6/5 9/8 44/9 44/23 48/25

**single [1]** 13/13

**sink [1]** 40/12

**sit [3]** 27/9 27/16 28/8

**sitting [2]** 14/5 30/21

**situation [4]** 12/22 18/16 31/22 41/22

**small [2]** 7/17 7/17

**so [119]**

**sold [4]** 12/12 15/16 34/22 34/23

**some [21]** 6/24 6/24 7/9 10/11 13/25 19/18 20/5 21/12 23/18 28/15 29/12 31/3 33/19 37/16 43/22 46/20 47/17 57/6 57/12 58/12 59/2

**somebody [2]** 30/2 47/9

**somehow [1]** 56/10

**something [12]** 8/22 13/10 26/17 27/20 30/3 30/10 31/7 33/14 41/1 58/17 58/18 59/16

**sometimes [1]** 13/25

**soon [1]** 11/5

**sorry [3]** 5/22 25/15 36/25

**sort [4]** 8/6 31/25 36/6 46/20

**sorts [2]** 50/21 58/5

**sounds [2]** 30/2 40/8

**space [1]** 57/22

**speak [3]** 4/12 40/12 44/1

**speaking [5]** 5/21 20/9 43/16 45/10 47/18

**specific [19]** 14/6 20/12 20/23 24/24 26/5 26/16 28/24 29/15 33/24 37/21 37/22 38/5 38/13 40/10 40/25 53/2 53/10 53/18 54/16

**specifically [14]** 7/14 11/8 11/18 11/20 11/23 12/10 12/15 12/16 13/2 25/22 31/10 37/13 42/25 46/17

**speculation [1]** 33/19

**speed [3]** 43/15

**spend [1]** 49/20

**spoke [1]** 38/22

**spreadsheet [1]** 58/9

**spring [1]** 9/17

**squarely [1]** 26/7

**standpoint [1]** 30/1

**start [2]** 7/17 52/4

**started [4]** 4/5 8/25 9/1 9/3

**starting [3]** 9/7 28/16 30/16

**stated [2]** 56/6 56/6

**statement [1]** 50/25

**statements [2]** 11/3 56/15

**STATES [3]** 1/1 1/12 2/21

**stay [1]** 49/11

**STEEL [4]** 1/3 4/7 4/23 55/1

**Steve [1]** 5/3

**Steve Lovett [1]** 5/3

**Steven [1]** 2/15

**still [6]** 8/5 8/20 13/11 47/7 47/8 49/19

**Stoel [1]** 2/15

**stop [2]** 13/11 15/1

**stopped [2]** 19/24 44/11

**straightforward [1]** 59/7

**Street [1]** 2/10

**strictly [1]** 35/18

**strike [1]** 39/11

**stringent [1]** 20/22

**S**

**stuff [2]** 28/4 54/3
**subject [5]** 16/4 26/7 29/22 35/18 49/6
**submissions [1]** 61/14
**submit [1]** 60/4
**submitted [4]** 5/12 6/10 8/1 53/9
**subparts [1]** 44/7
**subsequent [1]** 13/21
**suggest [5]** 42/18 42/25 44/23 47/10 49/10
**suggested [2]** 32/7 52/6
**suggesting [5]** 38/19 46/14 46/18 46/18 47/22
**suggestion [2]** 42/17 49/24
**Suite [5]** 2/4 2/7 2/10 2/13 2/16
**summarize [2]** 30/8 31/14
**super [3]** 51/5 52/18 56/20
**supplement [17]** 7/21 8/13 8/14 8/23 11/4 13/1 16/3 19/3 20/11 23/25 24/23 25/13 42/16 42/17 52/8 52/11 58/25
**supplemental [1]** 52/12
**supplemented [8]** 6/20 8/1 9/8 12/15 12/16 16/2 45/4 49/14
**supplementing [3]** 8/2 19/2 46/12
**support [3]** 8/4 35/9 35/15
**supporting [1]** 13/13
**supposed [4]** 9/19 22/23 22/24 57/15
**supposedly [1]** 13/3
**sure [21]** 4/11 4/25 8/24 11/9 11/22 13/15 13/23 14/23 15/6 15/11 16/7 16/9 20/21 29/1 29/10 32/5 38/14 48/12 49/8 49/15 52/4
**surprise [1]** 25/5
**suspect [1]** 27/5
**SW [3]** 2/7 2/16 2/22

**T**

**table [3]** 10/7 10/20 52/6
**take [6]** 10/6 16/15 20/24 28/17 53/4 60/23
**taken [1]** 13/24
**takes [1]** 17/5
**taking [1]** 35/25
**talk [6]** 5/25 7/3 41/10 43/1 45/23 46/1
**talked [1]** 46/11
**talking [4]** 20/20 31/10 37/25 48/25
**team [1]** 42/15
**technically [1]** 28/14
**telephone [1]** 37/4
**Telephonic [3]** 1/10 3/3 4/3
**tell [4]** 28/5 30/14 34/18 49/21
**ten [1]** 22/5
**test [1]** 9/20
**testimony [3]** 26/10 39/11 53/22
**Texas [4]** 9/3 9/5 11/24 12/9
**than [12]** 8/6 11/1 17/25 28/18 42/1 43/8 54/4 54/9 57/13 57/19 61/1 61/2
**thank [22]** 4/25 5/6 5/17 9/25 14/14 21/9 23/8 25/7 25/15 28/10 31/8 37/6 41/4 42/12 45/9 47/20 49/23 51/22 61/13 61/15 61/16 61/17
**that [491]**
**that's [51]** 5/15 7/8 7/22 9/15 9/18 10/7 11/13 17/18 20/9 20/10 20/25 22/22 22/23 24/19 27/13 27/19 27/21 28/17 29/7 29/16 30/10 32/9 32/13 32/15 35/24 37/14 37/20 38/17 38/19 40/19 41/12 43/10 43/15 45/6 45/22 50/7 51/1 51/12 51/17 52/22 54/24 55/13 57/4 57/10 57/20 58/1 58/3 58/7 59/23 60/1 61/3
**their [42]** 6/14 7/20 8/3 9/17 9/19 9/21 10/21 11/3 12/18 12/24 13/5 13/8 18/7 22/4 22/8 22/13 22/17 23/20 25/6 27/5 29/11 29/12 29/19 29/20 29/22 29/25 30/19 30/23 31/13 32/1 35/10 40/5 42/1 44/14 45/12 48/7 50/17 50/25 51/11 51/18 52/25 56/19

**them [16]** 7/19 8/9 12/3 18/5 23/13 23/23 26/15 27/3 28/5 28/6 28/17 30/8 30/14 54/23 60/18 60/19
**theme [1]** 35/1
**themselves [1]** 11/21
**then [43]** 5/25 7/19 7/21 7/25 9/3 9/19 12/6 12/25 13/22 16/12 19/13 22/3 22/11 22/11 22/20 23/1 23/3 23/4 29/12 29/16 29/23 30/5 35/2 38/13 39/10 39/10 40/17 41/2 42/7 43/3 44/8 45/1 45/2 48/6 49/25 50/17 53/8 59/11 60/1 60/12 61/11
**there [62]** 6/12 6/19 6/24 7/23 7/25 10/8 13/10 14/21 15/25 16/25 18/23 19/25 20/1 20/3 20/22 20/23 21/7 23/5 23/9 25/5 26/8 26/10 26/19 27/15 29/16 33/21 34/25 35/2 35/17 36/1 36/5 38/24 40/3 41/17 44/2 44/3 45/13 45/13 46/4 47/4 47/6 47/7 47/11 47/22 48/3 48/11 48/22 48/24 49/15 49/20 49/21 51/7 53/2 53/23 54/11 55/3 55/20 58/1 58/14 59/7 60/16 61/8
**thereafter [1]** 51/19
**these [11]** 5/19 6/5 10/20 16/8 20/2 22/22 39/16 54/19 57/18 58/12 61/9
**they [114]**
**they're [2]** 11/19 44/6
**they've [4]** 13/1 13/7 19/1 31/15
**thing [4]** 14/2 15/2 18/21 26/22
**things [13]** 10/18 10/25 16/9 18/11 18/14 20/4 27/22 27/23 28/17 29/16 50/18 57/23 58/6
**think [64]**
**third [2]** 2/22 16/19
**this [110]**
**Thornburg [3]** 2/3 2/9 4/17
**those [47]** 9/20 10/23 12/13 15/24 16/13 18/4 18/14 20/14 23/19 24/12 26/11 26/13 26/16 26/20 29/1 29/6 30/18 31/12 31/19 31/20 31/24 32/2 32/8 33/18 34/4 36/20 39/9 42/14 42/18 43/17 44/7 44/16 44/22 47/1 48/5 48/14 50/21 53/1 53/3 53/5 53/11 54/17 57/15 57/22 57/24 58/2 59/9
**though [3]** 23/15 24/18 28/11
**thought [5]** 7/1 44/10 45/6 45/19 59/3
**thoughts [3]** 11/19 11/22 35/20
**thousands [3]** 27/15 38/16 40/11
**three [6]** 18/4 18/5 45/11 45/15 45/18 52/25
**through [21]** 6/15 6/17 14/23 17/1 17/11 23/20 25/10 26/18 27/9 27/16 27/17 30/8 30/12 37/23 38/11 38/25 43/14 44/19 53/15 53/21 53/21
**throughout [4]** 7/21 7/25 22/25 38/23
**Thursday [2]** 59/17 60/2
**THX [2]** 6/11 15/4
**tightly [2]** 54/13 54/22
**time [28]** 10/11 11/5 11/25 12/14 12/25 16/2 17/18 17/25 18/19 19/9 19/13 23/14 32/20 35/7 40/5 40/15 41/2 42/13 48/13 49/9 49/20 55/14 59/4 59/14 59/22 60/3 60/23 60/24
**times [2]** 16/25 32/7
**timing [2]** 21/20 48/7
**today [10]** 4/6 5/11 8/16 11/1 14/16 43/8 52/10 60/13 60/25 61/5
**together [2]** 17/5 17/12
**told [1]** 28/16
**too [3]** 4/12 37/19 59/23
**took [1]** 60/22
**top [2]** 44/21 45/16
**topic [2]** 50/4 53/16
**topics [2]** 45/22 58/12
**total [2]** 34/14 35/2
**tough [1]** 35/17
**towards [1]** 13/24
**transcript [5]** 4/11 16/17 61/9 62/4 62/5
**transferred [3]** 9/2 9/4 11/24
**treat [1]** 60/9
**treated [1]** 44/7

**T**

treats [1]  56/19
truly [3]  39/17 39/22 42/12
try [10]  6/5 14/23 27/23 42/23 48/16 48/23 54/7 54/25 56/1 56/10
trying [5]  26/24 54/23 55/1 56/12 61/1
turn [4]  14/15 21/10 30/5 30/23
turns [3]  40/16 49/19 50/15
two [16]  8/11 8/18 9/8 11/24 12/5 17/17 19/3 20/25 22/16 28/19 36/1 45/15 45/18 48/23 49/6 53/8
two-month [1]  20/25
TX [1]  2/10
type [5]  44/6 50/25 51/10 54/12 57/11
typical [1]  7/22
typically [1]  24/15

**U**

ultimate [3]  19/11 34/3 35/10
ultimately [4]  17/25 34/5 34/17 34/19
unaware [1]  14/8
uncertain [1]  47/6
under [2]  50/12 58/10
underlying [14]  10/17 23/12 34/9 34/21 34/25 35/8 35/23 36/3 36/17 36/20 37/17 38/6 39/19 41/8
understand [18]  6/22 8/24 10/3 10/9 10/13 16/9 16/9 16/12 28/21 33/8 34/10 38/9 40/7 46/10 47/2 51/13 51/24 57/21
understanding [2]  20/13 43/21
undue [1]  17/11
Unfortunately [1]  7/23
UNITED [3]  1/1 1/12 2/21
unsure [1]  51/20
until [1]  29/8
unusual [1]  57/20
up [14]  8/22 10/23 17/9 17/20 19/10 19/10 19/23 20/6 27/6 31/16 33/3 40/22 60/5 60/21
updated [1]  20/13
upon [1]  39/23
Upper [1]  2/4
us [24]  7/24 8/1 9/17 14/3 14/11 15/21 16/7 17/11 17/14 18/18 18/20 22/20 24/22 28/16 30/7 30/13 32/12 37/11 37/13 38/7 39/18 49/4 50/5 51/19
use [2]  38/7 46/19
useless [1]  38/8
uses [1]  24/4
using [1]  60/8
usual [1]  61/1
usually [1]  61/3

**V**

Valenzuela [2]  2/9 4/20
validity [1]  30/15
value [3]  15/14 18/12 18/14
valve [1]  12/9
van [2]  2/13 5/4
various [1]  26/10
venue [1]  12/9
versus [3]  4/7 15/15 21/21
very [20]  5/6 5/10 16/8 16/25 20/11 20/22 20/23 26/7 44/4 53/2 54/13 54/13 54/22 54/22 54/22 56/9 57/5 59/8 59/21 61/13
viable [1]  18/24
vice [2]  22/17 31/18
view [2]  43/22 54/23
views [1]  18/12
virtually [1]  41/25

**W**

Wacker [2]  2/4 2/13
wait [4]  9/17 22/14 22/21 61/14
waiting [7]  15/24 16/2 20/11 23/6 29/8 30/23 52/9
walks [1]  23/20
want [27]  5/11 10/12 15/2 18/18 20/11 24/3 24/19 25/4 25/8 30/7 31/2 31/2 31/5 31/16 31/18 33/3 37/1 40/2 41/14 48/18 49/20 53/1 55/13 55/14 55/22 59/2 59/8
wanted [9]  6/25 10/6 31/7 37/14 47/14 55/20 55/21 60/16 60/20
wants [3]  13/16 29/11 30/2
was [34]  5/11 5/21 7/2 7/23 8/4 9/2 9/7 11/24 12/4 12/7 12/8 12/9 12/16 13/10 16/6 27/11 28/7 31/9 31/9 33/3 33/5 43/5 45/10 45/21 46/18 47/10 47/18 47/19 53/3 53/6 53/7 53/10 58/22 60/24
wasn't [1]  46/17
way [11]  8/25 9/18 13/1 21/3 22/23 22/24 29/9 30/2 32/13 37/3 40/10
ways [2]  13/7 52/2
we [274]
We'd [1]  10/15
we're [9]  9/18 19/12 21/21 31/3 44/23 49/7 56/9 56/14 56/16
we've [5]  10/25 14/19 42/16 44/13 55/23
week [7]  10/19 11/1 17/15 19/3 22/5 24/11 52/8
weeks [2]  10/24 39/8
welcome [1]  51/23
well [16]  4/19 4/21 8/8 23/17 31/13 35/3 35/22 36/8 37/8 40/17 42/8 58/6 59/1 59/2 60/1 61/13
were [16]  12/12 16/15 20/2 28/2 28/6 28/21 30/22 31/13 39/1 44/9 44/11 50/12 51/20 52/9 53/2 53/4
weren't [1]  39/12
what [89]
what's [7]  21/16 36/6 36/9 39/16 45/16 58/23 58/24
whatever [2]  36/17 36/20
when [6]  17/5 27/4 28/6 39/20 42/24 45/20
where [11]  10/8 21/13 26/13 31/22 37/17 40/2 41/22 51/3 56/7 58/7 60/9
whether [7]  11/10 18/23 20/17 31/19 33/15 51/9 51/20
which [27]  5/19 6/9 13/18 15/6 15/19 18/3 19/9 24/24 26/25 28/2 31/10 33/21 35/3 36/12 37/12 38/22 39/15 41/18 44/24 45/17 47/1 48/10 49/12 52/16 53/10 53/16 59/4
while [2]  29/18 39/3
who [14]  4/9 5/5 5/21 14/15 16/6 22/4 22/16 27/9 47/18 54/12
whole [2]  57/14 58/5
why [11]  6/19 10/3 20/25 22/6 23/14 29/23 31/20 32/15 37/15 51/24 57/5
wide [22]  50/2 50/6 50/16 52/15 52/24 53/3 53/6 53/9 53/13 53/24 53/25 54/1 54/13 54/18 54/19 55/3 55/7 55/8 56/3 57/23 58/4 58/17
will [25]  5/5 6/17 11/4 14/23 16/4 16/17 20/13 21/15 26/11 26/17 28/11 29/17 29/17 30/5 39/24 41/2 41/24 41/25 46/12 52/12 54/14 55/6 60/18 61/14 61/15
willing [1]  58/16
winnow [1]  34/9
wise [1]  50/6
withheld [3]  24/18 25/5 31/23
withholding [1]  24/6
within [2]  10/19 22/5
without [5]  18/20 20/18 33/17 40/1 62/5
witness [4]  16/6 18/7 53/16 58/12
witnesses [7]  9/21 22/16 29/7 54/10 54/14 54/20 56/18
won't [1]  51/25
wondering [2]  5/24 7/2
word [1]  8/15
words [1]  42/19

# W

**work [7]**  22/23 28/18 30/9 42/23 43/2 46/25 48/13
**worked [1]**  60/19
**working [5]**  26/23 27/14 27/25 38/4
**works [2]**  9/18 32/14
**worry [1]**  37/2
**worth [1]**  48/25
**would [77]**
**wouldn't [4]**  10/15 17/3 17/15 37/18
**wrap [1]**  7/4
**writing [1]**  18/11
**written [3]**  6/15 27/19 61/5
**wrong [1]**  22/22

# X

**X,Y [1]**  13/9

# Y

**Yeah [1]**  7/5
**year [3]**  12/3 12/5 12/6
**years [3]**  9/8 11/24 12/5
**yes [9]**  4/16 5/2 11/17 28/13 31/8 34/20 47/8 55/10 60/11
**yet [6]**  15/10 16/4 16/16 30/10 30/13 30/20
**you [119]**
**you're [7]**  6/22 10/4 10/13 14/1 20/9 33/8 51/23
**you've [3]**  5/8 16/7 23/10
**YOULEE [1]**  1/11
**your [120]**
**Your Honor [85]**
**Your Honor's [4]**  10/10 15/3 39/14 41/24
**yourself [1]**  4/14
**YY [1]**  1/4