**C. Marie Eckert, P.C.**, OSB No. 883490
marie.eckert@millernash.com
**John C. Clarke**, OSB No. 153245
john.clarke@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

**Craig D. Leavell**, ISB No. 6256260
*Admitted Pro Hac Vice*
craig.leavell@btlaw.com
**Megan M. New**, ISB No. 6300422
*Admitted Pro Hac Vice*
megan.new@btlaw.com
**Casey G. Campbell**, ISB No. 6318370
*Admitted Pro Hac Vice*
casey.campbell@btlaw.com
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, Illinois  60606
Telephone:  312.214.4868
Facsimile:  312.759.5646

**Mark C. Nelson**, TSB No. 00794361
*Admitted Pro Hac Vice*
mark.nelson@btlaw.com
**Daniel A. Valenzuela**, TSB No. 24067918
*Admitted Pro Hac Vice*
daniel.valenzuela@btlaw.com
BARNES & THORNBURG LLP
2121 N. Pearl Street, Suite 700
Dallas, Texas  75201
Telephone:  214.258.4150
Facsimile:  214.258.4199

**Lauren U. Baker**, GSB No. 345536
*Admitted Pro Hac Vice*
lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA  30326
Telephone:  404.264.4036
Facsimile:  404.264.4033

*Attorneys for Plaintiff National Steel Car Limited*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL STEEL CAR LIMITED,<br><br>   Plaintiff,<br><br>v.<br><br>GREENBRIER-CONCARRIL LLC, GREENBRIER LEASING COMPANY, LLC, and GREENBRIER-GIMSA, LLC,<br><br>   Defendants. | Case No.: 3:20-cv-01275-YY<br><br>NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. THE PARTIES AND THE COURT HAVE AGREED ALL ALONG THAT "EXTENSIONS" IN THE COURT'S CONSTRUCTION REFER TO "FLOOR EXTENSIONS" AND NOT "FLOOR PANEL EXTENSIONS" ...................................... 3

    A. THROUGHOUT CLAIM CONSTRUCTION, GREENBRIER REPEATEDLY AND EXPRESSLY NOTED THAT "EXTENSIONS" WERE "FLOOR EXTENSIONS" ............................................................................ 3

    B. THIS COURT ITSELF PREVIOUSLY ACKNOWLEDGED THAT "EXTENSIONS" IN ITS CONSTRUCTION REFER TO "FLOOR EXTENSIONS," NOT FLOOR PANEL EXTENSIONS ....................................... 4

III. EVEN IF "EXTENSIONS" ARE REVISED TO REFER TO "FLOOR PANEL EXTENSIONS," GREENBRIER LONG AGO CONCEDED THAT "SEPARATE" IN THE COURT'S CONSTRUCTION INCLUDES COMPONENTS THAT DO NOT TOUCH ................................................................................................................................. 6

    A. THE TERM "EXTENSION" SHOULD CARRY THE SAME MEANING THROUGHOUT THE PATENT ............................................................................... 8

    B. THE PLAIN AND ORDINARY MEANING OF "SEPARATE" "EXTENSIONS" DOES NOT REQUIRE TOUCHING ....................................... 9

IV. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                         **Page(s)**

*AFG Industries, Inc. v. Cardinal IG Co.*,
   375 F.3d 1367 (Fed. Cir. 2004)..................................................................................................7

*Amgen Inc. v. Sandoz Inc.*,
   923 F.3d 1023 (Fed. Cir.), *reh'g granted, opinion modified*, 776 F. App'x 707
   (Fed. Cir. 2019).........................................................................................................................9

*Bradford Co. v. Conteyor N. Am., Inc.*,
   603 F.3d 1262 (Fed. Cir. 2010) .................................................................................................9

*Chamberlain Group, Inc. v. Lear Corp.*,
   516 F.3d 1331 (Fed. Cir. 2008) .................................................................................................8

*Clare v. Chrysler Grp. LLC*,
   819 F.3d 1323 (Fed. Cir. 2016) .................................................................................................6

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
   93 F.3d 1572 (Fed. Cir. 1996) ...............................................................................................8, 9

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997) ...................................................................................................9

*MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*,
   816 F.3d 1374 (Fed. Cir. 2016) .................................................................................................6

*Power Integrations, Inc. v. On Semiconductor Corp.*,
   396 F. Supp. 3d 851 (N.D. Cal. 2019) ......................................................................................4

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001) ............................................................................................5, 8

*Thorner v. Sony Computer Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) .................................................................................................7

**LR 7-1 CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7-1(a), counsel for Plaintiff National Steel Car Ltd. ("NSC") certifies that it conferred with counsel for Defendants' Greenbrier-Concarril, LLC's, Greenbrier Leasing Company, LLC's, and Greenbrier-GIMSA, LLC's (collectively, "Greenbrier") regarding this motion for reconsideration or, in the alternative, for clarification, but the parties were unable to resolve their dispute.

## I.   INTRODUCTION

NSC respectfully requests reconsideration, or in the alternative, clarification of the Court's November 17, 2023 Opinion and Order ("Summary Judgment Opinion") (ECF 242) granting Greenbrier's motion for summary judgment on the issue of non-infringement. NSC moves on two separate and distinct bases.

First, the claim construction record clearly establishes that all parties and the Court have understood all along that the word "extensions" in the Court's construction of "at least one floor panel" and "deck," refers to "floor extensions" *not* "floor panel extensions." The Summary Judgment Opinion, however, implicitly reads in a further limitation that the extensions must be "floor *panel* extensions." No such requirement is contained in the Court's construction. Under the Court's existing construction, as understood for more than two years, Greenbrier's gusset is a "floor extension" that touches the remainder of the "floor," and there is at least a genuine dispute of material fact precluding summary judgment.

Second, even if "extensions" is now revised in the Court's construction to refer to "floor panel extensions," the parties have agreed for more than two years that "separate" "extensions" *can "be unconnected to the rest of the floor panel*" and include "components **that are not in**

**contact with** (i.e., that are separate from) the floor sheet." Despite Greenbrier's admission in its claim construction briefing, the Summary Judgment Opinion changes course and now improperly and implicitly reads in a further limitation that "separate" requires touching. Under the Court's existing construction, however, Greenbrier's gusset is a "separate" extension (regardless of whether it is a "floor extension" or "floor panel extension"). NSC moves for reconsideration or, in the alternative, for clarification, as there are at least genuine disputes of material fact as to whether Greenbrier's gondola cars infringe the Asserted Patents under the Court's existing construction, as it has previously and for years been understood by even Greenbrier.

## II.   THE PARTIES AND THE COURT HAVE AGREED ALL ALONG THAT "EXTENSIONS" IN THE COURT'S CONSTRUCTION REFER TO "FLOOR EXTENSIONS" AND NOT "FLOOR PANEL EXTENSIONS"

The Court's construction of the terms "at least one floor panel" and "deck" is a "deck or floor panel can be one sheet, or a plurality of sheets joined together, and may also include one or more extensions, which may be integral, or which can be separate." Updated Order (ECF 151 at 5). Although this construction does not expressly state whether the "extensions" are "floor extensions" or "floor panel extensions," all parties and the Court previously understood that "extensions" meant "floor extensions." Under this existing construction, Greenbrier's accused "gusset" extensions are "floor extensions," creating at least a genuine dispute of material fact that precludes summary judgment.

///

//

A. **THROUGHOUT CLAIM CONSTRUCTION, GREENBRIER REPEATEDLY AND EXPRESSLY NOTED THAT "EXTENSIONS" WERE "FLOOR EXTENSIONS"**

During the course of this litigation, Greenbrier agreed that extensions were "floor extensions" and did not suggest an alternative construction until the summary judgment stage. In fact, Greenbrier argued that the specification supported that "a floor panel may include '*floor extensions*'" and "Greenbrier's construction accurately captures these descriptions by providing that a floor panel 'may have one or more integral or abutting *floor* extensions.'" Greenbrier Opening Claim Construction Brief (ECF 93 at 27) (emphasis added, citing the '519 Patent at 14:40); s*ee also id.* at 29 ("The specification, including all of the embodiments disclosed therein, plainly show that NSC contemplated (i) that a floor panel is nothing other than one or more floor sheets and one or more *floor extensions*" (emphasis added)). Greenbrier maintained that position in its reply *Markman* brief: "***The specification confirms that floor sheets and floor extensions are 'abutting.'*** Greenbrier's [own proposed] construction, consistent with the specification, provides for 'abutting' floor sheets, and 'abutting' floor extensions." Greenbrier Reply Claim Construction Brief (ECF 108 at 27) (emphasis in original). Greenbrier continued to argue, even in its Motion For Partial Reconsideration" that the "extensions" should be construed as "floor extensions," not "floor panel extensions." Greenbrier Motion for Partial Reconsideration (ECF 132 at 5-6) (proposing as a construction "floor sheet, or abutting floor sheets joined together, that may have one or more integral or abutting *floor extensions*." (emphasis added)).

Greenbrier also argued that the (overall) floor must have a continuous surface, not that the floor panels themselves must exclusively be a continuous surface: "Greenbrier argued that a

Page 3 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

'PHOSITA would have understood that a 'floor panel' refers to … a *floor* that has a continuous surface."  Greenbrier Reply Claim Construction Brief (ECF 108 at 30) (emphasis added).

In light of the parties' claim construction briefing, and Greenbrier's own admissions, NSC submits that "extensions" in the Court's construction are not "floor panel extensions," but rather "floor extensions." Under this construction, a genuine dispute of material fact exists as to whether Greenbrier's gondola cars infringe the Asserted Patents, which precludes summary judgment.  *See* NSC Opening Claim Construction Brief (ECF 92 at 17) ("The Parties further agree that . . . a 'floor panel' and 'deck' can included, as one of those pieces, a *floor extension*." (emphasis added)); *see, e.g.,* Expert Report of Ronald P. Sellberg Regarding Infringement of U.S. Patent Nos. 7,434,519 and 7,878,125 ("Sellberg Rep.") (ECF 187-9, Def. MSJ Ex. 7 at 15-34, 121-132, and 147-151 of 314); *see also Power Integrations, Inc. v. On Semiconductor Corp.*, 396 F. Supp. 3d 851, 868-69 (N.D. Cal. 2019) (denying defendant's motion for summary judgment of non-infringement and finding that defendant cannot "relitigate" claim construction on summary judgment).

**B.  THIS COURT ITSELF PREVIOUSLY ACKNOWLEDGED THAT "EXTENSIONS" IN ITS CONSTRUCTION REFER TO "FLOOR EXTENSIONS," NOT FLOOR PANEL EXTENSIONS**

Pursuant to the agreement on "floor extensions," this Court adopted Greenbrier's proposed construction, but without the use of the word "abutting."  Original Claim Construction Order (ECF 127 at 16).  Thus, the Court's original construction concluded that "extensions" were "floor extensions," as proposed by Greenbrier: "floor sheet, or floor sheets joined together, that may have one or more integral *floor extensions*" (emphasis added).  The Court continued to refer to "floor extensions" (not floor panel extensions) in its revised claim construction order.  Updated Order

Page 4 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

4857-1071-5286.1

(ECF 151 at 4) ("The court also rejected Greenbrier's argument that ***floor extensions*** must be abutting . . . . But the claims do not contain a requirement that the ***floor extensions*** must be abutting" (emphasis added). *See also id.* at 5 ("NSC correctly observes that removing the word 'abutting' from Greenbrier's construction leads the following result: 'floor sheet, or floor sheets joined together, that may have one or more integral ***floor extensions***" (emphasis added)). The Court went on to acknowledge that "[t]his leaves out the possibility that an extension may be separate from the floor panel, which certainly was not what the court intended and contrary to what is permissible under the claims." *Id.*

Under this understanding, and under the existing claim construction, NSC has set forth a clear and meritorious infringement analysis, supported by its expert. *See, e.g.,* Sellberg Rep. (ECF 187-9, Def. MSJ Ex. 7 at 15-34, 121-132, and 147-151 of 314). In other words, if extensions are "floor extensions," then there is at least a genuine dispute of material fact as to whether Greenbrier's gondola cars infringe the Asserted Patents. Under this construction, the extensions are true extensions of the "floor." As explained by NSC's expert, the "floor" includes (1) the floor sheets, (2) the horizontal legs of the angles, and (3) the floor extensions, all of which are welded together to form a continuous floor. *See* Sellberg Rep. (ECF 187-9, *id.* at 15-17; 28-34 of 314). Although the horizontal legs of the angles are not "floor panel(s)" or a "deck" under the Court's construction because they are not "sheets," they are nevertheless part of the "floor" that is recited within the Asserted Claims. *See* Sellberg Rep. (ECF 187-9, *id.* at 15-16 of 314). If "extensions" refer to "floor extensions," then the extensions touch the horizontal leg of the angle that is part of the "floor" and Greenbrier's gondola cars infringe the Asserted Patents. In fact, Greenbrier did not truly dispute this infringement read for more than two years, but instead shifted to arguing that

its design gussets are not "floor panel extensions." *See, e.g.,* Sellberg Rep. (ECF 187-9, *id.* at 15-34, 121-132, and 147-151 of 314); *but see* Def. Supp. Br. (ECF 230 at 2-3).

The Summary Judgment Opinion, however, changes course and implicitly requires that the "extensions" must be "floor panel extensions," despite the understanding that the parties and the Court shared under the actual construction. If the Court has now decided to undo the prior agreement among the parties and adopt a narrower construction of "floor panel" and "deck," it has the discretion to do so. But NSC submits that it is improper in view of the record of this case, to suddenly interpret the word "extensions" in the Court's construction as "floor panel extensions." *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (reversing district court and finding that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent").

### III. EVEN IF "EXTENSIONS" ARE REVISED TO REFER TO "FLOOR PANEL EXTENSIONS," GREENBRIER LONG AGO CONCEDED THAT "SEPARATE" IN THE COURT'S CONSTRUCTION INCLUDES COMPONENTS THAT DO NOT TOUCH

The parties agreed that "separate" in the context of the Court's claim construction "describe[s] non-integral floor extensions, ***allowing the floor extensions to be unconnected to the rest of the floor panel***" (Greenbrier Opening Claim Construction Brief (ECF 93 at 30) (emphasis added)) and includes "components **that are not in contact with** (i.e. that are separate from) the floor sheet." Greenbrier Response to Motion for Clarification or Reconsideration (ECF 137 at 5) (emphasis in original).

Accordingly, given that the Court's construction refers to "separate" "extensions," the clear and reasonable takeaway is that all parties unequivocally recognized that "separate" means unconnected to the rest of the floor panel and not in contact with the floor sheet. Based on the

Page 6 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

4857-1071-5286.1

agreed meaning of "separate" extensions, even if the Court now revises its construction to explicitly require that the "extensions" are "floor panel extensions," Greenbrier still infringes because Greenbrier long ago conceded that "separate" does not require touching, and therefore, Greenbrier's gussets are "separate" floor panel extensions. Under the existing construction, there is still a genuine dispute of material fact as to whether Greenbrier's gondola cars infringe the Asserted Patents. *See, e.g.,* Sellberg Rep. (ECF 187-9, Def. MSJ Ex. 7 at 15-34, 121-132, and 147-151 of 314); *see Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1333 (Fed. Cir. 2016) (finding it proper to determine infringement by comparing pictures of the accused product and the claims); *see also MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1379 (Fed. Cir. 2016) (finding differences between the computer-aided design (CAD) and accused products should be considered when determining infringement of said accused products).

Based on a fair interpretation of the claim language, there is no requirement within the claim language itself ("said floor including at least one floor panel" or "a deck defining a floor of said lading containment receptacle" or "a substantially flat deck") that every piece of the "floor," "deck," or "floor panel," including the non-abutting, separate "extensions" (if present) must touch (or be joined) to every other piece of the floor, deck, or "at least one floor panel." *See* the '519 Patent, claims 1, 15, and 22 (ECF 191-2, NSC MSJ Ex. 2); *see also* the '125 Patent, claims 1 and 18 (ECF 191-1, NSC MSJ Ex. 1). This conclusion is supported by the intrinsic evidence, namely the claims, specification, and especially when taking into consideration the plain and ordinary meaning to a person of ordinary skill in the art (POSITA).

Again, the Summary Judgment Opinion changes course and implicitly requires that "separate" requires touching, despite Greenbrier's admission that "separate" includes no such

requirement. NSC submits that it is improper, in view of the record of this case, to suddenly add an implicit requirement that "separate" in the Court's construction requires touching. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope."); *see also AFG Industries, Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1373-74 (Fed. Cir. 2004) (holding that the district court erred in granting summary judgment of non-infringement under a supplemental definition of a term and finding genuine issues of material fact on the question of infringement). In other words, the plain and ordinary meaning of "separate" "extensions" is still within the Court's construction, which does not require that the "extensions" (whether they be "floor extensions" or "floor panel extensions") touch the floor sheets, as Greenbrier previously admitted.

A.   **THE TERM "EXTENSION" SHOULD CARRY THE SAME MEANING THROUGHOUT THE PATENT**

The specification expressly discloses that the term "extension" includes separate (i.e., non-touching) extensions. *See* NSC MSJ Ex. 1 (ECF 191-1 at 15:8-24); *see* Figure 4b (showing web extension 146 mounted to the underside floor panel 44 and co-planar with — ***but not touching*** — web 114). Although the Court found that the side web and its extensions are wholly different components from the floor panel and its extensions (ECF 242 at 21), the term "extension" should carry the same plain and ordinary meaning. *See Chamberlain Group, Inc. v. Lear Corp.,* 516 F.3d 1331, 1337-40 (Fed. Cir. 2008) (reversing district court and holding that despite a single term ("code") was used in conjunction with two different modifiers ("binary" and "trinary"), the term "presumptively should carry the same meaning throughout the patent"). The Federal Circuit recognizes that "[w]hen the invention is being described in the specification (as opposed to when

Page 8 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

the preferred embodiment is being described), there are two distinct embodiments distinguished from one other embodiment." *Rexnord Corp.*, 274 F.3d at 1348. In light of the specification and actual language of the claims, a POSITA would understand that "extensions" can be interpreted broadly to include "separate" "extensions" that do not touch the "floor panel." *See Rexnord Corp.*, 274 F.3d at 1348 (reversing district court and finding that it unnecessarily limited the meaning of a disputed term that could be interpreted broadly for parts that are either "separate" or "integral.").

B.  **THE PLAIN AND ORDINARY MEANING OF "SEPARATE" "EXTENSIONS" DOES NOT REQUIRE TOUCHING**

The Court cites *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996), for the proposition that claim limitations cannot be read so broadly as it would become "meaninglessly empty." Summary Judgment Opinion (ECF 242 at 17). *Ethicon*, however, specified that its findings were based on the specific claims at issue, and "acknowledge[d] that the term "connected to" could, in other contexts, be broadly construed." 93 F.3d at 1578.

Here, the term "separate" in the Court's construction for "at least one floor panel" or "deck" neither requires touching in the context of the Asserted Patents nor has a conflated meaning to suggest otherwise. *See, e.g., Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270-71 (Fed. Cir. 2010) (holding that "coupled to . . . should be construed broadly so as to allow an indirect attachment" (quotations omitted)); *see also Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("To be joined or connected does not necessitate a direct joining or connection."); *but see Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir.), *reh'g granted, opinion modified*, 776 F. App'x 707 (Fed. Cir. 2019) (refusing to interpret "disease treating" the same as "stem cell mobilizing").

Page 9 –  NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

4857-1071-5286.1

Further, the "separate" "extensions" in the construction of "floor panel" and "deck" do not suggest the same "meaninglessly empty" concept as explained in *Ethicon*. Unlike the accused surgical stapler in *Ethicon* that was missing a "directly connected" lockout mechanism to read on the claim, Greenbrier's accused design gussets are "separate" "extensions" that do not physically touch the floor panel or floor sheets under the Court's construction. *See* Sellberg Rep. (ECF 187-9 at 28-34 of 314); *see* Greenbrier Opening Claim Construction Brief (ECF 93 at 30) ("describe[s] non-integral floor extensions, **allowing the floor extensions to be unconnected to the rest of the floor panel**" (emphasis added); *see also* Greenbrier Response to Motion for Clarification or Reconsideration (ECF 137 at 5) (extensions include "components **that are not in contact with** (*i.e.* that are separate from) the floor sheet.") (emphasis in original). The Court went on to acknowledge that "[t]his leaves out the possibility that an extension may be separate from the floor panel, which certainly was not what the court intended and contrary to what is permissible under the claims." Updated Order (ECF 151 at 3).

## IV.    CONCLUSION

NSC respectfully requests reconsideration or, in the alternative, clarification of the Summary Judgment Opinion on two independent grounds. First, the parties and the Court agreed that "extensions" were "floor extensions" not "floor panel extensions." Second, the parties have similarly agreed that "separate" in the context of the Court's claim construction "describe[s] non-integral floor extensions, allowing the floor extensions to be unconnected to the rest of the floor panel." This was the construction that controlled until Greenbrier sought to change it during summary judgment with touching "floor panel extensions." But under either construction (*i.e.*, if "extensions" refer to "floor extensions," as everyone has understood for the entirety of this case

*or* if "separate" includes non-touching extensions (as both Greenbrier and NSC argued more than two years ago)), genuine disputes of material fact exist as to whether Greenbrier's gondola cars infringe the Asserted Patents, which precludes summary judgment.

December 8, 2023                     Respectfully submitted,

                                     /s/ C. Marie Eckert
                                     **C. Marie Eckert, P.C.**, OSB No. 883490
                                     marie.eckert@millernash.com
                                     **John C. Clarke**, OSB No. 153245
                                     john.clarke@millernash.com
                                     MILLER NASH LLP
                                     3400 U.S. Bancorp Tower
                                     111 S.W. Fifth Avenue
                                     Portland, Oregon  97204
                                     Telephone:  503.224.5858
                                     Facsimile:  503.224.0155


                                     **Craig D. Leavell**, ISB No. 6256260
                                     *Admitted Pro Hac Vice*
                                     craig.leavell@btlaw.com
                                     **Casey Campbell**, ISB No. 6318370
                                     *Admitted Pro Hac Vice*
                                     casey.campbell@btlaw.com
                                     **Megan M. New**, ISB No. 6300422
                                     *Admitted Pro Hac Vice*
                                     megan.new@btlaw.com
                                     BARNES & THORNBURG LLP
                                     One North Wacker Dr., Suite 4400
                                     Chicago, IL  60606
                                     Telephone: 312.214.4868
                                     Facsimile: 312.759.5646




///

///


Page 11 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR,
           IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER
           17, 2023 OPINION AND ORDER
4857-1071-5286.1

**Mark C. Nelson**, TSB No. 00794361
*Admitted Pro Hac Vice*
mark.nelson@btlaw.com
**Daniel A. Valenzuela**, TSB No. 24067918
*Admitted Pro Hac Vice*
daniel.valenzuela@btlaw.com
BARNES & THORNBURG LLP
2121 North Pearl St., Suite 700
Dallas, TX 75201
Telephone: 214.258.4150
Facsimile: 214.258.4199

**Lauren U. Baker**, GSB No. 345536
*Admitted Pro Hac Vice*
lauren.baker@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Telephone: 404.264.4036
Facsimile: 404.264.4033

*Attorneys for Plaintiff*
*National Steel Car Limited*

Page 12 – NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER

4857-1071-5286.1

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NATIONAL STEEL CAR LIMITED'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CLARIFICATION OF THE COURT'S NOVEMBER 17, 2023 OPINION AND ORDER on:

Audra C. Eidem Heinze
aheinze@bannerwitcoff.com
Brian T. Apel
bapel@bannerwitcoff.com
J. Pieter van Es
pvanes@bannerwitcoff.com
Marc S. Cooperman
mcooperman@bannerwitcoff.com
Janice V. Mitrius
jmitrius@bannerwitcoff.com
Lisa S. Carlson
lcarlson@bannerwitcoff.com

Nathan C. Brunette
nathan.brunette@stoel.com
Steven T. Lovett
steve.lovett@stoel.com

STOEL RIVES LLP
760 SW Ninth Ave, Ste 3000
Portland, OR 97205

BANNER & WITCOFF, LTD.
71 S Wacker Dr, Ste 3600
Chicago, IL 60606

*Attorneys for Greenbrier Defendants*

by the following indicated methods on the date set forth below:

- [x] **CM/ECF system transmission.**
- [ ] **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.
- [x] **E-mail (courtesy copy).**
- [ ] **Facsimile communication device.**
- [ ] **First-class mail, postage prepaid.**
- [ ] **Hand-delivery.**
- [ ] **Overnight courier, delivery prepaid.**

DATED: December 8, 2023.

*/s/ C. Marie Eckert*
C. Marie Eckert, P.C., OSB No. 883490
*Of Attorneys for National Steel Car Limited*

Page 1 -    Certificate of Service

4857-1071-5286.1